**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF TENNESSEE AT KNOXVILLE**

KENNETH GAYNOR, et al., Individually, and on behalf of himself and all others similarly situated,

Plaintiff,

v.

DELOY MILLER, et al.

Defendants.

CASE NO. 3:15-cv-545-TAV-CCS

**(Consolidated)**

Varlan/Shirley

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INDIVIDUAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER CONSOLIDATED COMPLAINT**

**TABLE OF CONTENTS**

**Page**


INTRODUCTION ..... 1

ARGUMENT ..... 3

I. PLAINTIFFS' CLAIMS AGAINST THE MOVING INDIVIDUAL DEFENDANTS ARE TIME-BARRED. ..... 3

A. Plaintiffs' Section 11 Cause of Action Is Barred By the Three-Year Statute of Repose ..... 3

1. Plaintiffs Fail to Carry Their Burden of Proving Compliance With the Section 13 Repose Period. ..... 3

2. For the Purposes of Officers' and Directors' Liability Under Sections 11 and 12(a)(2), a Supplemental Prospectus Does Not Extend the Effective Date of a Shelf Registration Statement. ..... 4

3. For The Purposes of Officers' and Directors' Liability Under Sections 11 and 12(a)(2), The Filing of a Prospectus Supplement Pursuant to Rule 424(b)(2) Does Not Change The Effective Date of a Shelf Registration Statement. ..... 6

4. None of the Prospectus Supplements, or the Periodic Financial Statements Incorporated By Reference Into the Prospectus Supplements, Disclosed a "Fundamental Change" in Miller Energy's Business. ..... 7

B. All Causes of Action Are Barred By the One-Year Statute of Limitation. ..... 9

C. Plaintiffs Cannot State A Section 11 Claim Against Defendants Schlumberger, Gower, Leary and Richardson. ..... 10

II. PLAINTIFFS LACK STANDING TO BRING A SECTION 12(A)(2) CLAIM, BECAUSE THEY PURCHASED THEIR SHARES FROM AFTERMARKET SELLERS. ..... 12

III. PLAINTIFFS' SECTION 15 CLAIM SHOULD BE DISMISSED. ..... 14

IV. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Federal Housing Finance Agency v. HSBC North America Holdings Inc.*,
987 F. Supp. 2d 369 (S.D.N.Y. 2013)........................................................................8

*Gustafson v. Alloyd Co., Inc.*,
513 U.S. 561, 115 S. Ct. 1061 (1995)........................................................................12

*In re Biozoom, Inc. Sec. Litig.*,
93 F. Supp. 3d 801 (N.D. Ohio 2016)........................................................................3

*In re Century Aluminum Co. Sec. Litig.*,
749 F. Supp. 2d 964 (N.D. Cal. 2010)........................................................................11

*In re Countrywide Fin. Corp. Sec. Litig.*,
No. 07-cv-05295-MRP, 2009 WL 943271 (C.D. Cal. Apr. 6, 2009)........................................7

*In re EveryWare Global, Inc. Sec. Litig.*,
175 F. Supp. 3d (S.D. Ohio 2016)........................................................................8

*In re FirstEnergy Corp. Sec. Litig.*,
316 F. Supp. 2d 581 (N.D. Ohio 2004)........................................................................11

*In re Lehman Bros. Sec. & ERISA Litig.*,
799 F. Supp. 2d 258 (S.D.N.Y. 2011)........................................................................11

*In re Metropolitan Sec. Litig.*,
532 F. Supp. 1260 (E.D. Wash. 2007)........................................................................14

*In re Metropolitan Sec. Litig.*,
No. CV-04-25-FVS, 2010 WL 537740 (E.D. Wash. Feb. 8, 2010)........................................7

*In re National Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litig.*,
636 F. Supp. 1138 (C.D. Cal. 1986)........................................................................3

*In re Sterling Foster & Co., Inc. Sec. Lit.*,
222 F. Supp. 2d 216 (E.D.N.Y. 2002)........................................................................11

*In re Wachovia Equity Sec. Litig.*,
753 F. Supp. 2d 326 (S.D.N.Y. 2011)........................................................................11

*Joseph v. Wiles*,
223 F.3d 1155 (10th Cir. 2000)........................................................................11

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Local 295/Local 851 IBT Employer Group Pension Trust and Welfare Fund v. Fifth Third Bancorp*,
731 F. Supp. 2d 689 (S.D. Ohio 2010) ....................11

*Maher v. Durango Metals, Inc.*,
144 F.3d 1302 (10th Cir. 1998) ....................13

*Moran v. A/C/ Fin., Inc.*,
No. CV-3-05-071, 2007 WL 2769664 (S.D. Ohio Sept. 18, 2007) ....................3

*Pinter v. Dahl*,
486 U.S. 622, 108 S.Ct. 2063 (1988) ....................11

*Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co. Inc.*,
714 F. Supp. 2d 475 (S.D.N.Y. 2010) ....................12

*Rosenzweig v. Azurix Corp.*,
332 F.3d 854 (5th Cir. 2003) ....................11

*Toombs v. Leone*,
777 F.2d 465 (9th Cir. 1985) ....................3

*Tripoint, LLC v. Rhein Chemie Corp.*,
No. 1:14 CV 360, 2014 WL 3785766 (N.D. Ohio July 31, 2014) ....................3

*United Food & Commercial Workers Union Local 880 Pension Fund v. Chesapeake Energy Corp.*,
774 F.3d 1229 (10th Cir. 2014) ....................13

*W. & S. Life Ins. Co. v. JPMorgan Chase Bank, N.A.*,
54 F. Supp. 3d 888 (S.D. Ohio 2014) ....................8

*In re Wells Fargo Mortgage-Backed Cert. Litig.*,
712 F. Supp. 2d 958 (N.D. Cal. 2010) ....................12

*Yates v. Municipal Mortg. & Equity, LLC*,
744 F.3d 874 (4th Cir. 2014) ....................4

**STATUTES**

15 U.S.C. § 77k(a) ....................9

15 U.S.C. § 77m ....................4, 10

15 U.S.C. § 77o(a) ....................2

**TABLE OF AUTHORITIES**
(continued)

**Page**

**OTHER AUTHORITIES**

17 C.F.R. § 229.512(a)(1)(ii) ........................................................................................6

17 C.F.R. § 230.424, *et seq.* ("Rule 424(b)") ...............................................................6, 7

17 C.F.R. § 230.430B, *et seq.* ("Rule 430B")...................................................4, 5, 6, 7

Securities & Exch. Comm'n Release No. AS-306, *Adoption of Integrated Disclosure System*, 1982 WL 90370, at *29 (March. 3, 1982). ....................................................7

Securities & Exch. Comm'n Release No. 33-6334, etc., *Delayed or Continuous Offering and Sale of Securities*, 46 FED. REG. 42001, 1981 WL 119423 (August 18, 1981)................7

Securities & Exch. Comm'n, *Securities Offering Reform Release*, File No. S7-38-04, 2005 WL 1692642 (August 3, 2005)..........................................................................5

Defendants Merrill A. McPeak, Don A. Turkleson, Marceau N. Schlumberger, Bob G. Gower, Joseph T. Leary, Charles M. Stivers, David M. Hall, William B. Richardson, and Catherine Rector (the "**Moving Individual Defendants**") file this reply brief in support of their motion to dismiss Plaintiffs' Master Consolidated Complaint (the "**Complaint**" or "**Compl.**").

## INTRODUCTION

The Moving Individual Defendants dispute both the core theory underlying the Complaint, and Plaintiffs' desperate arguments regarding their lack of standing to sue and failure to timely file this lawsuit. The Moving Individual Defendants contend that the estimates Miller Energy ascribed to its Alaska Assets were always correct; those estimates were audited and blessed by two independent accounting firms over five consecutive years, and the publicly filed financial statements in which those estimates were reported have never been withdrawn. The Moving Individual Defendants will vigorously challenge Plaintiffs' factual allegations regarding the accuracy of the estimates if this case progresses. But this lawsuit should not proceed past the pleading stage because the Complaint contains defects plainly evident its face which Plaintiffs' Opposition brief ("Opposition" or "Opp.") does nothing to overcome. Four defects stand out.

First, Plaintiffs' Section 11 cause of action against the Moving Individual Defendants is time-barred by the three-year statute of repose. The repose period began to run on September 18, 2012, when the Registration Statement at issue was declared effective, and expired more than two months before this lawsuit was filed on November 9, 2015. Plaintiffs now argue that an obscure exception to the rule "resets" the starting date of the repose period to a later date when Miller Energy issued a Prospectus Supplement, because that supplement allegedly disclosed "fundamental changes" to Miller Energy's business. But the SEC Rule that created the exception cited by Plaintiffs by its very terms does not apply to officers and directors like the Moving Individual Defendants, and in any event the Prospectus Supplements did not disclose any "fundamental changes" to Miller Energy's business. Further, the Opposition's argument that Miller Energy's disclosures fundamentally changed over time is directly the opposite of what the

Complaint actually alleges: that Miller Energy did not disclose any *changes*, but rather repeated the *same* allegedly incorrect Alaska Asset valuation it first reported in early 2010.

Second, Plaintiffs' Section 11 claim against Moving Individual Defendants Schlumberger, Gower, Leary and Richardson fails because they did not sign the Registration Statement and were not directors (nor about to become directors) at the time the Registration Statement was signed. Simply put, they are not within any of the defined classes of persons who may be sued under Section 11.

Third, Plaintiffs lack standing to pursue their Section 12(a)(2) claim because Plaintiffs do not, and cannot, allege that they purchased their Miller Energy shares directly from any of the Moving Individual Defendants. Section 12(a)(2) liability only extends to a buyer's immediate seller; a buyer cannot recover against his seller's seller. Here, the Lead Plaintiffs' own sworn trading certifications conclusively establish that Plaintiffs' purchases were made weeks, months, and at times years after the offerings at issue, which means that Plaintiffs made their purchases in the aftermarket, not directly from one of the Moving Individual Defendants.

Lastly, because Plaintiffs do not have standing to maintain the Section 11 and 12(a)(2) causes of action against the Moving Individual Defendants, and those actions are time-barred, Plaintiff's Section 15 claim must in turn be dismissed because a Section 15 claim cannot be maintained absent an underlying actionable violation of the securities laws.

## ARGUMENT

### I. PLAINTIFFS' CLAIMS AGAINST THE MOVING INDIVIDUAL DEFENDANTS ARE TIME-BARRED

#### A. Plaintiffs' Section 11 Cause of Action Is Barred By the Three-Year Statute of Repose.

##### 1. Plaintiffs Fail to Carry Their Burden of Proving Compliance With the Section 13 Repose Period.

The three-year statute of repose in Section 13 is absolute and runs inexorably from the effective date of a registration statement, unless an exception applies that restarts the three-year clock. Plaintiffs, not the defendants, bear the burden of alleging facts that show compliance with

Section 13. *See, e.g., In re National Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litig.*, 636 F. Supp. 1138, 1166 (C.D. Cal. 1986) ("It is plaintiffs' burden affirmatively to plead facts showing compliance with Section 13's limitations periods"); *see also In re Biozoom, Inc. Sec. Litig.*, 93 F. Supp. 3d 801, 809 (N.D. Ohio 2016), citing *Toombs v. Leone*, 777 F.2d 465, 468 (9th Cir. 1985). Completely ignoring this precedent, the Opposition posits that *defendants* carry "the burden of establishing the statute of repose affirmative defense." Opp. at p. 30, n. 19. But the two cases Plaintiffs cite in their dubious effort to shift the pleading burden to the Moving Individual Defendants do not concern Section 13, and thus are distinguishable by their facts. *See, Moran v. A/C/ Fin., Inc.*, No. CV-3-05-071, 2007 WL 2769664, at *2 (S.D. Ohio Sept. 18, 2007); *Tripoint, LLC v. Rhein Chemie Corp.*, No. 1:14 CV 360, 2014 WL 3785766 (N.D. Ohio July 31, 2014).

Recognizing their failure to affirmatively plead facts showing compliance with Section 13's limitations periods, Plaintiffs submit nearly 20 exhibits with their Opposition, none of which are incorporated into the Complaint itself, in an attempt to argue that the statute of repose started running later months later than when the Registration Statement became effective. However, none of the facts that Plaintiffs now try to place before the Court are present in the Complaint, and even if they were, they would not overcome the fatal effect of the statute of repose.

**2.** <u>For the Purposes of Officers' and Directors' Liability Under Sections 11 and 12(a)(2), a Supplemental Prospectus Does Not Extend the Effective Date of a Shelf Registration Statement</u>**.**

As Plaintiffs admit (Opp. at 27), Section 11 claims may not be brought "more than three years after the security was *bona fide* offered to the public." 15 U.S.C. § 77m. In a shelf registration process such as the process employed here, a security generally becomes *bona fide* offered to the public on the date when the registration statement for that security is deemed effective by the Securities Exchange Commission. *Yates v. Municipal Mortg. & Equity, LLC*, 744 F.3d 874, 895 (4th Cir. 2014). Thus, Plaintiffs' Miller Energy shares became *bona fide* offered to the public on September 18, 2012, when the Registration Statement became effective.

Compl. ¶ 53. This lawsuit was filed over than three years later, on November 9, 2015, after the Section 13 statute of repose period expired.

The Opposition argues that the triggering date for the Section 13 statute of repose "reset" with the filing of Prospectus Supplements at various points in time following the filing of the Registration Statement. The statutory basis for Plaintiffs' claimed exception to the general rule arises from the Securities Exchange Commission's adoption in 2005 of the Securities Offering Reform ("SRO"), which amended certain S.E.C. rules and regulations pertaining to shelf offerings. One of those new rules, 17 C.F.R. § 230.430B ("**Rule 430B**"), expressly created a new provision setting forth when the information in a prospectus supplement is deemed to be effective for Section 11 purposes.

Rule 430B sets forth different guidelines for determining the effective date for issuers and underwriters on the one hand, and the effective date for directors and officers on the other hand. For issuers and underwriters ***only***, each new prospectus supplement issued subsequent to a registration statement establishes a new *bona fide* offering for the securities issued therein and, as a consequence, a new effective date "for purposes of liability under section 11 of the Act . . . ." 17 C.F.R. § 230.430B(f)(2) (2005). The new effective date for issuers and underwriters is the date a prospectus is deemed part of and included in the registration statement. *Id.*

In contrast, for directors and officers who have signed a shelf registration statement, Rule 430B states that the filing of a prospectus supplement generally does ***not*** establish a new effective date for Section 11 liability purposes. For directors and officers who have signed a shelf registration, the date of a new prospectus filing "shall ***not*** be an effective date . . . ."; instead, the effective date of the registration statement continues to control for Section 11 liability purposes. 17 C.F.R. § 230.430B(f)(4)(ii) (2005) (emphasis added). The rule release published by the SEC in conjunction with the issuance of Rule 430B clearly articulates this difference:

> Rule 430B also establishes a new effective date for a shelf registration statement for Section 11 liability purposes ***only*** for the issuer and for ... an underwriter. That new effective date will be the date a prospectus supplement filed in connection with the takedown or takedowns is deemed part of the relevant registration

> statement.
>
> Therefore, under rule 430B ... the prospectus filing **will *not* create a new effective date for directors or signing officers** of the issuer.

*See Securities Offering Reform Release,* Release No. 75, File No. S7-38-04, 2005 WL 1692642, at * 86-87 (August 3, 2005)(emphasis added). This rule makes clear that the filing of a supplemental prospectus "will not create a new effective date for directors or signing officers"; for officers and directors, the three-year statute of repose still begins to run when a registration statement is declared effective.

**3.** For the Purposes of Officers' and Directors' Liability Under Sections 11 and 12(a)(2), the Filing of a Prospectus Supplement Pursuant to Rule 424(b)(2) Does Not Change the Effective Date of a Shelf Registration Statement.

Plaintiffs argue that an exception to the rule that a prospectus supplement does not reset the effective date of a Registration Statement for directors' Section 11 liability, is warranted here pursuant to subpart (f)(4)(ii) of Rule 430B. That subpart provides that the effective date for directors' Section 11 liability may be reset by the filing of a document "including information required by section 10(a)(3)[1] of the Act or pursuant to Item 512(a)(1)(ii) of Regulation S-K." It is from the latter regulation from which Plaintiffs derive their argument that the disclosure of a "fundamental change" will reset the effective date of a registration statement, from which the statute of repose runs. Item 512(a)(1)(ii) of Regulation S-K requires an issuer conducting a shelf offering to disclose in any prospectus supplement "any facts or events arising after the effective date of the registration statement . . . which, individually or in the aggregate, represent a fundamental change in the information set forth in the registration statement." 17 C.F.R. § 229.512(a)(1)(ii). Item 512(a)(1)(B) goes on to expressly state, however, that Item 512(a)(1)(ii)

---

[1] Section 10(a)(3) provides that "when a prospectus is used more than nine months after the effective date of the registration statement, the information contained therein shall be as of a date not more than sixteen months prior to such use, so far as such information is known to the user of such prospectus or can be furnished by such user without unreasonable effort or expense." This provision is not applicable here, because the Prospectus Supplements were not filed for the purposes described under Section 10(a)(3).

"do[es] not apply" if the "registration statement is on Form S-3" and the issuer supplements its registration statement "in a form of prospectus filed pursuant to Rule 424(b)."

The effect of this somewhat elaborate interplay of several SEC rules and regulations is this: if an issuer supplements a registration statement filed on Form S-3 with a prospectus supplements issued under Rule 424(b), the filing of the Rule 424(b) supplement does not change the effective date from which a director's Section 11 liability commences; the three-year statute of repose still begins to run upon the date when the registration statement became effective. These rules are directly relevant here, because the Registration Statement at issue in the Complaint was filed on Form S-3 (Compl. ¶ 52), and the Prospectus Supplements identified in the Complaint were filed pursuant to Rule 424(b)(5). *See* Declaration of Jack Riese Supporting Plaintiffs' Omnibus Opposition [Dkt. 103], exhibits B, N & O.

In a factual circumstance virtually identical to those presented here, a district court rejected the precise "reset" argument raised now by Plaintiffs. *See In re Countrywide Fin. Corp. Sec. Litig.*, No. 07-cv-05295-MRP, 2009 WL 943271 (C.D. Cal. Apr. 6, 2009). In *Countrywide*, the Court dismissed a Section 11 claim against a director because the claim was not brought within three years after the relevant registration statement became effective. 2009 WL 943271, at *7. Plaintiffs argued that the start of the repose period should reset to a later date, within the three year repose period, when a prospectus supplement was issued. *Id.* The Court rejected the argument, holding that a subsequent Rule 424(b)(2) did not meet the exceptions that Rule 430B makes for filings required under the '33 Act § 10(a)(3) or under Regulation S-K Item 512(a)(1)(ii). *Id.*

**4.** None of the Prospectus Supplements, or the Periodic Financial Statements Incorporated By Reference Into the Prospectus Supplements, Disclosed a "Fundamental Change" in Miller Energy's Business**.**

Also contrary to the Opposition's argument, there was no "fundamental change" disclosed by Miller Energy in any Prospectus Supplement or any periodic report incorporated by reference into a Prospectus Supplement. The S.E.C. has repeatedly explained that a "fundamental change" is one that relates to "major changes in the issuer's operations, such as

significant acquisitions or dispositions," and not to "variations in matters such as operating results, properties, business, product development, backlog, management and litigation." S.E.C. Release No. 33-6334, etc., *Delayed or Continuous Offering and Sale of Securities*, 46 FED. REG. 42001, 1981 WL 119423 at *42007-08 (August 18, 1981); S.E.C. Release No. AS-306, *Adoption of Integrated Disclosure System*, 1982 WL 90370, at *29 (Mar. 3, 1982).

The Opposition improperly attempts to conflate whether information in a prospectus supplement is "material" with whether it reports a "fundamental change." The "fundamental change" standard is not one of mere materiality. *In re Metropolitan Sec. Litig.*, 2010 WL 537740, *2 (E.D. Wash. Feb. 8, 2010). "[M]ateriality is not the test. The test is fundamental change; and the latter is more demanding than the former. A change may be material without being fundamental." *Id.*

Here, the Complaint does not allege any "fundamental change" disclosed in the various Prospectus Supplements. To the contrary, the Complaint alleges that Miller Energy did not disclose any *changes*, but instead takes the defendants to task for repeating over and over the *same* allegedly incorrect Alaska Asset valuation it first reported in early 2010. *See* Compl. ¶ 46, (alleging that Miller Energy first reported the supposedly "overstated" value of the Alaska Assets in March 2010, and then "subsequently repeated the overstated value of the Alaska Assets in numerous filings with the SEC through August 2015"). The Complaint consistently alleges that Miller Energy merely "repeated the [original] overstated valuation" from 2010 in its subsequent public filings, not that it disclosed "new" or "fundamentally changed" information. *See e.g.*, Compl. ¶¶ 5, 47, 49, 50 and 56. Absent a "fundamental change" disclosed in a prospectus supplement, the trigger date for Section 11 liability remains the effective date of the registration statement. *See, Federal Housing Finance Agency v. HSBC North America Holdings Inc.*, 987 F. Supp. 2d 369, 375 (S.D.N.Y. 2013) (emphasis added).

In sum, the Statute of Repose began to run on September 8, 2012, the date on which the Registration Statement became effective. This "bona fide offering" date did not "reset" to a later date for purposes of the Moving Individual Defendants' liability under Section 11, because (a)

the Moving Individual Defendants are officers and directors to whom the Rule 430B exception does not apply, and (b) Plaintiffs have not alleged, and cannot allege, that the later Prospectus Supplements disclosed any "fundamental change" in Miller Energy's business. Because the Complaint was filed more than three years after the bona fide offering date of the Registration Statement, the Complaint's Count I for violation of Section 11 is time-barred against the Moving Individual Defendants, and should be dismissed with prejudice.

**B. All Causes of Action Are Barred By the One-Year Statute of Limitation.**

At its core, this lawsuit is about precisely the same thing as the prior class action lawsuit that was litigated in this court: Miller Energy's reporting of allegedly inflated values of the Alaska Assets it acquired in 2009. All but one of the defendants named in the class action are named as defendants here. All of Miller Energy's SEC filings that were alleged to be erroneous in the class action are alleged to be erroneous here. Plaintiffs even copy the same alleged reasons for why the Alaska Assets valuation was wrong from those asserted in the prior Class Action.

Over eighteen months before this litigation was filed, this Court stated that plaintiffs' allegations "about the value of the Alaska Assets," were sufficient to state a cause of action for securities fraud, specifically observing that "a reasonable person could conclude that the Miller Defendants knew . . . that the 'true value' of these assets was less than represented in statements to the public." This placed Plaintiffs on inquiry notice that the Alaska Asset valuation could be erroneous, and commenced the one-year limitations period under Section 13. 15 U.S.C. § 77m.

The cases Plaintiffs cite in the Opposition include those dealing with limitations period for <u>fraud</u> claims, where a Plaintiff must determine whether a defendant acted with fraudulent intent. *See W. & S. Life Ins. Co. v. JPMorgan Chase Bank, N.A.*, 54 F. Supp. 3d 888, 903-04 (S.D. Ohio 2014); *In re EveryWare Global, Inc. Sec. Litig.*,175 F. Supp. 3d at 863 (S.D. Ohio 2016). This is not a fraud case. As Plaintiffs repeatedly point out elsewhere in their Opposition, on their Section 11 and 12(a)(2) claims Plaintiffs are only required to plead and prove that Miller Energy's valuation of the Alaska Assets was wrong, and that Plaintiffs were damaged by the erroneous disclosures regarding those assets. Plaintiffs surely were on inquiry notice that the

valuation of the Alaska Assets could be wrong no later than February 2014, when this Court denied the motion to dismiss in the *In re Miller Energy* class action. Because Plaintiffs did not file this lawsuit until over a year and a half later, their claims are barred by the one-year statute of limitations of Section 13.

### C. Plaintiffs Cannot State A Section 11 Claim Against Defendants Schlumberger, Gower, Leary and Richardson.

Section 11(a) expressly limits the classes of persons against whom a claim may be asserted to the following:

> (1) every person who signed the registration statement;
>
> (2) every person who was a director of (or person performing similar functions) or partner in the issuer at the time of the filing of the . . .registration statement . . .;
>
> (3) every person who . . . is named in the registration statement as being or about to become a director . . .;
>
> (4) every accountant . . . who has with his consent been named as having prepared or certified any part of the registration statement;
>
> (5) every underwriter with respect to such security.

15 U.S.C. § 77k(a).

Defendants Schlumberger, Gower, Leary and Richardson do not fall under <u>any</u> of those categories. These four individuals did not sign the Registration Statement, because they did not become directors until nearly a year or more after it was issued. They also did not sign undertake to supplement the Registration Statement by incorporating future, unwritten periodic reports by reference, because, of course, they were not present.

Plaintiffs essentially argue that Schlumberger, Gower, Leary and Richardson should be liable for disclosures that they did not make, and did not agree to supplement, in a Registration Statement made by other people who predated their arrival at the Company by years. It is not the purpose of Section 11 to hold future directors liable for statements they did not make. Indeed, a plain reading of Section 11(a) suggests that because Congress included directors who were "named in the registration statement as . . . about to become a director" as potentially liable

persons, Congress meant to exclude from Section 11 liability directors joining a company in the more distant future, like Schlumberger, Gower, Leary and Richardson

Plaintiffs' argument that these directors should be held liable under Section 11 because they signed a Form 10-K in 2014, which the 2012 Registration Statement they *did not* sign predicted would some day be issued and incorporated by reference (*see* Opp. at 35), tortures the plain language and intent of Section 11 to an untenable degree. It is for a situation like this why, as explained in Section I.A., *infra*, Rule 430B does not reset the repose period for directors and officers based solely upon the filing of a prospectus supplement.

## II. PLAINTIFFS LACK STANDING TO BRING A SECTION 12(A)(2) CLAIM, BECAUSE THEY PURCHASED THEIR SHARES FROM AFTERMARKET SELLERS.

The Opposition clarifies that Plaintiffs' Section 12(a)(2) cause of action is asserted against only two of the Moving Individual Defendants – David Hall and Catherine Rector. Mr. Hall and Ms. Rector are included among the Complaint's defined subset of "Officer Defendants." *See* Compl. ¶27.[2] All of the Company's outside directors named in the Complaint are excluded from the group of "Officer Defendants." Opp. at p. 16, n. 11; citing Complaint paras 19-23, 27.

While the Opposition spends nearly two pages arguing the subtle linguistic meaning of the words "pursuant to" as used in the context of whether or not Plaintiffs actually purchased shares in one of the six alleged offering, the Opposition completely ignores the fatal defect of the Complaint's Section 12(a)(2) allegation – that the Plaintiffs did not, and cannot, allege that they purchased their Miller Energy shares in an offering directly from any of the Moving Individual Defendants.

As noted in Moving Individual Defendants' opening brief, Section 12(a)(2) applies only to purchases made through initial offerings and not to aftermarket trading. *Local 295/Local 851*

[2] The Complaint includes three additional individuals among the defined group of "Officer Defendants" – Messrs. Boruff, Voyticky and Miller [Compl. ¶27] – but those additional individuals are not a part of the Moving Individual Defendants group.

*IBT Employer Group Pension Trust and Welfare Fund v. Fifth Third Bancorp*, 731 F. Supp. 2d 689, 713 (S.D. Ohio 2010), citing *Gustafson v. Alloyd Co., Inc*., 513 U.S. 561, 115 S. Ct. 1061, 131 L. Ed. 2d 1 (1995). To put it more simply, Section 12's liability reaches "only the buyer's immediate seller; . . . a buyer cannot recover against his seller's seller." *Pinter v. Dahl*, 486 U.S. 622, 644 n.21 (1988). Purchasers who buy their shares on the secondary market lack standing to assert Section 12(a)(2) claims. *See, e.g., In re FirstEnergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581, 602 (N.D. Ohio 2004) ("The Supreme Court has held that 12(a)(2) only applies to initial offerings and not to aftermarket trading."). *Rosenzweig v. Azurix Corp*., 332 F.3d 854, 870–71 (5th Cir. 2003); *Joseph v. Wiles*, 223 F.3d 1155, 1161 (10th Cir. 2000) (stating that Section 12(a)(2) gives "a cause of action only to individuals who purchase securities directly from a person who sells the securities by means of a prospectus."); *In re Sterling Foster & Co., Inc. Sec. Lit.*, 222 F. Supp. 2d 216, 244 (E.D.N.Y. 2002) ("purchasers in private or secondary market offerings are precluded from bringing actions under Section 12(a)(2).").

Because a plaintiff must purchase directly from an issuer as part of the offering to have standing to sue under Section 12(a)(2), most courts have concluded that cursory allegations like those asserted in the Complaint – specifically, that plaintiffs purchased stock "pursuant and/or traceable to" an offering – are insufficient to state a claim. *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 373 (S.D.N.Y. 2011) (Under 12(a)(2) "an allegation that Plaintiffs purchased 'pursuant or traceable to' the offering documents would be insufficient"); *In re Century Aluminum Co. Sec. Litig.*, 749 F. Supp. 2d 964 (N.D. Cal. 2010)(Plaintiffs "simply generally assert that they have met their burden to show standing by pleading purchases "pursuant and/or traceable to" the January 2009 offering . . . such conclusory allegations are insufficient to establish standing under Section 12(a)(2)."); *In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 310–11 (S.D.N.Y. 2011) ("A complaint that alleges that the plaintiff purchased its securities 'pursuant and/or traceable to' the Offering Documents is not sufficient" under Section 12); *Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co. Inc.*, 714 F. Supp. 2d 475, 484 (S.D.N.Y. 2010) ("Instead, rather coyly, the Complaint makes such

allegations as that '[p]laintiffs and other Class members purchased or otherwise acquired Certificates pursuant and/or traceable to the defective Prospectus Supplements'. . . this is insufficient to allege standing for purposes of a Section 12(a)(2) claim."); *In re Wells Fargo Mortgage-Backed Cert. Litig.,* 712 F. Supp. 2d 958, 966 (N.D. Cal. 2010)(dismissing 12(a)(2) claim with leave to amend where plaintiffs had alleged that they " 'acquired' securities 'pursuant and/or traceable to' the registration statements and prospectus supplements.").

Not only does the Complaint fail to allege that Plaintiffs purchased their shares directly from a defendant, their trading certifications, sworn under penalty of perjury, conclusively establish that they did not purchase their shares in an offering, and instead purchased aftermarket shares. This is shown by the fact that none of the Lead Plaintiffs' purchases were made on the date of an Offering, at the Offering Price. To the contrary, Lead Plaintiffs' sworn certifications establish that all of Lead Plaintiffs' sales were made days, weeks, months or even years after an offering, at prices significantly different than the prices at which the purchased shares originally were offered.

For instance, Lead Plaintiff Gaynor made his only purchase of Miller Energy shares in April 2015, which was more than eight months after the most recent preceding offering.[3] Lead Plaintiff Hull certified that his purchases of Miller Energy Series C preferred shares were made in May 2015, nearly two years after the last Series C offering on June 28, 2013, and he purchased those shares at prices more than 75% lower than the June 2013 offering price of $21.50/share. Lead Plaintiff Vorrath does not specify whether he purchased Series C or Series D shares, making it impossible to determine pursuant to which offering(s) he made his purchases, but regardless, it can be seen that all of his purchases were made on dates significantly after each offering, at prices that differed from the offering prices.

By affirmatively representing that they bought their Miller Energy shares at prices different from the offering prices, on dates after the offering dates, Plaintiffs admit that they did

[3] *See* Docket no. 88-2, Lead Plaintiffs' certifications submitted in support of Memorandum in Support of Motion, for Appointment as Lead Plaintiff and Approval of Selection of Counsel.

not buy their shares directly from a selling defendant in connection with an offering, but must have been purchased from a third party seller in the open market, at market prices. They therefore lack standing to bring a claim under Section 12(a)(2) against the defendants.

## III. PLAINTIFFS' SECTION 15 CLAIM SHOULD BE DISMISSED.

Plaintiff's cause of action for violation of Section 15 should be dismissed because Plaintiffs have failed to state an actionable claim that any person "controlled" by the Moving Individual Defendants committed a violation of Sections 11 or 12(a)(2).

Section 15 liability "[de]ends upon the success of claims under sections 11 and 12(a)(2)." *United Food & Commercial Workers Union Local 880 Pension Fund v. Chesapeake Energy Corp.*, 774 F.3d 1229, 1234 (10th Cir. 2014) (*quoting Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304–05 (10th Cir. 1998)); see 15 U.S.C. § 77o(a).

As explained above, Plaintiffs failed to state a viable claim for relief for violation of Section 11 against any Moving Individual Defendant because the provisions of 230B expressly do not apply to officers and directors. Plaintiffs failed to state a viable claim for relief for violation of Section 12(a)(2) against any Moving Individual Defendant because they did not purchase their shares in an offering from a Moving Individual Defendant.

Thus, even if the Complaint had alleged that each Moving Individual Defendant was a "control person" under Section 15 (which Plaintiff failed to do), the Section 15 claim must be dismissed because the Complaint fails to state a claim for a violation of the underlying securities laws.

## IV. CONCLUSION

For the foregoing reasons, the Moving Individual Defendants respectfully request that the Court grant their motion to dismiss Plaintiffs' Complaint. Moreover, because Plaintiffs cannot cure by any amendment the bar imposed by the Section 13 statute of repose,[4] the moving parties

---

[4] *In re Metropolitan Sec. Litig.*, 532 F. Supp. 1260, 1276 (E.D. Wash. 2007) (An amendment cannot "cure ... the bar imposed by a statute of repose.").

suggest that the dismissal should be with prejudice. statute of violation by amendment - the flaw is fatal to their claims.

DATED: April 21, 2017

**DLA PIPER LLP (US)**

__/s/ Robert D. Weber______________

Perrie M. Weiner (*pro hac vice*)
Robert D. Weber (*pro hac vice*)
2000 Avenue of the Stars, Fourth Floor
Los Angeles, CA 90067
Telephone: (310) 595-3000

Stephen A. Marcum (#7019)
MARCUM & PETROFF
Three Courthouse Square
P. O. Box 240
Huntsville, TN 37756
Telephone: (423) 663-9755
Fax 423-663-2111

Attorneys for Defendants Charles M. Stivers, David M. Hall, Merrill A. McPeak, Don A. Turkleson, Marceau N. Schlumberger, Bob G. Gower, Joseph T. Leary, William B. Richardson and Catherine Rector

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been mailed, postage prepaid, and/or sent by electronic mail to the following:

Barrett Johnston Martin & Garrison, LLC
Douglas S. Johnston, Jr.
Jerry E. Martin
Timothy L. Miles
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219

Robbins Geller Rudman & Dowd LLP
Christopher M. Wood
414 Union Street, Suite 900
Nashville, TN 37219

Robbins Geller Rudman & Dowd LLP
Samuel H. Rudman
Mary K. Blasy
58 South Service Road, Suite 200
Melville, NY 11747

Law Offices of Curtis V. Trinko, LLP
Curtis V. Trinko
William Margrabe
16 West 46th Street, 7th Floor
New York, NY 10036

*Attorneys for Plaintiff*

Bass, Berry & Sims PLC
W. Brantley Phillips, Jr.
Jeffrey P. Yarbro
150 Third Avenue South, Suite 2800
Nashville, TN 37201

Bass, Berry & Sims PLC
Shayne R. Clinton (BPR # 026245)
1700 Riverview Tower
900 S. Gay Street
Knoxville, TN 37902

Williams & Connolly LLP
Steven M. Farina
Margaret A. Keeley
Amanda M. MacDonald
725 Twelfth Street NW
Washington, D.C. 20005
*Attorneys for the Underwriter Defendants*

Lawrence P. Leibowitz
Leibowitz Law Firm, PLLC
608 South Gay Street, Suite 200
Knoxville, TN 37902-1637
*Attorney for Defendant Scott M. Boruff*

David J. Voyticky
41 Eastern Pkwy. A
Brooklyn, NY 11238

Paul W. Boyd
8125 Ainsworth Dr.
Knoxville, TN 37909

*Defendants*

Dated: April 21, 2017

s/Robert D. Weber
Perrie M. Weiner
Robert D. Weber
DLA Piper LLP
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 960067
*Attorneys for Defendants Deloy Miller, Catherine A. Rector, David M. Hall, Merrill A. McPeak, Don A. Turkleson, Bob G. Gower, Joseph T. Leary, and Marceau N. Schlumberger*