**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| KENNETH GAYNOR, et al., Individually and on Behalf of All Others Similarly Situated, | ) | Case No. 3:15-cv-545-TAV-CCS |
| Plaintiffs, | ) | **(Consolidated)** |
| v. | ) | CLASS ACTION |
| DELOY MILLER, et al., | ) | |
| Defendants. | ) | **JURY DEMAND** |

---

**UNDERWRITER DEFENDANTS' ANSWER, DEFENSES, AND AFFIRMATIVE DEFENSES TO MASTER CONSOLIDATED COMPLAINT**

---

Defendants MLV & Co. LLC ("MLV"), Williams Financial Group ("WFG"), Maxim Group LLC ("MXG"), National Securities Corporation ("NSC"), Aegis Capital Corp. ("ACC"), Northland Capital Markets ("NCM"), Dominick & Dominick, LLC ("D&D"), Ladenburg Thalmann & Co. Inc. ("LTC"), and I-Bankers Securities, Inc. ("IBS") (collectively, the "Underwriter Defendants"), by and through their undersigned counsel, as and for their Answer, Defenses, and Affirmative Defenses ("Answer") to the Master Consolidated Complaint (the "Complaint") of Lead Plaintiffs Kenneth Gaynor, Marcia Goldberg, Gabriel R. Hull, and Christopher R. Vorrath (collectively, "Plaintiffs"), hereby state as follows:

## GENERAL DENIAL

This Answer is based on Underwriter Defendants' investigation to date, and Underwriter Defendants reserve the right to supplement or amend this Answer during the course of litigation as new information is discovered. Except as otherwise expressly admitted in the paragraphs

below, Underwriter Defendants deny each and every allegation in the Complaint, and specifically deny any and all wrongdoing and/or liability to Plaintiffs and/or members of the purported class of persons on whose behalf this action is said to be brought. To the extent any allegation in the Complaint is not specifically and expressly admitted, it is denied. No statement herein constitutes a comment on the legal theories upon which Plaintiffs purport to proceed. To the extent the Complaint asserts legal contentions, such legal contentions require no response in this Answer, and this Answer contains no response to legal contentions other than their general denial. To the extent any response is required to the table of contents, headings, footnotes, or other unnumbered paragraphs in the Complaint, Underwriter Defendants deny all allegations of wrongdoing and/or liability to Plaintiffs contained therein.

With respect to the prefatory paragraph on page 1 of the Complaint, Underwriter Defendants admit that Plaintiffs purport to make the allegations set forth in the Complaint, but otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in the prefatory paragraph on p. 1 related to the alleged investigation of Plaintiffs' counsel or Plaintiffs' belief as to what evidence may exist and, on that basis, deny those allegations.

**SPECIFIC RESPONSES TO THE NUMBERED PARAGRAPHS IN THE COMPLAINT**

1. Underwriter Defendants admit that Plaintiffs purport to bring a securities class action seeking to pursue remedies under the Securities Act of 1933 ("Securities Act") and purporting to set forth strict liability and non-fraud claims against defendant under Sections 11, 12(a)(2), and 15 on behalf of all those who purchased Miller Energy Resources, Inc. ("Miller Energy" or the "Company") preferred shares traceable to the SEC Form S-3 filed on September 6, 2012 ("Registration Statement", including "Prospectuses") issued in connection with the

following public offerings of Miller Energy's 10.75% Series C Cumulative Redeemable Preferred Stock ("Series C") and 10.5% Series D Fixed Rate/Floating Rate Cumulative Redeemable Preferred Stock ("Series D") (collectively, the "Offerings"):

| Date | Preferred Shares | Price | Offering Name |
|---|---|---|---|
| Feb. 13, 2013 | Series C | $22.90 | "2/3/13-Series C" |
| May 8, 2013 | Series C | $22.25 | "5/8/13-Series C" |
| June 28, 2013 | Series C | $21.50 | "6/28/13-Series C" |
| Sept. 26, 2013 | Series D | $25.00 | "9/26/13-Series D" |
| Oct. 17, 2013 | Series D | At Market | "10/17/13-Series D" |
| Aug. 21, 2014 | Series D | $24.50 | "8/21/14-Series D" |

Underwriter Defendants deny that Plaintiffs have any basis to bring such action, deny any and all liability to Plaintiffs for such purported claims, and note that the Court has dismissed the Section 12 claims for lack of standing. Underwriter Defendants otherwise deny the allegations of Paragraph 1.

2. Underwriter Defendants admit that Plaintiffs purport to bring this action against current and former officers and directors of Miller Energy and Underwriter Defendants, but deny that they have any basis to do so. Underwriter Defendants further admit that Miller Energy filed a bankruptcy petition on October 1, 2015. Underwriter Defendants otherwise deny the allegations of Paragraph 2.

3. Underwriter Defendants admit that a company that became a subsidiary of Miller Energy (an oil and gas company headquartered in Knoxville, Tennessee) acquired certain oil and gas assets located in Alaska (the "Alaska Assets") for $2.25 million along with the assumption of certain liabilities in a transaction overseen by a bankruptcy court in December 2009. Underwriter Defendants otherwise deny the allegations of Paragraph 3.

4. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus

not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb & Co. LLP ("Sherb") and KPMG LLP ("KPMG") concerning the Company's financial statements. Those Underwriter Defendants also reasonably relied on, inter alia, the auditors' review of interim financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the relevant Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to truth of the allegations of Paragraph 4 and, on that basis, deny them.

5. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb and KPMG concerning the Company's financial statements. Those Underwriter Defendants also reasonably relied on, inter alia, the auditors' review of interim financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the relevant Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5 and, on that basis, deny them.

6. Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 and, on that basis, deny them.

7. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb and KPMG concerning the Company's financial statements. Those Underwriter Defendants also reasonably relied on, inter alia, the auditors' review of interim financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the relevant Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied

upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7 and, on that basis, deny them.

8. Paragraph 8 states a legal conclusion to which no response is required. To the extent a response is required, Underwriter Defendants deny the allegations of Paragraph 8 and further note that the Court has dismissed Plaintiffs' Section 12(a)(2) claims.

9. Paragraph 9 states a legal conclusion to which no response is required. To the extent a response is required, Underwriter Defendants admit the allegations of Paragraph 9, but note that the Court has dismissed Plaintiffs' Section 12(a)(2) claims.

10. The first sentence of Paragraph 10 states a legal conclusion to which no response is required. To the extent a response is required, Underwriter Defendants admit that venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b). As to the second sentence of Paragraph 10, Underwriter Defendants admit that Miller Energy maintained a principal place of business in this District. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 10 and, on that basis, deny them.

11. Paragraph 11 states a legal conclusion to which no response is required. Underwriter Defendants further state that Paragraph 11 fails to identify which acts and conduct alleged are said to have used the means and instrumentalities of interstate commerce, and therefore are unable to respond to such allegations. To the extent a response is required, Underwriter Defendants admit that, in the course of providing services pursuant to one or more underwriting agreements with Miller Energy, they used the means and instrumentalities of interstate commerce. Underwriter Defendants otherwise deny the allegations of Paragraph 11.

12. Underwriter Defendants deny that Plaintiff Kenneth Gaynor purchased Miller Energy Series D preferred shares pursuant to the Offerings, and further deny that he suffered any damage related to any Miller Energy Series D preferred shares he may have acquired. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 and, on that basis, deny them.

13. Underwriter Defendants deny that Plaintiff Marcia Goldberg purchased Miller Energy Series D preferred shares pursuant to the Offerings, and further deny that she suffered any damage related to any Miller Energy Series D preferred shares she may have acquired. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 and, on that basis, deny them.

14. Underwriter Defendants deny that Plaintiff Gabriel R. Hull purchased Miller Energy Series C and Series D preferred shares pursuant to the Offerings, and further deny that he suffered any damage related to any Miller Energy Series C or Series D preferred shares he may have acquired. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 and, on that basis, deny them.

15. Underwriter Defendants deny that Plaintiff Christopher R. Vorrath purchased Miller Energy Series C preferred shares pursuant to the Offerings, and further deny that he suffered any damage related to any Miller Energy Series C preferred shares he may have acquired. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 and, on that basis, deny them.

16. Underwriter Defendants admit that at the time of the Offerings non-party Miller Energy was an exploration and production company that explored and developed oil and gas wells in Alaska and Tennessee. Underwriter Defendants admit that Miller Energy's common

stock traded on the New York Stock Exchange ("NYSE") under the ticker symbol "MILL"; the Series C traded on the NYSE under the ticker symbol "MILLP"; and the Series D traded on the NYSE under the ticker symbol "MILLO." Underwriter Defendants further admit that on or about September 11, 2015, Miller Energy caused its common stock, Series C, and Series D to be delisted from the NYSE, and that Miller Energy filed a petition seeking relief under the federal bankruptcy statutes on or about October 1, 2015. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 and, on that basis, deny them.

17. Underwriter Defendants admit that non-party Sherb audited Miller Energy's consolidated financial statements as of and for the year-ended April 30, 2010 and that a company that subsequently became a subsidiary of Miller Energy acquired the Alaska Assets during that fiscal year. Underwriter Defendant otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 and, on that basis, deny them.

18. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the

Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified report of Sherb on the Company's consolidated financial statements as of and for the year-ended April 30, 2010, and further reasonably relied on Sherb's statement in that report that Sherb had conducted its audit in accordance with the standards of the Public Company Accounting Oversight Board. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 and, on that basis, deny them.

19. Paragraph 19 does not require a response because its allegations relate exclusively to other Defendants. To the extent a response is required, Underwriter Defendants admit that Defendant Deloy Miller was Chairman of the Board of Directors of Miller Energy during the Offerings. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 and, on that basis, deny them.

20. Paragraph 20 does not require a response because its allegations relate exclusively to other Defendants. To the extent a response is required, Underwriter Defendants admit that Defendant Scott M. Boruff was Chief Executive Officer of Miller Energy and a member of the Company's board of directors. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 and, on that basis, deny them.

21. Paragraph 21 does not require a response because its allegations relate exclusively to other Defendants. To the extent a response is required, Underwriter Defendants admit that Defendant David J. Voyticky was President and Acting Chief Financial Officer of Miller Energy and a member of the Company's board of directors during at least one or more of the Offerings. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 and, on that basis, deny them.

22. Paragraph 22 does not require a response because its allegations relate exclusively to other Defendants. To the extent a response is required, Underwriter Defendants admit that Defendant Catherine A. Rector was Vice President and Chief Accounting Officer of Miller Energy during at least one or more of the Offerings. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 and, on that basis, deny them.

23. Paragraph 23 does not require a response because its allegations relate exclusively to other Defendants. To the extent a response is required, Underwriter Defendants admit that Defendant David Hall was COO of Miller Energy and a member of the Company's board of directors during at least one or more Offerings. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 and, on that basis, deny them.

24. Paragraph 24 does not require a response because its allegations relate exclusively to other Defendants. To the extent a response is required, Underwriter Defendants admit that Defendants Merrill A. McPeak, Gerald Hannahs, Charles M. Stivers, and Don A. Turkleson served as directors of Miller Energy as of September 6, 2012 and signed the Registration Statement for the Offerings.

25. Paragraph 25 does not require a response because its allegations relate exclusively to other Defendants. To the extent a response is required, Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 and, on that basis, deny them.

26. Paragraph 26 does not require a response because its allegations relate exclusively to other Defendants. To the extent a response is required, Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 and, on that basis, deny them.

27. Paragraph 27 does not require a response because its allegations relate exclusively to other defendants. To the extent a further response is required, Underwriter Defendants admit that the Individual Defendants referred to in Paragraphs 19–24 each signed the Registration Statement. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 and, on that basis, deny them.

28. Underwriter Defendants admit MLV & Co. LLC ("MLV"), headquartered in Arlington, Virginia, is a capital market expert that provides investment banking service and advisory and capital market solutions, and acted as an Underwriter of Miller Energy's Preferred Stock Offerings. Underwriter Defendants further admit MLV was acquired by a subsidiary of FBR & Co. on or about September 1, 2015, and note that that subsidiary has since been acquired by BRC Merger Sub, LLC, a wholly owned subsidiary of B. Riley Financial, Inc. Underwriter Defendants otherwise deny the allegations of Paragraph 28.

29. Underwriter Defendants admit that Williams Financial Group is a d/b/a name employed by Dallas-based Williams Financial Group, Inc. (a privately held holding company) and its subsidiaries, and that one or more of the subsidiaries of Williams Financial Group, Inc.

were providers of advisory, brokerage, and wealth management services to independent Financial Professionals. Underwriter Defendants further admit that one of those subsidiaries, WFG Investments, Inc. ("WFG"), doing business as Williams Financial Group, acted as a Co-Manager and Underwriter of the February 3, 2013 Offering of Series C. Underwriter Defendants otherwise deny the allegations of Paragraph 29.

30. Underwriter Defendants admit that Maxim Group LLC ("MXG"), founded in 2002, is a full-service investment banking, securities, and wealth management firm headquartered in New York, New York, that acted as an Underwriter of the February 3, 2013 Offering of Series C; the May 8, 2013 Offering of Series C; the June 28, 2013 Offering of Series C; the September 26, 2013 Offering of Series D; and the August 21, 2014 Offering of Series D. Underwriter Defendants otherwise deny the allegations of Paragraph 30.

31. Underwriter Defendants admit that National Securities Corporation ("NSC") offers investment banking and corporate services providing customized solutions, financial advice, strategic counsel, mergers and acquisitions services, primary and secondary offerings, and private placements for emerging companies. Underwriter Defendants further admit that NSC, a wholly owned subsidiary of National Holdings, Inc., acted an Underwriter of the February 3, 2013 Offering of Series C; the May 8, 2013 Offering of Series C; the June 28, 2013 Offering of Series C; the September 26, 2013 Offering of Series D; and the August 21, 2014 Offering of Series D. Underwriter Defendants otherwise deny the allegations of Paragraph 31.

32. Underwriter Defendants admit that Aegis Capital Corp. ("ACC"), founded in 1984, is a full service retail and institutional broker-dealer located in New York, New York. Underwriter Defendants further admit that ACC acted as a Co-Manager and Underwriter of the February 3, 2013 Offering of Series C; the May 8, 2013 Offering of Series C; the June 28, 2013

Offering of Series C; the September 26, 2013 Offering of Series D; and the August 21, 2014 Offering of Series D. Underwriter Defendants otherwise deny the allegations of Paragraph 32.

33. Underwriter Defendants admit that Northland Capital Markets ("NCM") is the trade name for certain capital markets and investment banking services of Northland Securities, Inc. NCM provides financing solutions to companies nationwide, partnering with vendors and manufacturers in various industries. Underwriter Defendants further admit that NCM acted as a Co-Manager and Underwriter of the September 26, 2013 Offering of Series D and the August 21, 2014 Offering of Series D. Underwriter Defendants otherwise deny the allegations of Paragraph 33.

34. Underwriter Defendants admit that in 2015 Dominick & Dominick LLC ("Dominick") sold certain of its assets to Wunderlich Securities Inc. ("Wunderlich"). As part of that transaction Dominick granted Wunderlich the right to use the "Dominick & Dominick" name and mark for a limited time. Dominick then resumed operating under its original name Dominick & Dickerman LLC. Underwriter Defendants further admit that Dominick acted as a Co-Manager and Underwriter of the September 26, 2013 Offering of Series D. Underwriter Defendants otherwise deny the allegations of Paragraph 34.

35. Underwriter Defendants admit that Ladenburg Thalmann & Co. Inc. ("LTC") is an investment bank that offers investment banking, equity research, and capital markets products and services. Underwriter Defendants further admit LTC acted as a Co-Manager and Underwriter of the September 26, 2013 Offering of Series D and the August 21, 2014 Offering of Series D. Underwriter Defendants otherwise deny the allegations of Paragraph 35.

36. Underwriter Defendants admit that I-Bankers Securities, Inc. ("IBS"), a boutique international investment banking firm with offices in New York and Italy, offers initial public,

secondary, follow-on, private investment in public equity, and private equity offerings; as well as mergers and acquisitions advisory services. Underwriter Defendants further admit that IBS acted as a Co-Manager and Underwriter of the August 21, 2014 Offering of Series D. Underwriter Defendants otherwise deny the allegations of Paragraph 36.

37. Underwriter Defendants deny the allegations of Paragraph 37.

38. Paragraph 38 states a legal conclusion to which no response is required. To the extent a response is required, Underwriter Defendants admit that Paragraph 38 accurately quotes the cited Second Circuit opinion, which speaks for itself, and otherwise deny the allegations of Paragraph 38.

39. Underwriter Defendants deny the allegations of the initial paragraph of Paragraph 39.

As to subparagraph (a) of Paragraph 39, Underwriter Defendants admit that at the time of the Offerings they were investment banks that provide underwriting services in connection with public offerings of securities. Underwriter Defendants further admit that they each served in a syndicate of underwriters in one or more of the Offerings (as outlined further in their answer to Paragraph 54 *infra*), and that they received certain payment for these services pursuant to underwriting agreements with Miller Energy. Underwriter Defendants otherwise deny the allegations of Paragraph 39(a).

As to subparagraph (b) of Paragraph 39, Underwriter Defendants admit that they entered into underwriting agreements with Miller Energy containing certain indemnification provisions. Those agreements speak for themselves. Underwriter Defendants also admit that Miller Energy confirmed to the syndicate that Miller Energy had Directors and Officers liability insurance. Underwriter Defendants otherwise deny the allegations of Paragraph 39(b).

As to subparagraph (c) of Paragraph 39, Underwriter Defendants admit that the syndicate for each Offering conducted adequate and reasonable due diligence concerning the business and operations of Miller Energy in connection with the underwriting services provided. The allegation regarding what was "required" in order to conduct each Offering states a conclusion of law to which no response is required. Underwriter Defendants otherwise deny the allegations of Paragraph 39(c).

As to subparagraph (d) of Paragraph 39, Underwriter Defendants admit that the syndicate for each Offering consulted with Miller Energy's representatives concerning the strategy for the Offerings, the terms of the Offerings (including the price at which Miller Energy preferred shares would be sold), and the Registration Statement. Underwriter Defendants otherwise deny the allegations of Paragraph 39(d).

Underwriter Defendants deny the allegations of subparagraph (e) of Paragraph 39.

40. Underwriter Defendants admit that, at the time of the Offerings, Miller Energy was an exploration and production company that explored and developed oil and gas wells in North America. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to truth of the allegations of Paragraph 40 and, on that basis, deny them.

41. Miller Energy's historical share prices are a matter of public record and speak for themselves. Underwriter Defendants admit that Scott Boruff became Director and CEO of Miller Energy in or about August 2008, and that the Company acquired oil and gas properties after that time. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to truth of the allegations of Paragraph 41 and, on that basis, deny them.

42. Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 42 and, on that basis, deny them.

43. Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 43 and, on that basis, deny them.

44. Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 44 and, on that basis, deny them.

45. Underwriter Defendants admit that Cook Inlet Energy, LLC ("CIE") purchased the Alaska Assets for $2.25 million and the assumption of certain liabilities in or about December 2009 through a bankruptcy proceeding, and that CIE became a subsidiary of Miller Energy. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 45 and, on that basis, deny them.

46. Underwriter Defendants admit that, in connection with the Company's estimate of the fair value of the Alaska Assets, the Company considered a reserve estimates report prepared for it by an engineering firm, Ralph E. Davis & Associates ("Reserve Report"), which report speaks for itself and is the best record of its contents. Underwriter Defendants further admit that Miller Energy filed a Form 10-Q on or about March 22, 2010; that document speaks for itself and is the best record of its contents. With respect to the last sentence of Paragraph 46, for each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters,

those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb and KPMG concerning the Company's financial statements, and the Reserve Report. Those Underwriter Defendants also reasonably relied on the auditors' review of interim financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the relevant Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to truth of the allegations of Paragraph 46 and, on that basis, deny them.

47. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as

underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb and KPMG concerning the Company's financial statements, and the Reserve Report. Those Underwriter Defendants also reasonably relied on the auditors' review of interim financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the relevant Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to truth of the allegations of Paragraph 47 and, on that basis, deny them.

48. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as

underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb and KPMG concerning the Company's financial statements, and the Reserve Report. Those Underwriter Defendants also reasonably relied on the auditors' review of interim financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the relevant Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to truth of the allegations of Paragraph 48 and, on that basis, deny them.

49. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as

underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb and KPMG concerning the Company's financial statements, and the Reserve Report. Those Underwriter Defendants also reasonably relied on the auditors' review of interim financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the relevant Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to truth of the allegations of Paragraph 49 and, on that basis, deny them.

50. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as

underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb and KPMG concerning the Company's financial statements, and the Reserve Report. Those Underwriter Defendants also reasonably relied on the auditors' review of interim financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the relevant Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied upon." The July 28, 2011 report from Seeking Alpha: The Street Sweeper and Boruff's August 1, 2011 letter to the Company's shareholders referenced in Paragraph 50 speak for themselves, and are the best records of their contents. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50 and, on that basis, deny them.

51. Miller Energy's historical share prices on the NASDAQ and the NYSE and its market capitalization are a matter of public record and speak for themselves. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51 and, on that basis, deny them.

52. Underwriter Defendants admit that on or about September 6, 2012, Miller Energy filed with the SEC a Form S-3 registration statement and prospectus, which speak for themselves and are the best record of their contents. Underwriter Defendants further admit that all of the Offerings later occurred pursuant to this Form S-3. Underwriter Defendants otherwise deny the allegations of Paragraph 52.

53. Underwriter Defendants admit the allegations of Paragraph 53.

54. Underwriter Defendants admit that on or about the date of each of the following Offerings, Miller Energy filed the Prospectuses for those Offerings and that those Prospectuses contained the number of shares offered and the price per share proposed by the underwriters for each such Offering, as follows:

| OFFERING | UNDERWRITERS | PRICE | SHARES |
|---|---|---|---|
| 2/13/13-Series C | MLV, MXG, NSC, ACC, WFG | $22.90 | 625,000 |
| 5/8/13-Series C | MLV, MXG, NSC, ACC | $22.25 | 500,000 |
| 6/28/13-Series C | MLV, ACC, MXG, NSC, NCM | $21.50 | 335,000 |
| 9/26/13-Series D | MLV, MXG, NSC, ACC, D&D, LTC, NCM | $25.00 | 1,000,000 |
| 8/21/14-Series D | MLV, MXG, ACC, IBS, LTC, NSC, NCM | $24.50 | 750,000 |

Underwriter Defendants further admit that on or about October 17, 2013, Miller Energy filed a Prospectus for an Offering of up to 3,000,000 shares of Series D stock, to be sold at market price on a "best efforts" basis. Underwriter Defendants otherwise deny the allegations of Paragraph 54.

55. Underwriter Defendants admit that the Registration Statement incorporated by reference Miller Energy's Annual Report on Form 10-K for the year ended April 30, 2012, as well as various Current Reports on Form 8-K, and that the Prospectuses incorporated by reference certain Forms 10-K, 10-Q, and 8-K filed prior to each Offering. These SEC filings speak for themselves and are the best record of their contents. Underwriter Defendants deny any negligence with respect to the underwriting services they provided in connection with the Offerings. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb and KPMG concerning the Company's financial statements, and the Reserve Report. Those Underwriter Defendants also reasonably relied on the auditors' review of

interim financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the relevant Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to truth of the allegations of Paragraph 55 and, on that basis, deny them.

56. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb and KPMG concerning the Company's financial statements, and the Reserve Report. Those Underwriter Defendants also reasonably relied on the auditors' review of

interim financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the relevant Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 and, on that basis, deny them.

57. The accounting standard referenced in Paragraph 57 speaks for itself and is the best record of its contents, and the application of that standard is a matter of expertise as applied to particular facts and circumstances. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 and, on that basis, deny them.

58. The accounting standard referenced in Paragraph 58 speaks for itself and is the best record of its contents, and the application of that standard is a matter of expertise as applied to particular facts and circumstances. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58 and, on that basis, deny them.

59. The accounting standard referenced in Paragraph 59 speaks for itself and is the best record of its contents, and the application of that standard is a matter of expertise as applied to particular facts and circumstances. Underwriter Defendants otherwise lack knowledge or

information sufficient to form a belief as to the truth of the allegations in Paragraph 59 and, on that basis, deny them.

60. The accounting standard referenced in Paragraph 60 speaks for itself and is the best record of its contents, and the application of that standard is a matter of expertise as applied to particular facts and circumstances. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60 and, on that basis, deny them.

61. The accounting standard referenced in Paragraph 61 and footnote 4 accompanying Paragraph 61 speaks for itself and is the best record of its contents, and the application of that standard is a matter of expertise as applied to particular facts and circumstances. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 and, on that basis, deny them.

62. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the

identified reports of Sherb and KPMG concerning the Company's financial statements. Those Underwriter Defendants also reasonably relied on, inter alia, the auditors' review of interim financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the relevant Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 and, on that basis, deny them.

63. Underwriter Defendants admit that Miller Energy considered reserve reports in estimating the fair value of the Alaska Assets. The SEC rule, accounting standard, and the accounting standard appendix referenced in footnote 5 accompanying Paragraph 63 speak for themselves and are the best record of their contents, and the application thereof is a matter of expertise as applied to particular facts and circumstances. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63 and, on that basis, deny them.

64. Underwriter Defendants admit that reserve reports are commonly used in the oil and gas industry to estimate quantities of oil and gas to be recovered from existing properties. The accounting standard appendix relied upon in the last sentence of Paragraph 64 and referenced in footnote 6 accompanying Paragraph 64 speaks for itself and is the best record of its

contents, and the application thereof is a matter of expertise as applied to particular facts and circumstances. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to truth of the allegations in Paragraph 64 and, on that basis, deny them.

65. Underwriter Defendants admit that Miller Energy obtained reserve reports, including the Reserve Report, which the Company considered in estimating the fair value of the Alaska Assets. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to truth of the allegations in Paragraph 65 and, on that basis, deny them.

66. Underwriter Defendants admit that Miller Energy retained engineering firms to prepare reserve reports. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to truth of the allegations in Paragraph 66 and, on that basis, deny them.

67. Underwriter Defendants lack knowledge or information sufficient to form a basis as to the truth of the allegations in Paragraph 67 and, on that basis, deny them.

68. The Reserve Report speaks for itself and is the best record of its contents. To the extent any further response is required, Underwriter Defendants lack knowledge or information sufficient to form a belief as to truth of the allegations in Paragraph 68 and, on that basis, deny them.

69. Underwriter Defendants lack knowledge or information sufficient to form a basis as to the truth of the allegations in Paragraph 69 and, on that basis, deny them.

70. The Reserve Report speaks for itself and is the best record of its contents. To the extent any further response is required, Underwriter Defendants lack knowledge or information sufficient to form a belief as to truth of the allegations of Paragraph 70 and, on that basis, deny them.

71. Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71 and, on that basis, deny them.

72. Miller Energy's SEC filings speak for themselves and are the best record of their contents. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb and KPMG concerning the Company's financial statements, and the Reserve Report. Those Underwriter Defendants also reasonably relied on, inter alia, the auditors' review of interim financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the relevant Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has

concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied upon." To the extent any further response is required, Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72 and, on that basis, deny them.

73. The Reserve Report speaks for itself and is the best record of its contents. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb and KPMG concerning the Company's financial statements, and the Reserve Report. Those Underwriter Defendants also reasonably relied on the auditors' review of interim financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the relevant Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of

financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73 and, on that basis, deny them.

74. The Reserve Report speaks for itself and is the best record of its contents. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74 and, on that basis, deny them.

75. The Reserve Report speaks for itself and is the best record of its contents. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb and KPMG concerning the Company's financial statements, and the Reserve Report. Those Underwriter Defendants also reasonably relied on the auditors' review of interim financial statements and Miller Energy's representations in the underwriting agreements

concerning documents incorporated by reference in the Registration Statement and/or the relevant Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75 and, on that basis, deny them.

76. The Reserve Report speaks for itself and is the best record of its contents. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb and KPMG concerning the Company's financial statements, and the Reserve Report. Those Underwriter Defendants also reasonably relied on the auditors' review of interim

financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the relevant Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76 and, on that basis, deny them.

77. The SEC regulation referenced in Paragraph 77 speaks for itself and is the best record of its contents, and the application of that regulation is a matter of expertise as applied to particular facts and circumstances. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation,

the identified reports of Sherb and KPMG concerning the Company's financial statements, and the Reserve Report. Those Underwriter Defendants also reasonably relied on the auditors' review of interim financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the relevant Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77 and, on that basis, deny them.

78. The Reserve Report speaks for itself and is the best record of its contents. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78 and, on that basis, deny them.

79. The Reserve Report speaks for itself and is the best record of its contents. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that

they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb and KPMG concerning the Company's financial statements, and the Reserve Report. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79 and, on that basis, deny them.

80. Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80 and, on that basis, deny them.

81. Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81 and, on that basis, deny them.

82. The Reserve Report speaks for itself and is the best record of its contents. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82 and, on that basis, deny them.

83. Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83 and, on that basis, deny them.

84. The Reserve Report speaks for itself and is the best record of its contents. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no

reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb and KPMG concerning the Company's financial statements, and the Reserve Report. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 84 and, on that basis, deny them.

85. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb and KPMG concerning the Company's financial statements, and the Reserve Report. Those Underwriter Defendants also reasonably relied on the auditors' review of interim financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the

relevant Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 85 and, on that basis, deny them.

86. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb and KPMG concerning the Company's financial statements. Those Underwriter Defendants also reasonably relied on the auditors' review of interim financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the relevant

Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86 and, on that basis, deny them.

87. Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87 and, on that basis, deny them.

88. Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88 and, on that basis, deny them.

89. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the

identified reports of Sherb and KPMG concerning the Company's financial statements. Those Underwriter Defendants also reasonably relied on the auditors' review of interim financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the relevant Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89 and, on that basis, deny them.

90. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the

identified reports of Sherb and KPMG concerning the Company's financial statements. Those Underwriter Defendants also reasonably relied on the auditors' review of interim financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the relevant Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90 and, on that basis, deny them.

91. Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91 and, on that basis, deny them.

92. The Reserve Reports speaks for itself and is the best record of its contents. To the extent any further response is required, Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92 and, on that basis, deny them.

93. The Reserve Report speaks for itself and is the best record of its contents. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission

amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb and KPMG concerning the Company's financial statements, and the Reserve Report. Those Underwriter Defendants also reasonably relied on the auditors' review of interim financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the relevant Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93 and, on that basis, deny them.

94. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there

was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb and KPMG concerning the Company's financial statements. With respect to the second sentence of Paragraph 94, the application of GAAP is a matter of expertise as applied to particular facts and circumstances. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94 and, on that basis, deny them.

95. Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 95 and, on that basis, deny them.

96. Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 96 and, on that basis, deny them.

97. Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 97 and, on that basis, deny them.

98. Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98 and, on that basis, deny them.

99. Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 99 and, on that basis, deny them.

100. Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100 and, on that basis, deny them.

101. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb and KPMG concerning the Company's financial statements, and the Reserve Report. Those Underwriter Defendants also reasonably relied on the auditors' review of interim financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the relevant Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied

upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 101 and, on that basis, deny them.

102. For each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb and KPMG concerning the Company's financial statements, and the Reserve Report. Those Underwriter Defendants also reasonably relied on the auditors' review of interim financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the relevant Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied

upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 102 and, on that basis, deny them.

103. Paragraph 103 states a legal conclusion to which no response is required. To the extent a response is required, the regulations governing the preparation of a Registration Statement speak for themselves and are the best record of their contents. With respect to the allegations that the Alaska Assets were materially overstated, for each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb and KPMG concerning the Company's financial statements, and the Reserve Report. Those Underwriter Defendants also reasonably relied on the auditors' review of interim financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the relevant Prospectus. The Company's financial statements speak for themselves concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29,

2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 103 and, on that basis, deny them.

104. Paragraph 104 states a legal conclusion to which no response is required. To the extent a response is required, for each Offering, those Underwriter Defendants that served as underwriters for such Offering (a) as regards to those parts of the Registration Statement and relevant Prospectus not purporting to be made on the authority of an expert, had, after reasonable investigation, reasonable ground to believe and did believe that the statements therein were true and that there was no omission amounting to a material misstatement; and (b) as regards to those parts of the Registration Statement and relevant Prospectus purporting to be on the authority of an expert, had no reasonable ground to believe and did not believe that the statements therein were untrue or that they contained omissions amounting to a material misstatement. In their role as underwriters, those Underwriter Defendants that provided underwriting services for a particular Offering reasonably relied on the experts identified in the Registration Statement and the Prospectus for such Offering and on the reports of such experts, including, without limitation, the identified reports of Sherb and KPMG concerning the Company's financial statements, and the Reserve Report. Those Underwriter Defendants also reasonably relied on the auditors' review of interim financial statements and Miller Energy's representations in the underwriting agreements concerning documents incorporated by reference in the Registration Statement and/or the relevant Prospectus. The Company's financial statements speak for themselves

concerning the Company's financial reporting related to the Alaska Assets, and are the best record of their contents. On March 29, 2016, the Company reported in an 8-K that "after further review of financial information related to the valuation of the oil and gas properties acquired by the Company in Alaska in late 2009 and other accounting matters, the Company has concluded that its financial statements from prior years beginning in fiscal year 2010 should no longer be relied upon." Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 104 and, on that basis, deny them.

105. Paragraph 105 states a legal conclusion to which no response is required. To the extent a response is required, Underwriter Defendants deny the allegations in Paragraph 105.

106. The quarterly report referenced in Paragraph 106 speaks for itself and is the best record of its contents.

107. The quarterly report referenced in Paragraph 107 speaks for itself and is the best record of its contents.

108. The disclosure referenced in Paragraph 108 speaks for itself and is the best record of its contents. The provision of the SEC manual referenced quoted in footnote 8 accompanying Paragraph 108 speaks for itself and is the best record of its contents. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to truth of the allegations of Paragraph 108 and, on that basis, deny them.

109. The disclosure referenced in Paragraph 109 speaks for itself and is the best record of its contents. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to truth of the allegations of Paragraph 109 and, on that basis, deny them.

110. The disclosure referenced in Paragraph 110 speaks for itself and is the best record of its contents.

111. The filing referenced in Paragraph 111 speaks for itself and is the best record of its contents.

112. The filing referenced in Paragraph 112 speaks for itself and is the best record of its contents.

113. The filing referenced in Paragraph 113 speaks for itself and is the best record of its contents.

114. The SEC order referenced in Paragraph 114 speaks for itself and is the best record of its contents.

115. The statement of William P. Hicks, Associate Regional Director of the SEC's Atlanta office, referenced in Paragraph 110 speaks for itself and is the best record of its contents.

116. Paragraph 116 purports to summarize allegations made by the SEC in the order referenced in Paragraph 114. That SEC order speaks for itself and is the best record of its contents.

117. Paragraph 117 purports to summarize allegations made by the SEC in the order referenced in Paragraph 114. That SEC order speaks for itself and is the best record of its contents.

118. Paragraph 118 purports to summarize allegations made by the SEC in the order referenced in Paragraph 114. That SEC order speaks for itself and is the best record of its contents.

119. Paragraph 119 purports to summarize the relief demanded in the SEC order referenced in Paragraph 114. That SEC order speaks for itself and is the best record of its contents.

120. Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 120 and, on that basis, deny them.

121. The Form 8-K referenced in Paragraph 121 speaks for itself and is the best record of its contents.

122. Underwriter Defendants admit that Miller Energy Series C and Series D shares were delisted in September 2015. The historical prices for such shares are a matter of public record and speak for themselves.

123. Underwriter Defendants admit that Miller Energy filed for bankruptcy protection on or about October 1, 2015. Miller Energy's bankruptcy petition speaks for itself and is the best record of its contents. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 123 and, on that basis, deny them.

124. The SEC order referenced in Paragraph 124 speaks for itself and is the best record of its contents. The assertion in Paragraph 124 that such order "confirmed a majority of violations alleged" in an earlier order states a legal conclusion as to the effect of the order referenced in Paragraph 124, to which no response is required.

125. The SEC order referenced in Paragraph 125 speaks for itself and is the best record of its contents.

126. The Bankruptcy Court order referenced in Paragraph 126 speaks for itself and is the best record of its contents. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to truth of the allegations of Paragraph 126 and, on that basis, deny them.

127. The Form 8-K referenced in Paragraph 127 speaks for itself and is the best record of its contents. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to truth of the allegations of Paragraph 127 and, on that basis, deny them.

128. The Form 8-K referenced in Paragraph 128 speaks for itself and is the best record of its contents.

129. The disclosure referenced in Paragraph 129 speaks for itself and is the best record of its contents.

130. The bankruptcy plan referenced in Paragraph 130 speaks for itself and is the best record of its contents. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to truth of the allegations of Paragraph 130 and, on that basis, deny them.

131. Underwriter Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 131 and, on that basis, deny them.

132. The SEC order referenced in Paragraph 132 speaks for itself and is the best record of its contents.

133. The SEC order referenced in Paragraph 133 speaks for itself and is the best record of its contents.

134. The SEC order referenced in Paragraph 134 speaks for itself and is the best record of its contents.

135. The SEC order referenced in Paragraph 135 speaks for itself and is the best record of its contents.

136. Underwriter Defendants admit that Plaintiffs purport to bring this action as a class action. Underwriter Defendants otherwise deny the allegations of Paragraph 136.

137. The first sentence of Paragraph 137 states a legal conclusion to which no response is required. To the extent any response is required to this sentence, Underwriter Defendants deny the allegations of this sentence. With respect to Plaintiffs' allegations concerning their lack of knowledge and their beliefs as to the number in the proposed class, Underwriter Defendants lack knowledge of what Plaintiffs know or believe. Underwriter Defendants otherwise deny the allegations of Paragraph 137.

138. Paragraph 138 states a legal conclusion to which no response is required. To the extent any response is required, Underwriter Defendants deny the allegations of Paragraph 138.

139. Paragraph 139 states a legal conclusion to which no response is required. To the extent any response is required, Underwriter Defendants deny the allegations of Paragraph 139.

140. Paragraph 140 states legal conclusions to which no response is required. To the extent any response is required, Underwriter Defendants deny the allegations of Paragraph 140.

141. Paragraph 141 states legal conclusions to which no response is required. To the extent any response is required, Underwriter Defendants deny the allegations of Paragraph 141

142. Underwriter Defendants incorporate by reference and restate each and every response contained above as if fully set forth herein.

143. Underwriter Defendants admit that Plaintiffs purport to bring a cause of action pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k on behalf of a purported class, but deny they have any basis to do so.

144. Underwriter Defendants deny the allegations of Paragraph 144 as they relate to Underwriter Defendants.

145. Underwriter Defendants deny the allegations of Paragraph 145 as they relate to Underwriter Defendants.

146. Underwriter Defendants deny the allegations of Paragraph 146 as they relate to Underwriter Defendants.

147. Underwriter Defendants deny the allegations of Paragraph 147 as they relate to Underwriter Defendants.

148. Underwriter Defendants lack knowledge or information sufficient to form a basis as to the truth of the allegations in Paragraph 148 and, on that basis, deny them.

149. Underwriter Defendants deny the allegations of Paragraph 149.

150. Underwriter Defendants admit that less than three years has elapsed between the time that the securities upon which this cause of action purports to be brought were offered to the public and the time Plaintiffs commenced this action. Underwriter Defendants otherwise deny the allegations of Paragraph 150.

151. Underwriter Defendants incorporate by reference and restate each and every response contained above as if fully set forth herein.

152. Paragraph 152 does not require a response because Plaintiffs' purported claim under Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77k, has been dismissed. To the extent a response is required, Underwriter Defendants admit that Plaintiffs purported to bring a cause of action pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77k on behalf of a purported class, but deny they had any basis to do so.

153. Paragraph 153 does not require a response because Plaintiffs' purported claim under Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77k, has been dismissed. To the extent a response is required, Underwriter Defendants deny the allegations of Paragraph 153.

154. Paragraph 154 does not require a response because Plaintiffs' purported claim under Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77k, has been dismissed. To the extent

a response is required, Underwriter Defendants deny the allegations of Paragraph 154 as they relate to Underwriter Defendants.

155. Paragraph 155 does not require a response because Plaintiffs' purported claim under Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77k, has been dismissed. To the extent a response is required, Underwriter Defendants deny the allegations of Paragraph 155.

156. Paragraph 156 does not require a response because Plaintiffs' purported claim under Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77k, has been dismissed. To the extent a response is required, Underwriter Defendants deny the allegations of Paragraph 156 as they relate to Underwriter Defendants.

157. Paragraph 157 does not require a response because Plaintiffs' purported claim under Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77k has been dismissed. To the extent a response is required, Underwriter Defendants admit the allegations of Paragraph 157.

158. Underwriter Defendants incorporate by reference and restate each and every response contained above as if fully set forth herein.

159. Paragraph 159 does not require a response because its allegations relate exclusively to other Defendants. To the extent a response is required, Underwriter Defendants admit that Plaintiffs purported to bring a cause of action pursuant to Section 15 of the Securities Act, 15 U.S.C. § 78o against the Individual Defendants on behalf of a purported class. Underwriter Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 159 and, on that basis, deny them.

160. Paragraph 160 does not require a response because its allegations relate exclusively to other Defendants. To the extent a response is required, Underwriter Defendants state that Paragraph 160 states legal conclusions as to which no response is required and that they

otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 160 and, on that basis, deny them.

161. Paragraph 161 does not require a response because its allegations relate exclusively to other Defendants. To the extent a response is required, with respect to the allegations of underlying violations of Section 11 or Section 12 of the Securities Act on which Plaintiffs' Section 15 claim purports to be premised, Underwriter Defendants deny that Underwriter Defendants committed any violation of Section 11 or Section 12 of the Securities Act. Underwriter Defendants further state that Paragraph 161 states legal conclusions as to which no response is required, and that they otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 161 and, on that basis, deny them.

## RESPONSE TO PLAINTIFFS' PRAYER FOR RELIEF

As set forth above in response to the numbered paragraphs of the Complaint, Underwriter Defendants deny that Plaintiffs and/or any of the members of the purported class on whose behalf the Complaint is said to be brought are entitled to any of the relief prayed for in the Complaint or to any relief whatsoever. Underwriter Defendants deny that Plaintiffs and/or any members of the purported class on whose behalf the Complaint is said to be brought are entitled to proceed in this action as a class pursuant to Federal Rule of Civil Procedure 23, deny that this action is maintainable pursuant to that rule, and deny that Plaintiffs are entitled to be certified as Class representatives pursuant to Rule 23 or that Plaintiffs' counsel are entitled to be certified as Class Counsel for the proposed class. Underwriter Defendants further deny that Plaintiffs and/or any members of the purported class on whose behalf the Complaint is said to be brought are entitled to any award of compensatory damages or any other damages, any attorneys' fees, costs, or expenses of this litigation, any equitable or injunctive relief, or any other relief of any kind.

## DEFENSES AND AFFIRMATIVE DEFENSES

Underwriter Defendants assert the following defenses and affirmative defenses in response to the allegations set forth in the Complaint. In asserting these defenses and affirmative defenses, Underwriter Defendants do not assume the burden of proof as to any issue as to which the burden rests on Plaintiffs. This statement of defenses and affirmative defenses is based on Underwriter Defendants' investigation to date, and Underwriter Defendants reserve the right to supplement or amend these defenses or affirmative defenses during the course of litigation. To the extent that any of the defenses or affirmative defenses asserted herein or to be asserted in the future is mutually exclusive with any other asserted defense or affirmative defense, such defense or affirmative defense is asserted in the alternative to the other.

### FIRST DEFENSE

The Complaint fails to state any claim against any of Underwriter Defendants upon which relief can be granted.

### SECOND DEFENSE

The Complaint fails to state a claim against any of Underwriter Defendants because no Underwriter Defendant is ultimately responsible for the statements at issue and therefore cannot be liable to Plaintiffs as a matter of law.

### THIRD DEFENSE

The Complaint fails to state a clam against any of Underwriter Defendants because the Registration Statement and Prospectuses did not contain any material statements that were false or misleading when made, or omit any material facts that were required to be disclosed.

**FOURTH DEFENSE**

The Complaint fails to state a claim upon which relief can be granted to the extent any alleged misstatement is a sincerely held opinion or corporate optimism.

**FIFTH DEFENSE**

The Complaint fails to state a claim upon which relief can be granted against one or more of the Underwriter Defendants because of a lack of materiality of the alleged statements or omissions.

**SIXTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations.

**SEVENTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of repose.

**EIGHTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because they lack standing to pursue their claims.

**NINTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because the securities allegedly held by Plaintiffs are not traceable to the Offerings and/or Registration Statement.

**TENTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because Underwriter Defendants conducted a reasonable investigation and had reasonable ground to believe, and did believe, at the time the Registration Statement and Prospectuses became effective, that the statements in the Registration Statement and Prospectuses were true and that there was no omission of material fact required to make the statements therein not misleading.

**ELEVENTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because with regards to the parts of the Registration Statement and Prospectuses purporting to be made on the authority of experts (other than the Underwriter Defendants) or any official person, the Underwriter Defendants had no reasonable ground to believe, and did not believe, at the time such part of the Registration Statement and Prospectuses became effective, that the statements therein were untrue or that there was an omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading, or that such portions of the Registration Statement and Prospectuses did not fairly represent the statement of the expert or official person.

**TWELFTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, to the extent Plaintiffs had actual or constructive knowledge of the omitted facts or knew the truth of the alleged misstatements.

**THIRTEENTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, to the extent they allege misstatements or omissions of facts that occurred outside of the Registration Statement or Prospectuses.

**FOURTEENTH DEFENSE**

Plaintiffs cannot maintain this action as a class action because they cannot satisfy one or more of the requirements for class certification set forth in Federal Rule of Civil Procedure 23.

**FIFTEENTH DEFENSE**

Plaintiffs' recovery is barred, in whole or in part, because of a lack of loss causation and/or because any portion or all of Plaintiffs' alleged damages represents other than the depreciation in value of the security resulting from such part of the registration statement, with respect to which Underwriter Defendants' liability is asserted, not being true or omitting to state

a material fact required to be stated therein or necessary to make the statements therein not misleading.

**SIXTEENTH DEFENSE**

Plaintiffs are barred from recovery to the extent that any alleged damages exceed either (1) the total price at which the security was offered to the public, or (2) the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (a) the value of the security at the time the suit was brought, (b) the price the security would be disposed of at the time of suit, or (c) the price the security shall be disposed of after suit but before judgment, or otherwise exceed the limitations on damages set forth in 15 U.S.C. § 77k(e).

**SEVENTEENTH DEFENSE**

Plaintiffs' claims are barred from any recovery to the extent they failed to mitigate, reduce, or otherwise avoid their alleged damages.

**EIGHTEENTH DEFENSE**

Plaintiffs are not entitled to any recovery of attorneys' fees or other fees, costs or expenses of this litigation, as they have failed to plead, and cannot prove, any legal basis for recovery of such fees, costs, or expenses, or any facts sufficient to support any such recovery.

**NINETEENTH DEFENSE**

Plaintiffs' recovery is barred, in whole or in part, to the extent that Plaintiffs did not rely on any allegedly untrue statements or omissions in the Registration Statement to purchase Miller Energy securities after the release of an earning statement covering at least twelve months past the Registration Statement's effective date.

**TWENTIETH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, to the extent that they are based on corporate management decisions not actionable under the federal securities laws.

**JURY DEMAND**

Underwriter Defendants demand a trial by jury for all claims so triable.

**PRAYER FOR RELIEF**

Defendants respectfully request that a final judgment be entered in their favor dismissing the Complaint with prejudice; awarding Defendants reasonable costs, attorneys' fees, and expert fees for this action as allowed by law, including, without limitation, fees and costs provided for under 15 U.S.C. § 77k(e); and granting Defendants any other relief the Court deems proper.

Dated: September 25, 2017

Respectfully submitted,

*/s/ Margaret A. Keeley*

Steven M. Farina (admitted *pro hac vice*)
Margaret A. Keeley (admitted *pro hac vice*)
Amanda M. MacDonald (admitted *pro hac vice*)
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000
sfarina@wc.com
mkeeley@wc.com
amacdonald@wc.com

W. Brantley Phillips, Jr. (BPR # 018844)
Jeffrey P. Yarbro (BPR # 024207)
**BASS, BERRY & SIMS PLC**
150 Third Avenue South, Suite 2800
Nashville, TN 37201
(615) 742-7793
bphillips@bassberry.com
jyarbro@bassberry.com

Shayne R. Clinton (BPR # 026245)

**BASS, BERRY & SIMS PLC**
1700 Riverview Tower
900 S. Gay Street
Knoxville, TN 37902
(865) 521-6200
sclinton@bassberry.com

*Attorneys for Underwriter Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2017, a copy of the foregoing was filed electronically. Notice of the filing will be sent by operation of the Court's electronic filing system to all persons indicated on the electronic filing receipt. In addition, we have mailed copies of the foregoing to the following:

Scott M. Boruff
5628 Lyons View Pike
Knoxville, TN 37919

Gerald Hannahs
17710 Leatha Lane
Little Rock, AR 72223

David J. Voyticky
2652 Midvale Avenue
Los Angeles, CA 90064

William B. Richardson
1058 Encantado Dr.
Santa Fe, NM 87501

Paul W. Boyd
8125 Ainsworth Dr.
Knoxville, TN 37909

*Defendants*

*/s/ Margaret A. Keeley*