UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

AT KNOXVILLE

| | | |
|---|---|---|
| KENNETH GAYNOR, et al., Individually and on Behalf of All Others Similarly Situated, | § | Civil Action No. 3:15-CV-545-TAV-CCS |
| | § | (Consolidated) |
| Plaintiffs, | § | |
| vs. | § | CLASS ACTION |
| DELOY MILLER, *et al*., | § | |
| | § | JURY DEMAND |
| Defendants. | § | |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF CLASS CERTIFICATION**

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION ....... 1

II. STATEMENT OF FACTS COMMON TO THE CLASS ....... 3

A. Background ....... 3

B. The False and Misleading Registration Statement and Prospectus Supplements ....... 5

C. The Proposed Class Representatives ....... 6

III. ARGUMENT ....... 8

A. Courts Favor Class Treatment of Securities Class Actions ....... 8

B. This Case Satisfies the Requirements of Rule 23(a) ....... 10

1. The Class Is Numerous ....... 10

2. Common Questions of Law and Facts Exist for All Class Members ....... 12

3. The Proposed Class Representatives' Claims Are Typical of the Class ....... 13

4. Lead Plaintiffs Will Fairly and Adequately Protect the Interests of the Class ....... 17

C. This Case Satisfies the Requirements of Rule 23(b)(3) ....... 19

1. Common Questions of Law and Fact Predominate ....... 19

2. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Action ....... 21

D. The Court Should Appoint Lead Plaintiffs' Choice of Counsel as Class Counsel Under Rule 23(g) ....... 22

IV. CONCLUSION ....... 23

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)....2, 19

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)....8, 10

*Beach v. Healthways, Inc.*,
2010 U.S. Dist. LEXIS 33765 (M.D. Tenn. Apr. 2, 2010)....8, 19

*Beattie v. CenturyTel, Inc.*,
511 F.3d 554 (6th Cir. 2007)....17, 19

*Beaver Cty. Emps. Ret. Fund v. Tile Shop Holdings, Inc.*,
2016 U.S. Dist. LEXIS 99479 (D. Minn. July 28, 2016)....20

*Bovee v. Coopers & Lybrand*,
216 F.R.D. 596 (S.D. Ohio 2003)....11, 17

*Burges v. BancorpSouth, Inc.*,
2017 U.S. Dist. LEXIS 97953 (M.D. Tenn. June 26, 2017).... *passim*

*Cates v. Cooper Tire & Rubber Co.*,
253 F.R.D. 422 (N.D. Ohio 2008)....10

*Daffin v. Ford Motor Co.*,
458 F.3d 549 (6th Cir. 2006)....10

*Davis v. Avco Corp.*,
371 F. Supp. 782 (N.D. Ohio 1974)....8

*Eshe Fund v. Fifth Third Bancorp.*,
2008 U.S. Dist. LEXIS 128466 (S.D. Ohio Dec. 16, 2008)....7

*Garden City Employees' Retirement System v. Psychiatric Solutions, Inc.*,
No. 3:09-cv-00882-WJH (M.D. Tenn.)....23

*Garden City Emps. Ret. Sys. v. Psychiatric Sols.*,
2012 U.S. Dist. LEXIS 44445 (M.D. Tenn. Mar. 29, 2012).... *passim*

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983)....20

*Hicks v. Morgan Stanley*,
2003 U.S. Dist. LEXIS 11972 (S.D.N.Y. July 16, 2003)....19

**Page**

*In re Accredo Health, Inc.*,
2006 U.S. Dist. LEXIS 97621 (W.D. Tenn. Mar. 7, 2006) ....................19

*In re Accredo Health, Inc. Sec. Litig.*,
2006 U.S. Dist. LEXIS 97620 (W.D. Tenn. April 19, 2006) ....................9

*In re Am. Int'l Grp., Inc.*,
741 F. Supp. 2d 511 (S.D.N.Y. 2010)....................15

*In re Am. Med. Sys.*,
75 F.3d 1069 (6th Cir. 1996) ....................11, 13, 17, 19

*In re Barclays Bank PLC Sec. Litig.*,
2016 U.S. Dist. LEXIS 75663 (S.D.N.Y. June 9, 2016)....................9

*In re Cardinal Health Inc. Sec. Litig.*
528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) ....................22, 23

*In re Citigroup Bond Litig.*,
723 F. Supp. 2d 568 ....................16

*In re Constar Int'l Sec. Litig.*,
585 F.3d 774 (3d Cir. 2009)....................2, 9, 20

*In re Corrugated Container Antitrust Litig.*,
643 F. 2d 195 (5th Cir. 1981) ....................17

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2009) ....................15

*In re Direct Gen. Corp. Sec. Litig.*,
2006 U.S. Dist. LEXIS 56128 (M.D. Tenn. Aug. 8, 2006) .................... *passim*

*In re Dollar Gen. Corp. Sec. Litig.*,
No. 3:01-CV-00388 (M.D. Tenn.)....................23

*In re Dynex Capital Sec. Litig.*,
2011 U.S. Dist. LEXIS 22484 ....................15

*In re Enron Corp. Sec.*,
586 F. Supp. 2d 732 (S.D. Tex. 2008) ....................23

*In re Facebook, Inc.*,
312 F.R.D. 332 (S.D.N.Y. 2015) ....................20

*In re Friedman's, Inc. Sec. Litig.*,
385 F Supp. 2d 1345 (N.D. Ga. 2005) ....................15

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
2004 U.S. Dist. LEXIS 27043 (N.D. Ohio May 12, 2004)....................6, 7

*In re Juniper Networks, Inc. Sec. Litig.*,
542 F. Supp. 2d 1037 (N.D. Cal. 2008) ....................15

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
310 F.R.D. 230 (S.D.N.Y. 2015) ....................9

*In re Oppenheimer Rochester Funds Grp. Sec. Litig.*,
318 F.R.D. 435 (D. Colo. 2015) ....................20

*In re Prison Realty Sec. Litig.*,
117 F. Supp. 2d 681 (M.D. Tenn. 2000)....................16

*In re Prison Realty Sec. Litig.*,
No. 3:99-0452 (M.D. Tenn.)....................23

*In re Revco Sec. Litig.*,
142 F.R.D. 659 (N.D. Ohio 1992) ....................9

*In re UNUMProvident Corp., Sec. Litig.*,
396 F. Supp. 2d 858 (E. D. Tenn. 2005)....................13

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013) ....................21

*In re WorldCom, Inc. Sec. Litig.*,
219 F.R.D. 267 (S.D.N.Y. 2003) ....................15

*Kasper v. AAC Holdings*,
2017 U.S. Dist. LEXIS 109608 (M.D. Tenn. July 14, 2017) ....................8, 12

*Kinder v. Nw Bank*,
278 F.R.D. 176 (W.D. Mich. 2011)....................17

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
2016 U.S. Dist. LEXIS 153804 (S.D.N.Y. Nov. 4, 2016)....................9, 13

*Picard Chem. Profit Sharing Plan v. Perrigo Co.*,
1996 U.S. Dist. LEXIS 16330 (W.D. Mich. Sept. 27, 1996)....................9

**Page**

*Plumbers & Pipefitters Nat'l Pension Fund v. Burns*,
292 F.R.D. 515 (N.D. Ohio 2013) ....................8, 19

*Plumbers & Pipefitters Nat'l Pension Fund v. Burns*,
967 F. Supp. 2d 1143 (N.D. Ohio 2013)....................8, 19

*Plumbers & Pipefitters National Pension Fund v. Burns*,
No. 3:05-cv-07393-JGC (N.D. Ohio) ....................23

*Public Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*,
2011 U.S. Dist. LEXIS 93222 (S.D.N.Y. Aug. 22, 2011)....................9

*Rikos v. P&G*,
799 F.3d 497 (6th Cir. 2015),
*cert. denied*, __ U.S. __, 136 S. Ct. 1493 (2016)....................10

*Ross v. Abercrombie & Fitch Co.*,
257 F.R.D. 435 (S.D. Ohio 2009)....................9, 10, 13, 19

*Schuh v. HCA Holdings, Inc.*,
2014 U.S. Dist. LEXIS 132609 (M.D. Tenn. Sept. 22, 2014)....................3, 9, 13, 19

*Schuh v. HCA Holdings, Inc.*,
No. 3:11-cv-01033 (M.D. Tenn.)....................23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................8

*Wilkof v. Caraco Pharm. Labs., Ltd.*,
280 F.R.D. 332 (E.D. Mich. 2012) ....................8, 17

*Willis v. Big Lots*,
2017 U.S. Dist. LEXIS 38926 (S.D. Ohio Mar. 17, 2017)....................8, 18

*Young v. Nationwide Mut. Ins. Co.*,
693 F.3d 532 (6th Cir. 2012) ....................12

**STATUTES, RULES AND REGULATIONS**

11 U.S.C. §101 *et seq*....................1

**Page**

15 U.S.C.
§77k ... *passim*
§77k(e) ... 20
§77l(a)(2) ... *passim*
§77o ... 1, 2, 17, 19

Federal Rules of Civil Procedure
Rule 23 ... *passim*
Rule 23(a) ... 10, 11, 13, 23
Rule 23(a)(1) ... 10
Rule 23(a)(2) ... 12, 13
Rule 23(a)(4) ... 17, 19
Rule 23(b)(3) ... *passim*
Rule 23(g) ... 22

Lead Plaintiffs Kenneth Gaynor, Marcia Goldberg, Gabriel R. Hull, and Christopher R. Vorrath (collectively, "Lead Plaintiffs") respectfully submit this memorandum of law in support of Lead Plaintiffs' motion for class certification and to appoint class representatives and class counsel.

## I. INTRODUCTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiffs seek certification of a class consisting of:

> All persons or entities who purchased or otherwise acquired Miller Energy preferred shares pursuant and/or traceable to the public offerings on February 13, 2013, May 8, 2013, and/or June 28, 2013 Final Prospectus Supplements for the 10.75% Series C Cumulative Redeemable Preferred Stock ("Series C") and/or the public offerings on September 26, 2013, October 17, 2013, and/or August 21, 2014 Final Prospectus Supplements for the 10.5% Series D Fixed Rate/Floating Cumulative Redeemable Preferred Stock ("Series D") filed with the U.S. Securities and Exchange Commission ("SEC") (collectively, "Offerings") and who were damaged thereby ("Class"). Excluded from the Class are Defendants and their families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.[1]

Lead Plaintiffs also seek an Order: (i) appointing themselves as Class Representatives; and (ii) appointing the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Class Counsel and Barrett Johnston Martin & Garrison, LLC ("Barrett Johnston") as Local Class Counsel.

This class action arises from Miller Energy's issuance of a Form S-3 registration statement filed with the SEC on September 6, 2012 ("Registration Statement") and six prospectus supplements ("Prospectus Supplement(s)") that contained and incorporated false and misleading financial

[1] "Defendants" are Deloy Miller, Scott M. Boruff, David J. Voyticky, Catherine A. Rector, David M. Hall, Merrill A. McPeak, Gerald Hannahs, Charles M. Stivers, Don A. Turkleson, Bob G. Gower, Joseph T. Leary, William B. Richardson, Marceau N. Schlumberger, Paul W. Boyd, and the underwriters MLV & Co. LLC, Maxim Group LLC, National Securities Corporation, Aegis Capital Corp., Northland Capital Markets, Dominick & Dominick, LLC (n/k/a Dominick & Dickerman LLC), Ladenburg Thalmann & Co. Inc. (n/k/a Ladenburg Thalmann Financial Services Inc.), and I-Bankers Securities, Inc. This matter has been stayed against underwriter Williams Financial Group pursuant to Sections 301(b) and 362(a) of the U.S. Bankruptcy Code, 11 U.S.C. §101 *et seq.*

accounting and reporting, relating to the valuation of certain oil and gas properties in Alaska ("Alaska Assets").[2] Pursuant to the Registration Statement and Prospectus Supplements, Defendants sold approximately 6.21 million shares of Miller Energy Series C and/or Series D preferred shares. The Master Consolidated Complaint ("Complaint") alleges violations of Sections 11, 12(a)(2),[3] and 15 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§77k, 77l(a)(2), and 77o.[4] The Class suffered statutory damages under the Securities Act.

This securities case is ideally suited for class certification because of the predominance of common issues of fact and the impracticability of bringing individual actions to redress a common wrong. As noted in the Advisory Committee comments to Rule 23:

> Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote, [sic] uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.

Fed. R. Civ. P. 23(b)(3) advisory committee's notes to 1966 amendment.

Further, the Supreme Court has repeatedly recognized that "[p]redominance is a test readily met in certain cases alleging" violations of the federal securities laws. *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). Moreover, for cases like this one brought under the Securities Act, class certification should be even less controversial given the formulaic nature of the claims which do not require proof of reliance. *See In re Constar Int'l Sec. Litig*., 585 F.3d 774, 785 (3d Cir. 2009) ("The

---

[2] "Alaska Assets" refers to all of the assets that Miller Energy obtained ownership of on December 10, 2009 from Pacific Energy Resources, Ltd. in exchange for $2,250,000, including, but not limited, to the West McArthur River oil field, the West Foreland natural gas field, the Redoubt field and related Osprey offshore platform and Kustatan Production Facility, as well as 602,000 acres of oil and gas leases, as alleged in the Complaint.

[3] The Court granted Defendants' motions to dismiss with respect to Section 12(a)(2) against all Defendants. ECF No. 106 at 16, 40.

[4] All paragraph references "¶__" are to the Complaint. ECF No. 92. Citations, internal quotations, and footnotes omitted and emphasis added unless noted otherwise.

formulaic nature of § 11 leaves defendants with little room to maneuver."); *see also Schuh v. HCA Holdings, Inc.*, No. 3:11-01033, 2014 U.S. Dist. LEXIS 132609 (M.D. Tenn. Sept. 22, 2014); *In re Direct Gen. Corp. Sec. Litig.*, No. 3:05-0077, 2006 U.S. Dist. LEXIS 56128, at *11-12 (M.D. Tenn. Aug. 8, 2006). Lead Plaintiffs respectfully submit that their motion for class certification should be granted.

## II. STATEMENT OF FACTS COMMON TO THE CLASS

### A. Background

Miller Energy was an independent oil and natural gas exploration, production, and drilling company operating in multiple exploration and production basins in North America. ¶40. In the fall of 2009, Miller Energy became aware of the Alaska Assets that were in the process of being "abandoned" as part of the bankruptcy proceedings of California-based Pacific Energy Resources, Ltd. ¶42. On December 10, 2009, Miller Energy's operating subsidiary, Cook Inlet Energy closed a transaction to purchase the Alaska Assets for $2.25 million in cash and the assumption of certain limited liabilities. ¶45.

Miller Energy subsequently submitted SEC filings that drastically overstated the value of the Alaska Assets. ¶46. When computing that fair value, Miller Energy improperly relied on a reserve report ("Reserve Report") prepared by an independent petroleum engineering firm. ¶63. The Reserve Report calculated the pretax present value of net cash flows discounted at 10% ("PV-10") for the Alaska Assets, concluding that the PV-10 was $368 million. ¶¶66, 68. Although PV-10 calculations are frequently used to satisfy supplemental accounting disclosure requirements concerning estimates of future oil and gas production, those calculations are not considered "an estimate of fair market value." ¶¶64, 70, 73-85. Accordingly, the Reserve Report was not a basis to calculate an estimate of fair market value of the Alaska Assets and explicitly stated that "[t]he discounted values shown are for your information and should not be construed as our estimate of fair

market value." ¶70. Moreover, the engineering firm that drafted the Reserve Report expressly stated that Miller Energy would ***not*** use the Reserve Report as a measure of the fair market value for the Alaska Assets. ¶67.

Nevertheless, Miller Energy improperly used the Reserve Report as the only support for fair market value of the Alaska Assets. ¶69. On March 22, 2010, Miller Energy filed its quarterly report on Form 10-Q with the SEC claiming a value for the Alaska Assets of approximately $480 million, comprised of approximately $368 million for oil and gas properties and approximately $110 million for fixed assets. ¶46. Miller Energy also reported an after-tax $277 million "bargain purchase gain," which boosted its reported net income for the quarter to $272 million, as compared to a $556,097 loss for the same period in the prior year. ¶46.

The use of the Reserve Report's PV-10 calculation of $368 million as the estimated fair market value of the oil and gas properties within the Alaska Assets was improper for numerous additional reasons. ¶¶73-85. The Reserve Report did ***not*** make adjustments for income taxes, used an improper discount rate of 10%, failed to apply any risk weight to cash flows from oil reserves, omitted amounts for certain asset retirement obligations, and understated projected operating and capital expenses. *Id*. Additionally, the $110 million value for fixed assets was improper, as that value was already incorporated into the Reserve Report and, therefore, was double counted; the Redoubt Shoal Field could not generate cash flow without incurring upfront capital expenditures, which were not included; and the value reflected an "asset replacement cost," which cannot qualify as fair market value under Generally Accepted Accounting Principles absent further adjustments. ¶¶89-94.

The extreme overvaluation of the Alaska Assets resulted in a nearly 5,000% increase in Miller Energy's total assets, and had a significant impact on the market price of Miller Energy

common stock. ¶51. On March 31, 2010 – less than two weeks after the Company reported the inflated valuation of the Alaska Assets – Miller Energy's common stock closed at $6.60 per share, 982% higher than its $0.61 closing price when the Alaska Assets were purchased. ¶51. Weeks later, the listing of Miller Energy stock was moved to the NASDAQ, and a year later the listing was moved to the NYSE where the stock reached an all-time high of $8.83 per share and achieved a market capitalization of $393 million on December 9, 2013. *Id.*

**B. The False and Misleading Registration Statement and Prospectus Supplements**

On or about September 6, 2012, Miller Energy filed with the SEC the Registration Statement. ¶52. The Registration Statement expressly incorporated by reference certain periodic financial reporting filings Miller Energy had previously made with the SEC, as well as all future filings occurring up until the termination of the Offerings. ¶52. Miller Energy used a "shelf" registration process, or continuing registration process, through which the Company would first file the Registration Statement and would subsequently sell classes of securities on an ongoing basis. Under that process, Miller Energy would file a Prospectus Supplement each time a class of securities was actually offered for sale, and that Prospectus Supplement would provide the necessary information about that particular offering of securities. *Id.*

On September 18, 2012, the SEC declared the Registration Statement to be effective. ¶53. From February 13, 2013 to August 21, 2014, Miller Energy issued three offerings of Series C and three offerings of Series D preferred shares. ¶54. For each of the Offerings, Miller Energy issued a separate Prospectus Supplement, each of which incorporated the very same financial forms that Miller Energy had filed with the SEC that overstated the value of the Alaska Assets. ¶¶54-56. Lead Plaintiffs purchased both Series C and/or Series D preferred shares pursuant to and/or traceable to the Offerings. ¶¶12-15.

Following the Offerings, a series of disclosures made by the Company revealed that the Registration Statement and each Prospectus Supplement were false and misleading in that they overstated the value of the Alaska Assets. On December 10, 2014, Miller Energy disclosed in a Form 10-Q that it was taking a $265.3 million impairment charge on the Alaska Assets, specifically for the Redoubt Shoal Field. ¶106. On March 12, 2015, Miller Energy disclosed that it was taking another $150 million impairment charge on the Alaska Assets. ¶107.

From April 29, 2015 through June 7, 2016, the Company made additional disclosures regarding an SEC civil administrative action against Miller Energy, Defendants Paul W. Boyd ("Boyd"), and David M. Hall ("Hall"); Miller Energy's settlement with the SEC; the SEC's order finding that Miller Energy violated the Securities Act and Securities Exchange Act of 1934; the SEC's imposition of sanctions on Boyd, Hall, and Carlton W. Vogt, III; the delisting of Miller Energy's common stock, Series C preferred stock, and Series D preferred stock from the NYSE; Miller Energy's filing for Chapter 11 bankruptcy protection; the confirmation of Miller Energy's bankruptcy plan; Miller Energy's cancellation of all equity interests, including the Series C and Series D preferred shares; and Miller Energy's statement that all financial statements from fiscal 2010 to March 2016 could not be relied upon. ¶¶108-135. As a result of Defendants' conduct, Lead Plaintiffs suffered damages from their purchases of Series C and/or Series D preferred shares pursuant to and/or traceable to the Offerings.

### C. The Proposed Class Representatives

On December 27, 2016, Kenneth Gaynor, Marcia Goldberg, Gabriel R. Hull, and Christopher R. Vorrath were appointed Lead Plaintiffs for all members of the proposed Class. ECF No. 91. Pursuant to the PSLRA, the Court made a preliminary finding of Lead Plaintiffs' adequacy and typicality as part of the appointment order. ECF No. 87 at 6 (a lead plaintiff must also "satisf[y] the requirements of Rule 23"); *see also In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 5:03CV2166,

2004 U.S. Dist. LEXIS 27043, at *27 (N.D. Ohio May 12, 2004) ("[T]he Court must find that [plaintiff] would satisfy Rule 23's typicality and adequacy requirements before it can appoint [plaintiff] as lead plaintiff."). The Court similarly appointed Robbins Geller and Barrett Johnston as lead and local counsel. *See* ECF No. 91; *see also Eshe Fund v. Fifth Third Bancorp*., No 1:08-cv-421, 2008 U.S. Dist. LEXIS 128466, at *33 (S.D. Ohio Dec. 16, 2008) (finding Coughlin Stoia, currently known as Robbins Geller, adequate co-lead counsel at the lead plaintiff stage).

As Lead Plaintiffs, Mr. Gaynor, Ms. Goldberg, Mr. Hull, and Mr. Vorrath have expended time and effort in informing themselves about this case, and through qualified counsel, have vigorously prosecuted this action on behalf of the proposed Class. *See* generally Declarations of Kenneth Gaynor, Marcia Goldberg, Gabriel R. Hull, and Christopher R. Vorrath in Support of Lead Plaintiffs' Motion for Class Certification, submitted herewith, as Exhibits A-D to the Declaration of Stephen Astley in Support of Lead Plaintiffs' Motion for Class Certification ("Astley Decl."). They have represented the proposed Class by overseeing and communicating with Lead Counsel while staying apprised of the ongoing developments in the case. *Id.* Lead Counsel, in turn, conducted an extensive investigation into Defendants' alleged misconduct and successfully opposed Defendants' motions to dismiss. *See* ECF Nos. 97-98, 99, 101-102, 104-105. Lead Plaintiffs will continue to take an active role in the litigation to advance the interests of the proposed Class and fully understand the duties and responsibilities of a class representative and, if appointed, will fulfill them. *Id*.

As set forth herein, Lead Plaintiffs move the Court to appoint them as Class Representatives in this action. Lead Plaintiffs acquired over 109,000 Miller Energy Series C and/or Series D preferred shares pursuant to and/or traceable to the Offerings and suffered damages as a result of Defendants' violations of the federal securities laws alleged herein.

## III. ARGUMENT

### A. Courts Favor Class Treatment of Securities Class Actions

The Supreme Court has repeatedly recognized the importance of class actions in redressing wrongs committed under the federal securities laws. *See, e.g., Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013) ("Congress, the Executive Branch, and this Court . . . have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions . . . ."); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313-14, 320 (2007) (same).

Rule 23 allows for the effective enforcement of the securities laws for large numbers of individual investors who have suffered injuries, but who do not have sufficient economic resources or the individual interest to incur the expense or inconvenience of an individual lawsuit. By providing a single forum to litigate the same or similar claims, a class action affords an indispensable mechanism for numerous investors nationwide to seek redress while conserving judicial resources. Accordingly, Courts recognize a preference for class certification in securities cases. "[T]aking the issue in the context of the securities laws . . . the interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing the class action." *Davis v. Avco Corp.*, 371 F. Supp. 782, 791 (N.D. Ohio 1974).

Applying these principles, courts within this Circuit overwhelmingly find cases involving the violation of federal securities laws appropriate for class treatment.[5] Furthermore, courts in this

---

[5] *See, e.g., Burges v. BancorpSouth, Inc.*, No. 3:14-cv-1564, 2017 U.S. Dist. LEXIS 97953 (M.D. Tenn. June 26, 2017); *Kasper v. AAC Holdings*, No. 15-cv-00923-JPM-jsf, 2017 U.S. Dist. LEXIS 109608 (M.D. Tenn. July 14, 2017); *Willis v. Big Lots*, No. 2:12-cv-604, 2017 U.S. Dist. LEXIS 38926 (S.D. Ohio Mar. 17, 2017); *Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, 292 F.R.D. 515 (N.D. Ohio 2013) ("*Burns I*"); *Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, 967 F. Supp. 2d 1143 (N.D. Ohio 2013) ("*Burns II*"); *Wilkof v. Caraco Pharm. Labs., Ltd.*, 280 F.R.D. 332 (E.D. Mich. 2012); *Garden City Emps. Ret. Sys. v. Psychiatric Sols.*, No. 3:09-00882, 2012 U.S. Dist. LEXIS 44445 (M.D. Tenn. Mar. 29, 2012); *Beach v. Healthways, Inc.*, No. 3:08-0569, 2010

Circuit have found cases alleging violations of the Securities Act particularly suited for class certification, as those cases do not require that any investor specifically relied on the defendants' false and misleading statements. *Constar*, 585 F.3d at 784 (3d Cir. 2009) ("reliance is irrelevant in a § 11 case, a § 11 case will never demand individualized proof as to an investor's reliance or knowledge"); *see also Public Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, No. 08-Civ 10841 (JSR), 2011 U.S. Dist. LEXIS 93222, at *6-7 (S.D.N.Y. Aug. 22, 2011) ("[a]s courts have repeatedly found, suits alleging violations of the securities laws, particularly those brought pursuant to Sections 11 and 12(a)(2), are especially amenable to class action resolution.").[6] Additionally, courts routinely certify Securities Act class actions against underwriters that released false and misleading statements in Offering documents to class members. *See, e.g.*, *Schuh*, 2014 U.S. Dist. LEXIS 132609, *Direct Gen.*, 2006 U.S. Dist. LEXIS 56128, at *11-12; *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, No. 08-CV-5310 (DAB), 2016 U.S. Dist. LEXIS 153804, at *38 (S.D.N.Y. Nov. 4, 2016); *In re Barclays Bank PLC Sec. Litig.*, No. 09 Civ. 1989 (PAC), 2016 U.S. Dist. LEXIS 75663, at *26 (S.D.N.Y. June 9, 2016); *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 232 (S.D.N.Y. 2015).

This case is no different. As demonstrated below, Lead Plaintiffs have satisfied each requirement under Rule 23(a) and Rule 23(b)(3) and the proposed Class should be certified.

---

U.S. Dist. LEXIS 33765 (M.D. Tenn. Apr. 2, 2010); *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 451 (S.D. Ohio 2009); *In re Accredo Health, Inc. Sec. Litig.*, No. 03-2216 DP, 2006 U.S. Dist. LEXIS 97620, at *7 (W.D. Tenn. April 19, 2006).

[6] *See also Schuh*, 2014 U.S. Dist. LEXIS 132609; *Direct Gen.*, 2006 U.S. Dist. LEXIS 56128, at *11-12; *Picard Chem. Profit Sharing Plan v. Perrigo Co.*, 1996 U.S. Dist. LEXIS 16330 (W.D. Mich. Sept. 27, 1996); *In re Revco Sec. Litig.*, 142 F.R.D. 659 (N.D. Ohio 1992)

### B. This Case Satisfies the Requirements of Rule 23(a)

Under Rule 23, class certification is a two-step process. *Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422, 428 (N.D. Ohio 2008). The prerequisites under Rule 23(a) are: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. *Id.* In this action, Lead Plaintiffs seek certification under Rule 23(b)(3), which requires a showing that: (i) common questions of fact and law predominate over any individual questions; and (ii) a class action is superior to other available methods for adjudicating the controversy. *Ross*, 257 F.R.D. at 451.

A "district court maintains substantial discretion in determining whether to certify a class." *Rikos v. P&G*, 799 F.3d 497, 504 (6th Cir. 2015), *cert. denied*, __ U.S. __, 136 S. Ct. 1493 (2016). Nevertheless, the Supreme Court has made clear that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 505 (quoting *Amgen*, 568 U.S. at 466). "Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* While Lead Plaintiffs have the burden of showing Rule 23 requirements are met, they do not have to show at the class certification stage that they will prevail on the merits of their claims. *See Ross*, 257 F.R.D. at 441. Rather, Lead Plaintiffs need only show that the elements of the underlying claim, in this case violations of Section 11 of the Securities Act, are capable of proof at trial through evidence that is common to the Class, which Lead Plaintiffs do here. As demonstrated below, each of the requirements of Rule 23(a) is satisfied here.

#### 1. The Class Is Numerous

Rule 23(a)(1) requires the proposed class to be so numerous that joinder of all members is impracticable. "[T]here is no strict numerical test" and "substantial numbers usually satisfy the numerosity requirement." *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006). "Numerosity is generally assumed to have been met in class action suits involving nationally traded

securities." *Burges*, 2017 U.S. Dist. LEXIS 97953, at *6. The Sixth Circuit has "held that a class of 35 was sufficient to meet the numerosity requirement." *See In re Am. Med. Sys.*, 75 F.3d 1069, 1076 (6th Cir. 1996). "Plaintiffs need not demonstrate that it would be impossible to join all the putative class members; rather, they need simply show that joinder would be difficult and inconvenient." *Direct Gen.*, 2006 U.S. Dist. LEXIS 56128, at *8-9.

According to Miller Energy's documents filed with the SEC, 625,000 Miller Energy preferred shares were issued pursuant to the February 13, 2013 Series C Offering's Prospectus Supplement; 500,00 Miller Energy preferred shares were issued pursuant to the May 8, 2013 Series C Offering's Prospectus Supplement; 335,000 Miller Energy preferred shares were issued pursuant to the June 28, 2013 Series C Offering's Prospectus Supplement; one million Miller Energy preferred shares were issued pursuant to the September 26, 2013 Series D Offering's Prospectus Supplement; three million Miller Energy preferred shares were issued pursuant to the October 17, 2013 Series D Offering's Prospectus Supplement; and 750,000 Miller Energy preferred shares were issued pursuant to the August 21, 2014, Series D Offering's Prospectus Supplement. ¶54. Thus, the Offerings sold upwards of 6.21 million Series C and Series D preferred shares, and raised over $151.015 million in gross proceeds. *Id.* While the exact number of persons who acquired Miller Energy Series C and/or Series D preferred shares pursuant to and/or traceable to the Offerings is unknown, Lead Plaintiffs believe the members of the proposed Class likely number in the thousands with the members residing throughout the United States. These facts create a rebuttable presumption that the Class consists of hundreds or even thousands of investors, making individual joinder impracticable, if not logistically impossible. Thus, the proposed Class satisfies Rule 23(a)'s numerosity requirement. *See Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 608 (S.D. Ohio 2003).

### 2. Common Questions of Law and Facts Exist for All Class Members

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." To demonstrate commonality, "[t]he interests and claims of the various Plaintiffs need not be identical. Rather, the commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members." *AAC Holdings*, 2017 U.S. Dist. LEXIS 109608, at *13; *Psychiatric Sols.*, 2012 U.S. Dist. LEXIS 44445, at *93. The mere fact that questions "peculiar to each individual member of the class" could remain does not necessarily defeat a finding of commonality; especially when liability is premised on a single course of conduct. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012).

The proposed Class satisfies this requirement. Lead Plaintiffs allege that Defendants made material written misrepresentations and omissions to the investing public in the Registration Statement and Prospectus Supplements filed with the SEC with respect to the Company's financial accounting and reporting. More specifically, Miller Energy repeatedly overstated the value of the Alaska Assets in its periodic financial reports filed with the SEC between 2010 and August 2015, and publicly defended its valuations and financial reports as being correct and complete following its acquisition of the Alaska Assets. ¶5. Furthermore, Lead Plaintiffs allege that Defendants disseminated substantially the same omissions and misrepresentations concerning Company's financial accounting and reporting, as well as audit failures relating to the valuation of the Alaska Assets at $480 million to all Class members through the same SEC filings, which all relied on the Reserve Report. ¶¶55-56. Those uniform misrepresentations to investors raise the following common questions of law or fact: (a) whether defendants violated the Securities Act; (b) whether the Registration Statement and Prospectus Supplements were negligently prepared and contained inaccurate statements of material fact and omitted material information required to be stated therein;

and (c) to what extent the members of the Class have sustained damages and the proper measure of damages. ¶140.

The Offerings made uniform misleading statements to all investors, and the existence and materiality of those alleged misrepresentations and omissions are common, class-wide issues. *See In re UNUMProvident Corp., Sec. Litig.*, 396 F. Supp. 2d 858, 870-71 (E. D. Tenn. 2005). In this case, absent class members would have to prove similar or identical facts and address similar or identical legal issues if they pursued their claims individually, and Defendants would raise the same defenses. Accordingly, the proposed Class satisfies the commonality requirement of Rule 23(a)(2). *See Ross*, 257 F.R.D. at 443; *see Psychiatric. Sols.*, 2012 U.S. Dist. LEXIS 44445, at *92-97; *Direct Gen*., 2006 U.S. Dist. LEXIS 56128, at *10; *Schuh*, 2014 U.S. Dist. LEXIS 132609, at *15; *see also Burges*, 2017 U.S. Dist. LEXIS 97953, at *8 (holding that the "alleged misstatements and omissions were the same as relates to all potential class members" and "[d]etermination of their truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke"); *Carpenters*, 2016 U.S. Dist. LEXIS 153804, at *9 ("Rooted as the case is in Section 11 & 12 claims, [e]ach Proposed Class members' claim will succeed on proof of the same findings: that the registration statement and prospectus for the ... [Securities] contained untrue statements or omissions of material fact and that the Defendants underwrote the ... [Securities].").

### 3. The Proposed Class Representatives' Claims Are Typical of the Class

Rule 23(a) requires that the claims of the representative parties be typical of the claims of the prospective class. The typicality requirement focuses on both the type of injury suffered by the class members and the interests of the class members. *Am. Med. Sys*., 75 F.3d at 1082. A plaintiff's claim is considered "typical" if it arises from the same course of conduct that gives rise to the claims of the other class members or if it is based on the same legal theory. *Id*.

Lead Plaintiffs' claims are typical of, if not identical to, the claims of the other proposed Class members. Lead Plaintiffs and proposed Class members acquired their Miller Energy shares pursuant to and/or traceable to the Offerings and were subject to the same set of material misstatements and omissions in the Offerings concerning the Company's financial accounting and reporting for the Alaska Assets. ¶¶55-56. The Offerings were each materially identical and were all issued pursuant to the same Registration Statement. ¶¶52-56. The Offerings expressly incorporated the same SEC filings, thus containing the same material misstatements and omissions. ¶¶54-55. Thus, the claims of the proposed Class Representatives arise from the same course of conduct that gives rise to the claims of every other Class member who acquired or purchased Miller Energy Series C and/or Series D preferred shares through the Offerings. Indeed, Miller Energy never issued any Series C or Series D stock pursuant to any other registration statement, and the Court previously held that there was no "fundamental change" to the Registration Statement through the Supplemental Prospectuses filed in conjunctions with each Offering. *See* Memorandum Opinion and Order, dated August 11, 2017 [ECF No. 106] ("Order"), at 23 ("It appears, therefore, that plaintiffs base their claims upon the false valuations contained in the registration statement, and it would be implausible to infer, based on plaintiffs'' allegations, that later-filed prospectuses fundamentally altered the registration statement as to this alleged misevaluation."). As such, the proposed Class Representatives' claims are typical.

Furthermore, Lead Plaintiffs each have standing to pursue claims on behalf of the proposed Class and are thus not subject to a unique defense for this reason. *See* Order at 17 (finding "[P]laintiffs sufficiently allege that their shares are necessarily traceable to the registration statement, and plaintiffs, therefore have standing to pursue their Section 11 claim"). It is irrelevant whether each Lead Plaintiff purchased Series C or Series D preferred shares, as all of those shares arose from

the very same misleading Registration Statement. Courts have repeatedly held that a class representative has standing to represent class members who purchased a different security where all of the securities issued involved the same registration statement or misleading statements. *See, e.g.*, *In re Dynex Capital Sec. Litig.*, No. 05 Civ. 1897 (HB), 2011 U.S. Dist. LEXIS 22484, at *9-10 (holding that "it would be premature to defeat class certification on the basis that some Plaintiff did not purchase every single security forming the basis of the claims" and finding typicality even though the lead plaintiff only purchased one of the two series of bonds at issue, where the allegedly false and misleading statements for both offerings were identical); *see also In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037, 1052 (N.D. Cal. 2008) (holding that "[p]laintiffs with a valid securities claim may represent the interests of purchasers of other types of securities in a class action where the alleged harm stems from the same allegedly improper conduct"); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 281 (S.D.N.Y. 2003) (finding lead plaintiff typical and certifying a class despite lead plaintiff not purchasing a security from two of the offerings at issue where the claims were "based on misrepresentations in the Registration Statements and on the same core course of conduct"); *In re Friedman's, Inc. Sec. Litig.*, 385 F Supp. 2d 1345, 1372 (N.D. Ga. 2005) (holding that plaintiffs had standing to pursue Section 11 claims arising from two different offerings despite only purchasing shares from one of the offerings at issue).[7]

[7] *See also In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1166 (C.D. Cal. 2009) ("[I]t is not necessarily the case that someone who purchased securities that were first registered on the same form and prospectus, but that were issued with different prospectus or pricing supplements, lacks standing to represent prior purchasers. So long as (1) the securities are traceable to the same initial shelf registration and (2) the registration statements share common parts that (3) were false and misleading at each effective date, there is § 11 standing."); *In re Am. Int'l Grp., Inc.*, 741 F. Supp. 2d 511, 537-38 (S.D.N.Y. 2010) (concluding that plaintiffs had standing to assert claims premised on 101 different offerings made pursuant to the same shelf registration statements from which plaintiff had purchased securities, despite not having participated in all 101 offerings at issue).

Under these standards, any one of the Lead Plaintiffs could represent all of the proposed Class members. For example, the evidence confirms that Ms. Goldberg purchased shares directly in the August 21, 2014 Offering.[8] Her trade confirmation shows the date of purchase was August 20, 2014, that the transaction "process date" was the Offering date of August 21, 2014, and "settlement date" typical for any securities purchase was a few days later on August 25, 2014. *See* Exhibit E to the Astley Decl. Due to the fact that Ms. Goldberg is a direct purchaser, evidence of tracing is unnecessary, and she has standing to represent all purchasers stemming from the Registration Statement. *See In re Citigroup Bond Litig*., 723 F. Supp. 2d 568, 585 ("[T]he complaint alleges that at least one named plaintiff purchased securities pursuant to each of those allegedly actionable shelf registration statements. That is sufficient, at this stage, to establish plaintiffs' standing to raise claims on behalf of all those who purchased pursuant to those shelf registration statements and thus to challenge all forty eight offerings."); *see also In re Prison Realty Sec. Litig*., 117 F. Supp. 2d 681, 690-91 (M.D. Tenn. 2000) ) ("[A] § 11 cause of action can be brought by anyone who purchased stock under a registration statement, regardless of when the purchase was made. . . . [T]he Court finds that the Plaintiffs who obtained shares issued pursuant to and traceable to the Joint Proxy have standing to assert § 11 claims").

Additionally, although not necessary for class certification, Lead Plaintiffs have established that at least one Lead Plaintiff purchased Series C and/or Series D preferred shares. Mr. Vorrath and Mr. Hull purchased Series C preferred shares and Mr. Hull and Mr. Gaynor purchased Series D

[8] Discovery in this case is ongoing. As referenced in Exhibits A-D to the Astley Decl., submitted herewith, Ms. Goldberg purchased her Series D preferred shares pursuant to the August 21, 2014 Series D Offering, and Mr. Gaynor, Mr. Hull, and Mr. Vorrath each purchased their Series C and/or Series D preferred shares pursuant to and/or traceable to the Offerings.

preferred shares. Accordingly, in addition to Ms. Goldberg, the other Lead Plaintiffs can act as Class Representatives for both the Series C and Series D preferred shares.[9]

Therefore, Lead Plaintiffs and the proposed Class will focus on the same misrepresentations and/or omissions and utilize the same legal theories to prove Defendants' liability. *See, e.g.*, *Bovee*, 216 F.R.D. at 609. And Lead Plaintiffs have standing to represent the entire proposed Class. Thus, Lead Plaintiffs' claims are typical of the Class.

### 4. Lead Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires the representative party to fairly and adequately protect the Class' interests. The Sixth Circuit applies two criteria to determine whether a representative of the class will be adequate: (1) the representative must have common interests with unnamed members of the class (common interests), and (2) it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel (vigorous prosecution). *Kinder v. Nw Bank*, 278 F.R.D. 176, 184 (W.D. Mich. 2011) (citing *Am. Med. Sys*., 75 F.3d at 1083).

The proposed Class Representatives satisfy both prongs of the adequacy test of Rule 23(a)(4). Like the rest of the Class, the proposed Class Representatives sustained their losses as a result of the same alleged material misrepresentations and omissions in the Registration Statement and Prospectus Supplements. Thus, the proposed Class Representatives' interests are not antagonistic to those of the Class. *See In re Corrugated Container Antitrust Litig*., 643 F. 2d 195,

---

[9] Because Lead Plaintiffs suffered damages under Sections 11 and 15, the fact that Lead Plaintiffs may have sold their Miller Energy preferred shares at times that differ from other class members only means that the amount of their damages may vary, and does not undermine a finding of typicality. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 563 (6th Cir. 2007); *see also Wilkof*, 280 F.R.D. at 340 (rejecting defendants' attacks on typicality and adequacy based on the timing of class members' securities transactions, noting that "[p]laintiffs in this case all must make the same central claim; it is only when determining damages at a later stage that Plaintiffs will have to separately set out the particular injuries they suffered").

208 (5th Cir. 1981) ("[S]o long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes."); *accord Direct Gen.*, 2006 U.S. Dist. LEXIS 56128, at *14 (same).

Moreover, Lead Plaintiffs understand their roles and obligations as class representatives and have protected, and will continue to protect, the Class' interests. *See* Exhibits A-D. Lead Plaintiffs have been actively involved with this litigation; have participated in in-person meetings with their attorneys; and have regularly communicated regarding the litigation strategy, the status of litigation, and any major developments. *Id.* Lead Plaintiffs have also provided relevant documents to Lead Counsel, to be produced in discovery. *Id.*

The proposed Class Representatives are also adequate because they have retained experienced, competent counsel. Lead Plaintiffs have actively monitored Lead Counsel who have: (i) conducted a detailed factual investigation of Lead Plaintiffs' and the Class' claims; (ii) researched and briefed the opposition to Defendants' Notice of Removal; (iii) researched and prepared the Motion to Remand; (iv) researched and prepared the Complaint; (v) researched and briefed the opposition to Defendants' motions to dismiss; (vi) prepared and served discovery on Defendants and numerous third-parties; and (vii) prepared and filed this motion. *Id.*

Court appointed Lead Counsel Robbins Geller has successfully prosecuted securities class actions throughout the country and within this Circuit and is eminently qualified and experienced in complex securities litigation. Local Counsel, Barrett Johnston, is also qualified and experienced in complex securities litigation.[10] In fact, district courts in the Sixth Circuit have appointed Robbins Geller to serve as class counsel in securities actions on numerous occasions. *See, e.g.*, *Big Lots*, 2017 U.S. Dist. LEXIS 38926, at *650 ("[T]here can be no serious dispute that Robbins Geller is

---

[10] *See* résumés of Robbins Geller and Barrett Johnston, attached to the Astley Decl. as Exhibits F & G.

qualified, experienced, and generally able to conduct the litigation. . . . Defendants do not question Robbins Geller's ability to conduct the litigation.").[11] Thus, Lead Plaintiffs satisfy the adequacy requirements of Rule 23(a)(4) as they have "vigorously prosecute[d] the interests of the class through qualified counsel" and will continue to do so. *See Beattie*, 511 F.3d at 563; *Am. Med. Sys.*, 75 F.3d at 1083.

### C. This Case Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes certification where common questions of law or fact predominate over individual questions and the class action is superior to other available means of adjudication. Both requirements are satisfied here.

#### 1. Common Questions of Law and Fact Predominate

The Supreme Court has held, "[p]redominance is a test readily met in certain cases alleging . . . securities [claims]." *Amchem Prods.*, 521 U.S. at 625. Here, common questions of law or fact predominate over individual questions because liability issues are common to the class. Liability turns upon whether Defendants made material misrepresentations and/or omissions in the Offering documents. If Defendants are liable for this conduct, they are liable to all Class members in a like manner.

Lead Plaintiffs allege violations of Section 11 of the Securities Act.[12] Section 11 of the Securities Act allows purchasers of a registered security to sue certain enumerated parties when false

---

[11] *See also Burges*, 2017 U.S. Dist. LEXIS 97953; *Schuh*, 2014 U.S. Dist. LEXIS 132609; *Burns II*, 967 F. Supp. 2d 1143; *Burns I*, 292 F.R.D. 515; *Psychiatric Sols.*, 2012 U.S. Dist. LEXIS 145807; *Beach*, 2010 U.S. Dist. LEXIS 33765; *Ross*, 257 F.R.D. 435; *Direct Gen.*, 2006 U.S. Dist. LEXIS 56128; *In re Accredo Health, Inc.*, No. 03-2216 DP, 2006 U.S. Dist. LEXIS 97621 (W.D. Tenn. Mar. 7, 2006).

[12] "The Section 15 claim is derivative of the Section 11 and 12 claims, and thus, does not warrant separate consideration." *See Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (HB), 2003 U.S. Dist. LEXIS 11972, at *6 n.6 (S.D.N.Y. July 16, 2003).

and misleading information is included in a registration statement. *See* 15 U.S.C. §77k. If a plaintiff purchased a security issued pursuant to a registration statement, "he need only show a material misstatement or omission to establish his prima facie case." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983). Thus, in order to establish liability under Section 11, Lead Plaintiffs and the Class need only prove that the Defendants made untrue statements or omissions in the Offering documents. Accordingly, if Defendants are liable for this conduct, they are liable to all similarly situated Class members.

The calculation of the Class' proposed damages also does not undermine a finding of predominance under Rule 23(b)(3) as the formula for calculating damages pursuant to Section 11 is statutorily prescribed. *See* 15 U.S.C. §77k(e). In certifying classes alleging violations of Section 11, courts have held that because the damages calculation is done pursuant to a "common methodology determined by statute . . . the demands of Rule 23(b)(3) are met." *Beaver Cty. Emps. Ret. Fund v. Tile Shop Holdings, Inc.*, No. 14-786 ADM/TNL, 2016 U.S. Dist. LEXIS 99479, at *43 (D. Minn. July 28, 2016); *see also In re Facebook, Inc.*, 312 F.R.D. 332, 350 (S.D.N.Y. 2015) ("Because the [§11] statutory formula applies, the individual damages questions are sufficiently reduced that predominance of the common questions, answers, and facts remains."); *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 318 F.R.D. 435, 447 (D. Colo. 2015) ("because Securities Act damages are calculated using a statutory formula, [t]he means of determining them therefore would be common to all class members").[13] Finally, class members suffering from varying amounts of

[13] Even a statutorily prescribed affirmative defense that Defendants may offer to limit or disprove the existence of the damages is an issue that applies to the Class as a whole and does not prevent a finding of predominance. *See Constar*, 585 F.3d at 785 ("although loss causation is an affirmative defense in a § 11 case, this defense would not defeat predominance here. Section 11(e) allows defendants to limit damages by showing that plaintiffs' losses were caused by something other than their misrepresentations. Any affirmative defense on this ground would present a common issue--not an individual one").

damages is not enough to undermine predominance. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 861 (6th Cir. 2013) ("Because [r]ecognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal, in the mine run of cases, it remains the black letter rule that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members."); *Burges*, 2017 U.S. Dist. LEXIS 97953, at *27 ("Similarly, Defendants' argument concerning damages as an individualized issue will be addressed at trial. As noted above, the presence of questions peculiar to each individual member of the class is no bar when liability arose from a single course of conduct.").

Thus, Rule 23(b)(3)'s predominance requirement is readily met in this case.

### 2. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Action

Rule 23(b)(3) requires that a class action also be "superior to other available methods for fairly and efficiently adjudicating the controversy." The Court must consider four factors to ensure that superiority is met: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). Here, each factor weighs heavily in favor of class certification.

Courts have found the superiority requirement met where: (i) many of the class members likely have suffered only small losses, making it improbable that they can afford to proceed with their claims as individuals; (ii) use of the class action vehicle will achieve judicial economy and prevent inconsistent judgments; (iii) there are no other actions against defendants involving the same claims; and (iv) the court foresees no particular difficulties in adjudicating the class action. *See, e.g.*,

*Psychiatric Sols.*, 2012 U.S. Dist. LEXIS 44445, at *105 ("certification of . . . [securities] class action is a vastly superior method of adjudication because the common issues will only have to be heard and decided once, thereby promoting judicial efficiency.").

There can be no dispute that in this case a class action is superior to any other available methods of adjudication. Defendants' alleged violations of the federal securities laws caused economic injury to a large number of geographically dispersed investors, making the cost of pursuing individual claims impracticable. Resolving the claims on a class-wide basis will promote judicial economy since the alternative would be to have thousands of separate individual actions, which offers no practical recourse for most of the class members, and would burden the judicial system. Finally, the proposed Class Representatives foresee no management difficulties in maintaining this case as a class action.

### D. The Court Should Appoint Lead Plaintiffs' Choice of Counsel as Class Counsel Under Rule 23(g)

In deciding to appoint class counsel under Rule 23(g), the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's relevant experience and knowledge of applicable law; and (iii) the resources that counsel will commit to representing the class. The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. *Id.* Robbins Geller and Barrett Johnston satisfy these requirements.

Robbins Geller has committed time and resources to investigating and prosecuting this litigation and will continued to do so. *See* §III.B.4, *supra*. Further, Robbins Geller has substantial experience and knowledge of applicable laws relevant to this action. Among its accomplishments, Robbins Geller (then known as Coughlin Stoia Geller Rudman & Robbins LLP) served as lead counsel in *In re Cardinal Health Inc. Sec. Litig.*, obtaining the then-largest securities settlement in

the Sixth Circuit. In approving the requested attorneys' fees, Judge Marbley noted that "[t]he quality of representation in this case was superb." 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007). Similarly, after the firm secured the largest securities class action recovery in history in *Enron*, the trial court, commenting on counsel's "clearly superlative litigating and negotiating skills" and "outstanding reputation, experience, and success in securities litigation nationwide," observed: "[t]he experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country." *In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 789-90, 797 (S.D. Tex. 2008). More specifically, in the last few years, Robbins Geller has secured several notable recoveries under the federal securities laws for investors in the Sixth Circuit; including: *Schuh v. HCA Holdings, Inc.*, No. 3:11-cv-01033 (M.D. Tenn.) ($215 million), *Garden City Employees' Retirement System v. Psychiatric Solutions, Inc.*, No. 3:09-cv-00882-WJH (M.D. Tenn.) ($65 million); and *Plumbers & Pipefitters National Pension Fund v. Burns*, No. 3:05-cv-07393-JGC (N.D. Ohio) ($64 million).

Barrett Johnston has also served as Local Class Counsel on numerous occasions and has substantial experience and knowledge relevant to this action. *See, e.g.*, *In re Dollar Gen. Corp. Sec. Litig.*, No. 3:01-CV-00388 (M.D. Tenn.); *In re Prison Realty Sec. Litig.*, No. 3:99-0452 (M.D. Tenn.); *Garden City Employees' Retirement System v. Psychiatric Solutions, Inc.*, No. 3:09-cv-00882-WJH (M.D. Tenn.).

In light of the firms' expertise and diligent prosecution of the litigation to date, Lead Plaintiffs respectfully submit that the Court should honor their choice of counsel and appoint Robbins Geller as Class Counsel and Barrett Johnson as Local Class Counsel.

## IV. CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court: (i) certify this action as a class action pursuant to Rule 23(a) and (b)(3); (ii) appoint Lead Plaintiffs as

representatives of the proposed Class; and (iii) appoint Robbins Geller as Class Counsel and Barrett Johnson as Local Class Counsel.

DATED: January 19, 2018

ROBBINS GELLER RUDMAN
& DOWD LLP
JACK REISE (*pro hac vice*)
STEPHEN R. ASTLEY (*pro hac vice*)

*s/ Stephen R. Astley*
STEPHEN R. ASTLEY

120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN
& DOWD LLP
CHRISTOPHER M. WOOD, #032977
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2203
615/252-3798 (fax)

*Lead Counsel for Plaintiffs*

BARRETT JOHNSTON MARTIN
& GARRISON, LLC
DOUGLAS S. JOHNSTON, JR., #5782
JERRY E. MARTIN, #20193
TIMOTHY L. MILES, #21605
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2202
615/252-3798 (fax)

*Local Counsel for Plaintiffs*

LAW OFFICES OF CURTIS V. TRINKO, LLP
CURTIS V. TRINKO (*pro hac vice*)
16 West 46th Street, 7th Floor
New York, NY 10036
Telephone: 212/490-9550
212/986-0158 (fax)

KRANENBURG
WERNER R. KRANENBURG (*pro hac vice*)
80-83 Long Lane
London EC1A 9ET
United Kingdom
Telephone: +44 20 3174 0365

*Additional Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

I hereby certify that I caused a true and correct copy of the foregoing to be served on the following individuals via U.S. Mail on January 19, 2018:

David J. Voyticky
2652 Midvale Avenue
Los Angeles, CA 90064

Gerald Hannahs
17710 Leatha Lane
Little Rock, AR 72223

Paul W. Boyd
8125 Ainsworth Drive
Knoxville, TN 37909

Scott Boruff
3847 River Vista Way
Louisville, TN 37777

*Defendants*

*s/ Stephen R. Astley*
STEPHEN R. ASTLEY