UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| KENNETH GAYNOR, *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 3:15-CV-545-TAV-DCP |
| DELOY MILLER, *et al.*, | ) | |
| Defendants. | ) | |
| | ) | *Lead Case Consolidated with* |
| MARCIA GOLDBERG, *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 3:15-CV-546-TAV-DCP *as consolidated with* |
| DELOY MILLER, *et al.*, | ) | No. 3:16-CV-232-TAV-DCP |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the referral Order [Doc. 148] of the Chief District Judge.

Now before the Court is Lead Plaintiffs' Motion for Class Certification [Doc. 130]. The parties appeared before the Court on June 22, 2018, for a motion hearing. Attorneys Stephen Astley, Bailie L. Heikkinen, Christopher Wood, and Curtis Trinko appeared on behalf of Plaintiffs. Attorneys Stacey Mohr and Shayne Clinton appeared on behalf of the Underwriter Defendants.[1]

[1] The Underwriter Defendants include MLV & Co. LLC, Maxim Group, LLC, National Securities Corporation, Aegis Capital Corp., Northland Capital Markets, Dominick & Dickerman, LLC (f/k/a Dominick & Dominick LLC), Ladenburg Thalmann & Co., Inc., and I-Bankers Securities, Inc.

Attorneys Edward Totino and Stephen Marcum were present on behalf of the Individual Defendants.[2] Defendants Scott Boruff, Paul Boyd, and Gerald Hannahs did not attend the hearing. Accordingly, for the reasons set forth below, the Court **RECOMMENDS** that Plaintiffs' Motion [**Doc. 130**] be **GRANTED.**

## I. BACKGROUND

This case arises out of alleged violations of the Securities Act of 1933, 15 U.S.C. § 77a. The Master Consolidated Complaint ("Complaint") states that Plaintiffs are a group of individuals who purchased preferred shares traceable to the SEC Form S-3 on September 6, 2012 ("Registration Statement") issued in connection with the public offerings of Miller Energy's 10.75% Series C Cumulative Redeemable Preferred Stock ("Series C") and 10.5% Series D Fixed Rate/Floating Rate Cumulative Redeemable Preferred Stock ("Series D") (collectively, the "Offerings"). [Doc. 92 at ¶ 1]. The Offerings were as follows:

| Date | Preferred Shares | Price | Offering Name |
|---|---|---|---|
| Feb. 13, 2013 | Series C | $22.90 | "2/13/13-Series C" |
| May 8, 2013 | Series C | $22.25 | "5/8/13-Series C" |
| June 28, 2013 | Series C | $21.50 | "6/28/13-Series C" |
| Sept. 26, 2013 | Series D | $25.00 | "9/26/13-Series D" |
| Oct. 17, 2013 | Series D | At Market | "10/17/13-Series D" |
| Aug. 21, 2014 | Series D | $24.50 | "8/21/14-Series D" |

[2] The Individual Defendants include Deloy Miller, Charles Stivers, David Hall, Merrill McPeak, Don Turkleson, Marceau Schlumberger, Bob Gower, Joseph Leary, William Richardson, and Catherine Rector.

[*Id.*]. Defendants are current and former executive officers and directors of Miller Energy and the investment banking firms that wrote the Offerings. [*Id.* at ¶ 2].

The Complaint alleges that Miller Energy is an independent oil and natural gas exploration, production, and drilling company operating in multiple exploration and production basins in North America. [*Id.* at ¶ 40]. On December 10, 2009, Miller Energy's operating subsidiary, CIE, acquired oil and gas properties in Alaska ("Alaska Assets") for $2.25 million in cash and the assumption of certain limited liabilities. [*Id.* at ¶¶ 41, 45]. On March 22, 2010, Miller Energy claimed in its quarterly report filed on Form 10-Q for its fiscal third quarter ended January 31, 2010, a reported value for the Alaska Assets of approximately $480 million. [*Id.* at ¶ 46]. This evaluation was based on a reserve estimates report ("Reserve Report") prepared for it by an engineering firm. [*Id.*]. The Reserve Report stated that the numbers therein were not an estimate of fair market value. [*Id.* at ¶ 70]. The Complaint states that Miller Energy subsequently repeated the overstated value of the Alaska Assets in numerous filings with the SEC through August 2015. [*Id.* at ¶ 46].

As mentioned above, on September 6, 2012, Miller Energy filed with the SEC a Form S-3 Registration Statement and prospectus, using a "shelf" registration, or continuous offering process. [*Id.* at ¶ 52]. Under the shelf registration, Miller Energy would sell securities described in various future prospective supplements in one or more offerings. [*Id.*]. The prospectus supplements would form part of the Registration Statement for each Offering. [*Id.*]. The Registration Statement, which would later be utilized for all the other Offerings, expressly incorporated by reference certain filings Miller Energy had previously made with the SEC, as well as all future filings, until any offering conducted under the shelf registration statement was completed. [*Id.*]. The SEC declared the shelf Registration Statement effective on September 18, 2012. [*Id.*]. On the date of

each of the Offerings, Miller Energy and the Underwriter Defendants priced the Offerings and filed the final prospectuses for those Offerings, which formed part of the Registration Statement. [*Id.* at ¶ 54]. The Complaint states that the Offerings were successful for Miller Energy and the Underwriter Defendants, who sold upwards of 6.21 million Series C and D shares, raising an estimated $151.015 million in gross proceeds from the Offerings. [*Id.*].

The Complaint alleges that the Registration Statement, including the materials incorporated therein by reference (which expressly incorporated Miller Energy's Annual Report on Form 10-K for the year ended April 30, 2012, as well as various Current Reports on Form 8-K), and the final Prospectuses, which would include Forms 10-K, 10-Q, and 8K filed prior to each Offering, were negligently prepared. [*Id.* at ¶ 55]. As a result, the Registration Statement and Prospectuses contained untrue statements of material facts or omitted certain facts, rendering them as misleading. [*Id.*]. The Complaint further alleges that they were not prepared in accordance with the rules and regulations governing the preparation of such documents. [*Id.*]. Plaintiffs maintain that all of Miller Energy's interim and annual financial reports issued between 2010 and 2015, relying upon the Reserve Report, overstated the value of the Alaska Assets by millions of dollars by failing to record the Alaska Assets at fair value as required by Accounting Standards Codification ("ASC") 805, Business Combinations, and federal securities laws. [*Id.* at ¶ 56].

The Complaint states that on April 29, 2015, Miller Energy disclosed that it had received a "Wells Notice" from the SEC, indicating that the agency staff had made a preliminary determination to recommend civil action against Miller Energy related to its accounting for the 2009 acquisition of the Alaska Assets. [*Id.* at ¶ 108]. In September 2015, Miller Energy's Series C and D preferred shares were delisted on the New York Stock Exchange after the market price of each had plummeted to approximately $0.30 per share—a more than 98% decline from the prices

that the shares were marketed at in the Offerings. [*Id.* at ¶ 122]. Subsequently, on October 1, 2015, Miller Energy filed for bankruptcy under Chapter 11, citing in large part, the filing of the SEC action. [*Id.* at ¶ 123]. On March 29, 2016, Miller Energy disclosed on its Form 8-K filed with the SEC that under the bankruptcy plan, all equity interest in Miller Energy was not entitled to any distributions, and therefore, were cancelled. [*Id.* at ¶ 127].

Plaintiffs allege violations of Sections 11, 12(a)(2), and 15 of the Securities Act against the various Defendants. On August 11, 2017, the Chief District Judge dismissed Plaintiffs' Section 11 claim, Section 12 claim, and Section 15 claim predicated on its Section 12 claim against the Individual Defendants. [Doc. 106 at 40]. The Chief District Judge also dismissed Plaintiffs' Section 12 claim against the Underwriter Defendants. [*Id.*]. Plaintiffs' Section 15 claim predicated on its Section 11 claim was allowed to survive against the Individual Defendants as was Plaintiffs' Section 11 claim against the Underwriter Defendants. [*Id.*].

Lead Plaintiffs Kenneth Gaynor, Marcia Goldberg, and Christopher Vorrath have now moved to certify this case as a class action.[3]

## II. POSITIONS OF THE PARTIES

Plaintiffs request that the Court certify this matter as a class action pursuant to Federal Rule of Civil Procedure 23. Plaintiffs propose the following definition:

> All persons or entities who purchased or otherwise acquired Miller Energy preferred shares pursuant and/or traceable to all public offerings on February 13, 2013, May 8, 2013, and/or June 28, 2013, Final Prospective Supplements for the 10.75% Series C Cumulative Redeemable Preferred Stoke ("Series C") and/or the public offerings on September 26, 2013, October 17, 2013, and/or August 21, 2014,

[3] The Court observes that the Motion was also filed on behalf of Gabriel Hull. The parties stipulated [Doc. 139] to the voluntary dismissal of Hull's claims, after it was discovered during his deposition that he did not purchase any shares. Specifically, as Defendants pointed out in their Response [Doc. 140 at 30-31], Hull never bought or sold Miller Energy shares but simply traded on behalf of his mother.

> Final Prospective Supplements for the 10.5% Series D Fixed Rate/Flat Cumulative Redeemable Preferred Stock ("Series D") filed with the U.S. Securities and Exchange Commission ("SEC") (collectively, "Offerings") and who were damaged thereby ("Class"). Excluded from the Class are Defendants and their families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate family and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

[Doc. 131 at 8]. Plaintiffs request that they be appointed lead plaintiffs to serve as class representatives. In addition, they request that Robbins Geller Rudman & Dowd ("Robbins Geller") be appointed as class counsel and that Barrett Johnston Martin & Garrison, LLC, ("Barrett Johnston") be appointed as local class counsel.

In support of their Motion, Plaintiffs assert that the requirements of Rule 23(a) are met in this case. With respect to numerosity, Plaintiffs state that 6.21 million Series C and Series D preferred shares were sold. Plaintiffs submit that while the exact number of persons is unknown, they believe that there are thousands of members of the proposed class who reside throughout the United States.

Further, with respect to whether there are common questions of law or fact, Plaintiffs argue that the main allegations in this case are the same with every putative class member—that is, that Miller Energy overstated its value and that Defendants disseminated substantially the same omissions and misrepresentations regarding Miller Energy's true value. Plaintiffs state that common questions include as follows: (1) whether Defendants violated the Securities Act; (2) whether the Registration Statement and Prospectus Supplements were negligently prepared and contained inaccurate statements of material fact and omitted information required to be stated therein; and (3) to what extent members of the class have sustained damages and the proper measure of damages.

Plaintiffs aver that they have also established that the proposed class representatives' claims are typical of the class. Plaintiffs state that all members acquired the Miller Energy shares pursuant to and/or traceable to the Offerings and were subject to the same set of material mistakes and omissions in the Offerings concerning Miller Energy's financial accounting and reporting of the Alaska Assets. Plaintiffs state that they have standing to pursue claims on behalf of other class members and that they are not subject to unique defenses. Plaintiffs state that it is irrelevant whether they purchased Series C or Series D shares because all shares arose from the same misleading Registration Statement. In any event, however, Plaintiffs state that at least one of them purchased Series C and/or Series D preferred shares.

Plaintiffs maintain that they will fairly and adequately protect the class's interests. Plaintiffs explain that they sustained losses through the same misrepresentations and omissions in the Registration Statement and Prospectus Supplement. They also understand their roles and obligations and will continue to protect the interests of the class. Finally, Plaintiffs state that they have retained adequate counsel.

Furthermore, Plaintiffs assert that they have met the requirements of Rule 23(b)(3) by showing that common questions of law and fact predominate over individual issues and that a class action is the superior method to try this case. Plaintiffs maintain that they only need to establish that Defendants made untrue statements or omissions in the offering documents in violation of Section 11 of the Securities Act. In addition, Plaintiffs assert that varying amounts of damages do not undermine a finding of predominance because damages are awarded pursuant to the statute and can be calculated using a common methodology. Finally, Plaintiffs state that a class action is superior to other available methods for the fair and efficient adjudication of this action.

Defendants respond [Doc. 140] that Plaintiffs cannot establish the predominance requirement pursuant to Rule 23(b)(3) because there are a number of individualized issues in this case. Defendants assert that, for instance, individualized inquires will determine whether each class member is able to trace his/her shares to a particular offering at issue. Defendants argue that it is nearly impossible to determine whether the shares are traceable to these Offerings. Defendants explain that to establish liability as to any of the eighteen Defendants, each class member will have to show that his/her shares can be traced to the Offerings in which each Defendant participated. Defendants state that, here, different groups of underwriters were involved in each of the different offerings. Defendants further provide that the two offerings in 2012 are outside of the statute of repose, which constitutes 69% of the Series C shares that were issued.

Further, Defendants assert that individualized inquiries will determine what knowledge each class member had at the time of his or her purchase. Defendants maintain that there were numerous sources, including a case in this district, that questioned the valuation of the assets. Defendants state that the Chief District Judge has already noted that this fact raises questions about what individual class members knew at the time of his/her purchase. Similarly, Defendants argue that there are individual inquiries regarding whether each class member's claims are barred by the statute of limitations. Defendants state that the one-year statute of limitations for a Section 11 claim commences when the plaintiff had either actual knowledge or inquiry notice. Defendants state that "storm warnings," such as the prior litigation involving similar fraud claims, trigger a duty to investigate and the limitations period begins when a reasonably diligent investigation would have discovered the fraud. In addition, Defendants state that a class may only be certified if there is evidence demonstrating a class-wide method of damages that is consistent with the

theory of liability. Defendants argue that Plaintiffs must submit a damages model, as opposed to simply relying on the statute.

In addition, Defendants assert that the proposed class definition is overbroad. Defendants maintain that the Court has already held that Plaintiffs' Section 11 claim requires loss causation, meaning that Plaintiffs may claim only losses that actually result from the material misstatement at issue and not those that are somehow connected with the misstatement or even those that are simply within the zone of risk of the misstatement. Defendants state that the Court has also ruled that the only corrective disclosure that can establish loss causation is when the SEC initiated enforcement action on August 6, 2015. Defendants assert that Plaintiffs have not limited their proposed class to purchasers who sold their stock after the August 6 corrective disclosure. Defendants state, for instance, Plaintiff Vorrath sold a large amount of Series C Stock in August 2013, two years before the disclosure. Defendants argue that individuals who sold Miller Energy stock before the August 2015 disclosure cannot establish loss causation, as a matter of law, and therefore, cannot show that they suffered any injury tied to the alleged misstatements.

Finally, Defendants assert that neither Plaintiffs, nor their counsel, have shown that they can adequately represent the proposed class. Defendants argue that there is no evidence that Plaintiffs can adequately serve as representatives, which is their burden to demonstrate. Defendants further state that Plaintiffs' deposition testimony establishes their inability to serve as representatives. In addition, Defendants argue that Plaintiffs' counsel cannot adequately conduct the litigation, as evidenced by Gabriel Hull's deposition and the failure to preserve evidence. Defendants argue that during Hull's deposition, counsel discovered that he (Hull) had not purchased any stock and that he only bought or sold stock on behalf of his mother. Defendants add that counsel also failed to adequately ensure that Plaintiffs preserved evidence when Plaintiff

Gaynor changed his mobile phone carrier, causing all previous text messages to be deleted. Defendants state that among the communications that were lost was an exchange with a financial advisor with unique knowledge pertinent to this litigation.

Plaintiffs filed a Reply [Doc. 146], stating that Defendants do not challenge that Plaintiffs have established numerosity, typicality, or commonality with respect to Rule 23(a), nor do Defendants challenge the superiority element of Rule 23(b)(3). Plaintiffs state that Defendants' argument regarding the ability to trace each class member's shares suffers from a number of deficiencies. Plaintiffs maintain that courts nationwide have rejected the argument that the issue of tracing in Section 11 cases precludes class certification. Plaintiffs state that the primary focus is whether the Registration Statement, from which all shares emanated, contained untrue statements or omissions of material fact. Further, Plaintiffs submit that Defendants' tracing argument demonstrates a fundamental misunderstanding of the class action mechanism. Plaintiffs state that the class definition is limited to persons who can trace his or her shares to the Offerings. Plaintiffs assert that each member will be required to submit such proof that he/she is part of the class, which means that he/she bought shares and the purchase is traceable to the enumerated Offerings.

Moreover, Plaintiffs argue that Defendants' participation in different offerings does not defeat predominance or otherwise warrant denial of class certification. Plaintiffs argue that the express language of the statute provides that Defendants are jointly and severally liable to the class. Thus, their participation in different Offerings does not affect the class-wide factual and legal issues. Plaintiffs add that each Defendant participated in issuing either Series C or Series D preferred shares that were tainted by the same misleading information and that each Defendant

could have conducted due diligence to correct the information. Further, Plaintiffs claim that Section 11 provides for the apportionment of damages between co-defendants.

Plaintiffs state that Defendants' affirmative defenses regarding knowledge and the statute of limitations do not defeat predominance. Plaintiffs explain that while Defendants point to various public articles discussing the valuation of the Alaska Assets, this is insufficient to show that certain class members had differing levels of knowledge regarding the misleading nature of the statements or omissions. Further, Plaintiffs emphasize that during this time, Miller Energy denied that the Alaska Assets were overvalued and that Defendants have not cited any non-public information that Plaintiffs had access to in order to confirm that the Alaska Assets were overvalued. Plaintiffs state that courts have held that the statute of limitations defense based on public information does not defeat predominance and that inquiry notice is also conductive to class-wide determination.

With respect to damages, Plaintiffs assert that the statutory methodology for calculating damages under Section 11 satisfies any damages inquiry at the class certification stage. Plaintiffs argue that they have offered a viable, widely accepted, and generally applied methodology for measuring per share damages pursuant to 15 U.S.C. § 77k, of which the application is simple arithmetic. Plaintiffs argue that Defendants fail to cite a single case that held that the statutorily mandated damages calculations under Section 11 preclude class certification.

Furthermore, Plaintiffs state that the proposed class definition is not overbroad and that loss causation arguments are not appropriate at this stage. Plaintiffs argue that there is no requirement under the Securities Act that a purchaser must sell the stock and that Section 11 cases have routinely been certified with materially identical class definitions. Further, Plaintiffs aver

that loss causation is an affirmative defense, and the Supreme Court has held that such arguments are inappropriate at the class certification stage.

Finally, Plaintiffs argue that they have established the requirements pursuant to Rule 23(a)(4). Plaintiffs state that they have demonstrated, through depositions and declarations, their commitment and ability to vigorously prosecute this case. In addition, they state that their counsel is a nationally recognized securities law firm that has been appointed to serve as class counsel on numerous occasions within the Sixth Circuit.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 23 governs class actions. In pertinent part, Rule 23 directs that a class may be certified for litigation of claims where:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Once plaintiffs have satisfied each of the four prerequisites of Rule 23(a), they then must establish that the proposed class action meets at least one of the three categories set forth in Rule 23(b). *In re Nw. Airlines Corp. Antitrust Litig.*, 208 F.R.D. 175, 216 (E.D. Mich. 2002). Here, Plaintiffs move pursuant to Rule 23(b)(3), which provides:

> (1) [Omitted];
>
> (2) [Omitted]; or
>
> (3) the court finds that the questions of law or fact common

> to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).[4]

In addition to the above requirements, Plaintiffs must show the existence of an ascertainable class. *Avio, Inc. v. Alfoccino, Inc.*, 311 F.R.D. 434, 440 (E.D. Mich. 2015). This means that "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012) (quoting 5 James W. Moore et al., Moore's Federal Practice § 23.21[1] (Matthew Bender 3d ed. 1997)). The Sixth Circuit has made clear that the proposed class "must be susceptible of [a] precise definition." *Id.* (other citations omitted).

"The party seeking the class certification bears the burden of proof." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996); *see also Senter v. Gen. Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976). Some courts have observed that "suits alleging violations of the securities laws, particularly those brought pursuant to Sections 11 and 12(a)(2), are especially amendable to class

---

[4] Because Plaintiffs move for class certification pursuant to Rule 23(b)(3), the Court has omitted the other statutory provisions.

action resolution." *Pub. Emp. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 101 (S.D.N.Y. 2011). Before certifying a class, however, a district court must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met. *In re Am. Med. Sys. Inc.*, 75 F.3d at 1078-79 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 162 (1982)). This "rigorous analysis" may well "entail some overlap with the merits of the plaintiff's underlying claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). "The district court retains broad discretion in determining whether an action should be certified as a class action, and its decision, based upon the particular facts of the case, [will] not be overturned absent a showing of abuse of discretion." *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988).

With the above guidance in mind, the Court will now turn to the facts of the present matter.

## IV. ANALYSIS

The Court has reviewed the parties' filings and the arguments presented at the motion hearing. The Court finds that Plaintiffs have satisfied the prerequisites for class certification pursuant to Rule 23(a) and (b)(3). Accordingly, the Court **RECOMMENDS** that the action be certified as a class action.

Defendants maintain that Plaintiffs have not established certain elements of Rule 23(a) and (b)(3).[5] In addition, Defendants argue that the proposed class is overbroad. The Court will begin with Rule 23(a) and then turn to Rule 23(b)(3). Finally, the Court will address Defendants' objections to the class definition.

[5] In Defendants' Response, they request that the Court take judicial notice of SEC filings and news articles. *See* [Doc. 140-3]. The undersigned has taken judicial notice of Defendants' filings as further explained below. *See Bovee v. Coopers & Lybrand CPA*, 272 F.3d 356, 360 (6th Cir. 2001) ("[T]his Court may consider the full text of SEC filings, prospectus, analysts' reports and statements."); *City of Monroe Emp. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 662 n. 10 (6th Cir. 2005) ("We take judicial notice of the fact that the media articles cited above were published, without reaching any conclusions about their truth.").

### A. Rule 23(a)

As mentioned above, pursuant to Rule 23(a), Plaintiffs must establish that the class is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class, the proposed class representatives' claims are typical of the class, and that Plaintiffs will fairly and adequately protect the interests of the class members.

The Court will address each element separately.

#### 1. Numerosity

Plaintiffs rely on Miller Energy's documents that were filed with the SEC to demonstrate numerosity. Specifically, Plaintiffs state as follows: (1) 625,000 Miller Energy preferred shares were issued pursuant to the February 13, 2013 Series C Offering's Prospectus Supplement; (2) 500,000 Miller Energy preferred shares were issued pursuant to the May 8, 2013 Series C Offering's Prospectus Supplement; (3) 335,000 Miller Energy preferred shares were issued pursuant to the June 28, 2013 Series C Offering's Prospectus Supplement; (4) one million Miller Energy preferred shares were issued pursuant to the September 26, 2013 Series D Offering's Prospectus Supplement; (5) three million Miller Energy preferred shares were issued pursuant to the October 17, 2013 Series D Offering's Prospectus Supplement; and (6) 750,000 Miller Energy preferred shares were issued pursuant to the August 21, 2014 Series D Offering Prospectus Supplement. Plaintiffs contend that the Offerings sold upwards of 6.21 million Series C and Series D preferred shares, which raised over $151.015 million in gross proceeds. Plaintiffs acknowledge that the exact number of persons who acquired Miller Energy shares is unknown, but they believe that the number of members is likely in the thousands, with members residing throughout the United States. Defendants do not respond to Plaintiffs' argument in their brief.

Under section (a)(1) of Rule 23, persons moving for class certification must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no strict numerical test, substantial numbers usually satisfy the numerosity requirement. *In re Am. Med. Sys. Inc.*, 75 F.3d at 1079 (citing *Senter*, 532 F.2d at 522). The "exact number of class members need not be pleaded or proved," but "impracticability of joinder must be positively shown, and cannot be speculative." *McGee v. East Ohio Gas Co.*, 200 F.R.D. 382, 389 (S.D. Ohio 2011). "Apart from class size, other case-specific factors that courts should consider in determining whether joinder is impracticable include: the judicial economy, the geographical dispersion of class members, the ease of identifying putative class members, and the practicality with which individual putative class members could sue on their own." *Cannon v. GunnAllen Fin., Inc.*, No. 3:06-0804, 2008 WL 4279858 (M.D. Tenn. Sept. 15, 2008) (citing Alba Conte & Herbert Newberg, 1 Newberg on Class Actions § 3:6 (4th ed. 2003)). "Numerosity is generally assumed to have been met in class action suits involving nationally traded securities." *Burges v. Bancorpsouth, Inc.*, No. 3:14-cv-1564, 2017 WL 2772122, at *2 (M.D. Tenn. June 26, 2017).

As an initial matter, the Court observes that Defendants do not challenge whether Plaintiffs have established numerosity. At the hearing, Defendants represented to the Court that they agreed that numerosity has been satisfied and that based on the definition of the proposed class, they do not object to Plaintiffs' argument regarding numerosity.[6] Accordingly, based on the number of Series C and Series D shares that were purchased (6.21 million), the Court finds that Plaintiffs have established numerosity. *See Beaver Cty. Empl. Ret. Fund v. Tile Shop Holdings*, No. 14-786 ADM/TNL, 2016 WL 4098741, at *3 (D. Minn. July 28, 2016) ("Given that 5.175 million shares

[6] During the hearing, the Court inquired as to whether Defendants' statute of repose argument (i.e., 69% of Series C shares in circulation are barred by the statute of repose) affected Plaintiffs' ability to establish numerosity. Defendants indicated that it did not.

of Tile Shop stock were sold in the December 2012 public offering, joinder of all potential members would be impracticable."); *Schuh v. HCA Holdings, Inc.*, 2014 WL 4716231, No. 3:11-cv-4716231, at *13 (M.D. Tenn. Sept. 22, 2014) (finding numerosity in a case involving "the sale of millions of stock, and [p]laintiff estimate[d] that the number of purchasers [was] likely to be in the thousands and that those purchasers reside[d] in many states.").

**2. Commonality**

Plaintiffs assert that there are common questions of law and fact for all class members. Plaintiffs state that Defendants made material written misrepresentations and omissions to the investing public in the Registration Statement and Prospectus Supplements filed with the SEC. More specifically, Plaintiffs argue that Miller Energy repeated the overstated value of the Alaska Assets in its periodic financial reports filed with the SEC between 2010 and August 2015. Plaintiffs maintain that Miller Energy publicly defended its valuations and financial reports as being correct and complete following the acquisition of the Alaska Assets. Further, Plaintiffs state that Defendants disseminated substantially the same omissions and misrepresentations concerning Miller Energy's financial accounting and reporting. Defendants do not challenge whether Plaintiffs have established commonality.

As mentioned above, Rule 23(a)(2) requires Plaintiffs to establish that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is "qualitative rather than quantative, that is, there need be only a single issue common to all members of the class." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1080 (quoting Newberg & Alba Conte, Newberg on Class Actions § 3.10 at 3-50 (3d ed. 1992)); *see also Wal-Mart Stores, Inc.*, 564 U.S. at 359 (explaining that under Rule 23(a)(2), a single common issue will suffice).

Here, Plaintiffs contend that Defendants disseminated substantially the same omissions and misrepresentations concerning Miller Energy's over valuation of the Alaska Assets. Plaintiffs state that whether the Registration Statement and Prospectus Supplements were negligently prepared and contained inaccurate statements of material fact and omitted material information required to be stated therein is a common question. Plaintiffs further state that whether such actions violate the Securities Act is a common question of law and fact. Accordingly, and in absence of any objection, the Court agrees that Plaintiffs have identified facts and law that are common to the class.

**3. Typicality**

Plaintiffs assert that their claims are typical, if not identical to, the claims of other proposed class members. Plaintiffs explain that they and the proposed class members acquired their Miller Energy shares pursuant to and/or traceable to the Offerings and were subject to the same set of material misstatements and omissions in the Offerings concerning Miller Energy's financial accounting and reporting of the Alaska Assets. Plaintiffs argue that the Offerings were materially identical and were all issued pursuant to the same Registration Statement. Plaintiffs maintain that the Offerings expressly incorporated the same SEC filings, thus containing the same material misstatements and omissions. Plaintiffs emphasize that Miller Energy never issued any Series C or Series D stock pursuant to any other registration statement and that the Court previously held that there was no "fundamental change" to the Registration Statement through the Supplemental Prospectuses filed in conjunction with each Offering.

Plaintiffs also contend that they have standing to pursue claims on behalf of the proposed class and are not subject to unique defenses. Plaintiffs argue that it is irrelevant whether they purchased Series C or Series D preferred shares because all of the shares arose from the same

misleading Registration Statement. Plaintiffs state that any one of them could represent the proposed class members, and although not necessary, they have established that at least one of them purchased Series C and/or Series D preferred shares.

In their brief, Defendants do not argue that Plaintiffs failed to establish typicality. At the hearing, however, Defendants asserted that it is impossible to ascertain class members who purchased their shares after 2012. Specifically, Defendants argued that Plaintiff Vorrath admitted that he purchased his shares in pools that were issued pursuant to earlier offerings and that he could not trace his shares back to the specific Offerings in this case. Defendants assert that his inability to trace shares defeats typicality.

"A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. Century Tel., Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys. Inc.*, 75 F.3d at 1082). "A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interest of the class members." *In re Am. Med. Sys. Inc.*, 75 F.3d at 1082. "[F]or the district court to conclude that the typicality requirement is satisfied, "a representative's claims need not always involve the same facts or law, provided there is a common element of fact or law." *Beattie*, 511 F.3d at 561 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082).

The Court has considered Defendants' argument raised at the hearing, but the Court finds Plaintiffs have established typicality. As an initial matter, the Court agrees that Plaintiffs must trace their purchases of the tainted securities to the Registration Statement. Here, Plaintiffs have set forth evidence that Plaintiff Goldberg purchased Series D shares directly in the August 21,

2014 offering. [Doc. 132-1]. Because she is a direct purchaser, she may represent all purchasers stemming from the Registration Statement. *See In re Am. Int'l Group, Inc., 2008 Securities Litigation*, 741 F. Supp. 2d 511, 537 (S.D. N.Y. 2010) (explaining that a plaintiff who alleges "untrue statements in the shelf registration statement or the documents incorporated therein . . . has standing to raise claims on behalf of all purchasers from the shelf") (quoting *In re CitiGroup Bond Litig.*, 723 F. Supp. 2d 568, 584 (S.D. N.Y. 2010)); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 1131, 1164-67 (C.D. Cal. 2008) (stating that an individual has standing to represent prior purchasers "[s]o long as (1) the securities are traceable to the same initial shelf registration and (2) the registration statements share common "parts" that (3) were false and misleading at each effective date, there is § 11 standing"); *see also In re Cobalt Int'l Energy, Inc., Sec. Litig.*, No. H-14-3428, 2017 WL 2608243, at *3 (S.D. Tex. June 15, 2017) (explaining that while defendants argue that plaintiff Universal is not typical because it suffered no damages in connection with the Cobalt Notes, defendants do not assert that plaintiff St. Lucie is asserting claims that are atypical; therefore, "[p]laintiffs have demonstrated that a class representative is asserting claims in connection with the Cobalt Notes that are typical of members of the proposed class"), *appeal docketed*, No. 17-20503, (5th Cir. Aug. 4, 2017).

As mentioned above, Defendants argued at the hearing that Plaintiff Vorrath cannot trace his shares to a specific offering and that he purchased shares pursuant to earlier offerings. Defendants claim he cannot demonstrate his claims are typical of the class. The Court observes that in Plaintiff Vorrath's deposition, he testifies, "I purchased Series C shares between July of 2013 and February of 2015." [Doc. 140-2 at 184]. While he could not identify the specific offering from which he purchased shares, the Court finds that such does not defeat a finding of typicality, given that his interest, as a Series C purchaser, will be aligned with the interests of the other class

members—that is, establishing that the Registration Statement was misleading or omitted certain information. Accordingly, the Court finds that Plaintiffs' claims are typical of the class. *See In re Marsh & McLennan Co., Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009) ("Factual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct.").

**4. Adequacy**

Defendants challenge whether Plaintiffs are able to adequately represent the class members. Defendants emphasize that the record is devoid of evidence establishing Plaintiffs' adequacy to serve as class representatives and that Plaintiffs' conclusory declarations are not sufficient. Specifically, Defendants maintain that Plaintiffs consistently lack any substantive knowledge regarding their own claims and cannot supervise the litigation. Defendants further argue that Plaintiffs are unable to identify the Defendants in this case or Defendants' role in the alleged wrongdoing. Defendants also challenge whether Plaintiffs' counsel is adequate, explaining that counsel did not conduct an adequate investigation of Plaintiffs' purported claims or help to preserve evidence.

Plaintiffs assert that their deposition testimony and signed declarations establish their commitment and ability to vigorously prosecute this litigation. They further contend that their counsel is highly qualified to prosecute this case.

A court may not certify a class unless it finds that the representative parties "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court considers two criteria for determining whether the representation of the class will be adequate: (1) The

representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel. *Senter*, 532 F.2d at 525 (citing *Gonzales v. Cassidy*, 474 F.2d 67, 73 (6th Cir. 1973)). "The adequacy of representation requirement 'overlaps with the typicality requirement because a class representative has no incentive to pursue the claims of the other class members absent typical claims.'" *Isabel v. Velsicol*, No. 04-2297 DV, 2006 WL 1745053, at *7 (W.D. Tenn. June 20, 2006) (citing *In re Am Med. Sys., Inc.*, 75 F.3d at 1083).

Defendants do not challenge whether Plaintiffs share common interests with other class members, and for the reasons explained above, *see infra* Part IV.A(2)-(3) ("Commonality and Typicality"), the Court finds that Plaintiffs share common interests with other class members. Defendants challenge, however, whether Plaintiffs will vigorously prosecute this case. Specifically, with respect to Plaintiff Goldberg, Defendants emphasize portions of her testimony that they argue show a marked indifference to the interests of the proposed class. For instance, Defendants highlight the following portions of Plaintiff Goldberg's testimony: (1) the first time she spoke with Attorney Astley was two weeks ago;[7] (2) she had not spoken to anyone else or emailed anyone else from Robbins Geller; (3) she believed she became a class representative two weeks ago when she met with Attorney Astley; (4) she did not understand her role as a class representative or what class certification means; and (5) she testified that she did not look at the complaint when it was filed. [Doc. 140 at 27].

The Court has reviewed Plaintiff Goldberg's deposition testimony and finds that she will adequately represent the interests of the class. Although Defendants have pointed to certain portions of Plaintiff Goldberg's deposition testimony that are somewhat concerning, she later

[7] Plaintiff Goldberg's deposition was taken on January 25, 2018. [Doc. 147-2].

testified as follows: (1) she corresponds with her attorneys via email about once a month; (2) she receives and reviews documents that are filed in the case; (3) she reviewed the complaint filed on November 6, 2015, and authorized its filing; (4) she regularly receives email correspondence from Attorney Trinko; (5) her attorneys keep her abreast of the major developments in this litigation, including the removal of the case to federal court and the rulings on Defendants' motions to dismiss; (6) she is pursuing this claim on behalf of all of the investors; (7) she is prepared to attend court hearings and the trial; (8) she will continue to take an active role and monitor the litigation for the best interests of the class; and (9) she will vigorously pursue the claims against Defendants to obtain the maximum possible recovery. [Doc. 147-2]. While Plaintiff Goldberg could not name the specific Defendants in this case, she agreed that the lawsuit was filed against certain officers and directors and the underwriters. [*Id.* at 11]. She also testified that she reads over the materials as carefully as she can and that she has asked "a lot of questions because [she] did not understand a lot of the wording." [*Id.* at 4]. As a final matter, the Court observes that while this case was filed in 2015, the parties have largely been involved in arguing legal matters before the Court, such as the motion to remand and the motions to dismiss.[8]

Defendants raise similar arguments with respect to Plaintiffs Vorrath and Gaynor, but the Court has reviewed their deposition testimony and finds that they will adequately represent the interests of the class. With respect to Plaintiff Gaynor, he testified as follows: (1) he has reviewed all complaints in this case prior to their filing; (2) he asked to be appointed lead Plaintiff on

[8] Specifically, the Court observes that in February 2017, Defendants sought to dismiss this action, and the Chief District Judge issued a decision in August 2017. *See* 15 U.S.C. § 77z-1 ("In any private action under this subchapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds, upon the motion of any party, that particularized discovery is necessary to preserve evidence or prevent undue prejudice to that party.").

November 8, 2016; (3) he had discussions with Attorney Trinko about engaging another law firm [Robbins Geller] because of the size of Attorney Trinko's firm; (4) he stays informed about the litigation through telephone calls and emails; (5) he directed his counsel to oppose the removal of this case to federal court; (6) he believes that his role as class representative involves trying to recover the funds that were invested on behalf of himself and all other investors of Series C and Series D preferred shares of Miller Energy; (7) he will attend hearings and the trial; (8) he has performed searches to find relevant documents; and (9) he has reviewed his discovery responses. [Doc. 147-3]. While he testified that he could not name the specific underwriters in this case, he stated, "The underwriters are the ones that make sure that the stock is valued or the information that's with the stock is going to hold ground and that it's a good stock in order to invest in." [*Id.* at 10]. He continued, "I don't believe that they did their job correctly reviewing the stock" and that "I don't believe that they did their due diligence of reviewing the stock itself, the valuation of what it was supposedly valued at." [*Id.* at 12]. The Court finds Plaintiff Gaynor will adequately serve the interests of the class.

Defendants argue that Plaintiff Gaynor is not adequate because he did not preserve evidence. Specifically, Defendants assert that Plaintiff Gaynor changed his mobile-phone carrier, which caused previous text messages to be deleted. Defendants continue that among the communications that were lost were those exchanged with Michael Laderer, a financial advisor, who recommended to Plaintiff Gaynor that he purchase the Series D shares and who later referred him (Plaintiff Gaynor) to Attorney Trinko. The Court has considered Defendants' argument but does not find it warrants a conclusion that Plaintiff Gaynor is inadequate to serve as a lead Plaintiff, especially because it is not clear how these lost communications will be relevant to the instant litigation.

With respect to Plaintiff Vorrath, he testified as follows: (1) he believes that as a representative, he will represent himself and the class and pursue the claims that are filed against Defendants; (2) he reviewed the Complaint prior to it being filed; (3) he believes that the underwriters have a responsibility to accurately assess the value of the shares prior to them being available; (4) that Defendant Underwriters did not perform their due diligence or relied on the information supplied by Miller Energy without verifying such information; and (5) he speaks with Attorney Astley "at times every month, sometimes two or three times in a week," unless they are waiting on a decision. [Doc. 147-4]. When asked whether he provides his counsel recommendations on litigation strategies or whether his counsel keeps him informed, he testified, "I would say it's the latter, that I'm not an attorney. And obviously, I don't have the expertise to give guidance in these matters. I give my input in terms of obviously what the experience that I've had in terms of the people that I've interacted with and what their personal opinions, you know, have been about, what their experiences have been, just to kind of lend an emotion to my personal passion to the situation." [*Id.* at 11]. Based on his deposition testimony, the Court is satisfied that Plaintiff Vorrath is adequate to serve as a lead Plaintiff. Accordingly, the Court finds that all three Plaintiffs will vigorously prosecute the interests of the class.

Defendants also assert that Plaintiffs' counsel, Robbins Geller, cannot adequately conduct the litigation. Specifically, Defendants state that during the deposition of Gabriel Hull, it was revealed that he had never purchased or sold any Miller Energy shares. Defendants submit that this information was only recently discovered, even though this case has been pending for two years.

While the Court finds that this is a significant oversight, the Court declines to find that Robbins Geller or Barrett Johnston are inadequate to serve as lead counsel. The Court has

reviewed their resumes and finds that their firms are qualified to serve as lead and local counsel. [Docs. 132-6, 132-7].

The case that Defendants cite in support of their argument is inapposite from the present matter. *Compare Ballan v. Upjohn Co.*, 159 F.R.D. 473, 489 (W.D. Mich. 1994). In *Ballan*, the court determined that class counsel was inadequate based on a number of deficiencies, including (1) the selection of a phantom plaintiff, (2) a named plaintiff did not purchase the stock during the class period, (3) a named plaintiff was openly solicited by an attorney and the named plaintiff had no further contact with any of the attorneys involved in the case prior to the time he was named as plaintiff in the original and consolidated complaints, (4) two other plaintiffs, the wife and son of class counsel, were named as representatives to hold a place for the law firm to become lead counsel, and (5) a majority of the named plaintiffs either withdrew or were dismissed from the case for failing to comply with discovery. *Id.* at 488-89. Here, the Court does not find that the situation involving Hull warrants a finding that Robbins Geller is inadequate, and the Court observes that shortly after Hull's deposition, the parties agreed that he should be dismissed. *See* [Doc. 139] ("Stipulation of Voluntary Dismissal of Lead Plaintiff Gabriel R. Hull's Claims Against All Defendants"). Defendants also argue that Plaintiffs' counsel did not ensure that Plaintiff Gaynor preserved his text messages. The Court finds this argument unavailing for the same reasons as described above.

Accordingly, the Court finds that Plaintiffs have established the requirements under Rule 26(a). The Court will now turn to the requirements pursuant to Rule 23(b).

**B. Rule 23(b) Elements**

Plaintiffs must also demonstrate compliance with one of the types of class actions specified in Rule 23(b). Here, Plaintiffs seek to certify the class in accordance with Rule 23(b)(3), which

requires proof that questions of law or fact predominant over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Accordingly, for the reasons that follow, the Court finds that Plaintiffs have demonstrated both of these criteria.

**1. Predominance**

Defendants vigorously dispute whether Plaintiffs have established that common issues predominate over individualized inquiries. Specifically, Defendants assert that the following individualized issues defeat class certification: (1) whether each class member can trace his/her shares to a particular offering at issue, (2) what knowledge each class member had at the time of his/her purchase, and (3) whether each class member's claims are barred by the statute of limitations. Defendants also assert that Plaintiffs have not offered any methodology for determining damages on a class-wide basis as required by the Supreme Court.

Plaintiffs submit their Section 11 allegations allow them to file suit against certain enumerated parties when false and misleading information is included in a registration statement. Plaintiffs maintain that they only need to prove that Defendants made untrue statements or omissions in the offering documents. Plaintiffs argue that the primary focus of the class claims is whether the Registration Statement, for which all shares emanated, contained untrue statements or omissions of material fact. Plaintiffs state that Defendants' argument with respect to the ability to trace shares to a particular offering misunderstands the class action mechanism because, by definition, the class is limited to individuals who can trace their shares to the Offerings. Further, Plaintiffs assert that Defendants' participation in the different Offerings does not defeat predominance or otherwise warrant denial of class certification because Section 11 provides that such persons shall be joint and severally liable. Plaintiffs add that Section 11 includes a

mechanism for apportioning damages. In addition, Plaintiffs state that their varying amounts of damages do not preclude class certification because the method of calculating such damages is prescribed per the statute.

"To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as whole predominate over those issues that are subject to only individualized proof." *Young*, at 693 F.3d at 544 (quoting *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352-53 (6th Cir. 2011)) (other citations omitted). Moreover, "While the commonality element of Rule 23(a)(2) requires showing one question of law or fact common to the class, a Rule 23(b)(3) class must show that common questions will *predominate* over individual issues." *Id.* (Emphasis in original). The Supreme Court has noted, "Predominance is a test readily met in certain cases alleging . . . securities fraud." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

In order to determine whether individual issues predominate, the Court will begin with the elements of the alleged violation. *See Erica P. John Fund, Inc. v. Halliburton*, 563 U.S. 804, 810 (2011) ("Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action."). As mentioned above, Chief District Judge Varlan dismissed certain claims but permitted other claims to proceed. *See* [Doc. 106]. The Chief District Judge allowed the Section 11 claim against the Underwriter Defendants and the Section 15 claim based on the Section 11 claim against the Individual Defendants to proceed.[9] Specifically, 15 U.S.C. § 77k(a), in relevant part, provides as follows:

> In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted

---

[9] The parties acknowledge in their briefing that the Section 15 claim is derivative of the Section 11 claim and does not warrant separate consideration. *See* [Docs. 131 at 26 and 140 at 13 n. 1]

> to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue—
>
> **(1)** every person who signed the registration statement;
>
> **(2)** every person who was a director of (or person performing similar functions) or partner in the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted;
>
> **(3)** every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner;
>
> **(4)** every accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him;
>
> **(5)** every underwriter with respect to such security.

15 U.S.C. § 77k.

In order to establish relief under Section 11, a plaintiff must show that: (1) he/she purchased a registered security, either directly from the issuer or in the aftermarket following the offering; (2) the defendant participated in the offering in a manner sufficient to give rise to liability under Section 11; and (3) the registration statement contained an untrue statement of a material fact or omitted either a material fact required to be stated therein or a material fact necessary to make the statements therein not misleading. *Local 295/Local 851 IBT Emp'r Grp. Pension Tr. & Welfare Fund v. Fifth Third Bancorp.*, 731 F. Supp. 2d 689, 704 (S.D. Ohio 2010) (citing *In re Morgan Stanley Info. Fund Sec. Lit.*, 592 F.3d 347, 358-59 (2d Cir. 2010)).

As mentioned above, Defendants raise four arguments that they assert defeat certification: (1) inability to trace; (2) knowledge; (3) statute of limitations; and (4) damages. The Court will address these arguments separately.

**i. Tracing**

At the hearing, the parties agreed that the primary issue with respect to establishing predominance is tracing. Defendants assert that individualized inquiries will determine whether each class member can trace his/her shares to a particular offering issued. They maintain that determining whether shares are traceable to one of the Offerings at issue is nearly impossible for all but direct purchasers. Defendants continue that this inability to trace will bear on two requirements for each class members' Section 11 claim: (1) the liability of each Defendant, and (2) compliance with the three-year statute of repose. Specifically, Defendants submit that aftermarket purchasers cannot trace their shares to an offering involving any particular Defendant. Defendants assert that a different group of underwriters was involved in each of the Offerings at issue and that they can only be liable for the offering that they participated in. Defendants further assert that aftermarket purchasers of Series C shares cannot trace their shares to an offering within the three-year statute of repose. Defendants explain that Series C shares were also offered on September 28 and October 12, 2012, more than three years before this action was filed. Defendants state that each class member would be required to show that he/she purchased a later Offering to establish relief.

Plaintiffs argue that the issue of tracing does not defeat predominance or warrant a denial of class certification. Plaintiffs contend that courts nationwide have rejected the argument that tracing issues in Section 11 cases preclude class certification. Plaintiffs maintain that the primary focus is whether the Registration Statement, from which all shares emanated, contained untrue

statements or omissions of material fact. Plaintiffs emphasize that Defendants' tracing arguments demonstrate a fundamental misunderstanding of the class action mechanism. Plaintiffs explain that the class definition is limited to persons who can trace their shares to the Offerings. Plaintiffs emphasize that their proposed definition requires class members to show that their shares are "pursuant and/or traceable" to the Offerings. Plaintiffs state that the tracing question focuses on membership in the class—a question that exists for every certified class action. Plaintiffs contend that this tracing question can be resolved through a claims administration process, wherein each class member will be required to submit proof that he/she is part of the class.

After reviewing the parties' positions and analyzing the case law, the Court finds individual issues do not predominate. At the heart of Plaintiffs' claim is that the Registration Statement contained misstatements and/or omissions of material fact—the over valuation of the Alaska Assets. This issue will predominant over any secondary issues with respect to tracing. As Plaintiffs emphasized in their brief, a number of courts have explicitly held that the difficulties in tracing do not defeat class certification. *See Freeland v. Iridum World Commc'ns, Ltd.*, 233 F.R.D. 40, 45-46 (D.D.C. 2006) ("[A]ny difficulty by individual class members in tracing their particular aftermarket-purchased shares to the Registration Statement is a secondary issue to be resolved after the predominant issue of Defendant Underwriters' liability has been decided. It would be inappropriate to foreclose such Plaintiffs' resort to the class action format simply because some of their cases may be difficult to prove."); *United Food and Commercial Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, (W.D. Okla. 2012) ("Difficulties in tracing do not, however, automatically exclude from a class those who obtained their stock through an aftermarket purchase . . . Aftermarket purchasers have standing to pursue their claims if they can prove the securities they purchased were sold in the offering covered by the challenged registration

statement."); *In re Colbalt Int'l Energy, Inc., Sec. Litig.*, 2017 WL 2608243, at *5 ("[T]he requirement that each [p]laintiff must ultimately show that he purchased his shares of Cobalt stock in connection with a public offering does not preclude class certification."); *Beaver Cty. Empl. Ret. Fund*, 2016 WL 4098741, at *13 ("Plaintiffs recognize that tracing is complicated, if not impossible, and that they may ultimately be unable to craft a methodology for determining whether a security purchased in the aftermarket was purchased pursuant to the allegedly defective December 2012 public offering. However, as other courts have noted, tracing is a merits issue that should not be considered at this stage."); *In re Smart Tech., Inc., S'holder Litig.*, 295 F.R.D. 50, 61-62 (S.D. N.Y. 2013) ("But tracing is a merits issue that the court need not consider at the class certification stage."); *In re Direct Gen. Corp. Sec. Litig.*, No. 3:05-cv-0077, 2006 WL 2265472, at *3 (M.D. Tenn. Aug. 8, 2006) ("[F]or purposes of class certification, the common question of whether the registration statements were materially misleading predominates over any secondary tracing issues that might be encountered later in the litigation.").

In making this recommendation, the Court has carefully considered Defendants' argument that tracing issues defeat class certification because there were many different underwriters and officers involved in each of the Offerings. The Court has also considered Defendants' argument that aftermarket purchasers cannot establish that they purchased Series C shares that are not precluded by the statute of repose. The Court agrees that these are concerns with establishing Plaintiffs' case, but the Court does not find that they will predominate over the main issue involving the Registration Statement. It further appears to the Court that Defendants' concerns regarding aftermarket purchasers can be raised through additional dispositive motion practice, so that both parties may develop the factual record. *See generally Beaver*, 2016 WL 4098741, at *13 n. 16 (explaining defendants' "argument that aftermarket purchasers will be unable to trace their

purchases to the [2012 Offering] is an argument best addressed after a factual record has been developed") (citing *In re Dynergy, Inc. Sec. Litig.*, 226 F.R.D. 263, 282 (S.D. Tex. 2005)); *see also In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2017 WL 2608243, at *7 ("Whether the statue of repose applies to bar absent class members' Section 11 claims is a common question of law applicable to all class members. Application of that legal issue would involve a simple review of purchase documents demonstrating when the purchase occurred."). Accordingly, the Court finds Defendants' arguments not well taken.

**ii. Knowledge**

Defendants assert that the facts of this case uniquely lend themselves to individualized issues of investor knowledge. Defendants state that during the relevant time period, numerous news articles and publications questioned the valuation of the Alaska Assets. Defendants submit that a class action was filed in 2011 that made nearly identical claims against many of the same Defendants. Defendants maintain that many of the proposed class members purchased shares after this lawsuit was filed and after news articles, relating to Miller Energy's issues, were published. Defendants aver that Plaintiff Vorrath saw various news articles and contacted a representative of Miller Energy due to his concerns.

Plaintiffs argue that knowledge is an affirmative defense and that Defendants have not shown that certain class members had differing levels of knowledge regarding the misleading nature of the statements or omissions.

Section 11 provides an affirmative defense where a defendant can establish that at the time of the purchase, the purchaser new of the untruth or omission. 15 U.S.C. § 77k(a) (providing that purchasers may sue "unless it is proved that at the time of such acquisition he knew of such untruth or omission"). "[T]he fact that a defense may arise and may affect different class members

differently does not compel a finding that individual issues predominate over common ones." *Schuh*, 2014 WL 4716231, at *7 (quoting *Beattie*, 511 F.3d at 564). In order to defeat class certification based on investor knowledge, "defendants must provide evidence that certain class members had differing levels of knowledge regarding the misleading nature of the statements or omissions when they invested sufficient to outweigh common issues." *Id.* (quoting *In re IndyMac Mortgage-Backed Sec. Litig.*, 286 F.R.D. 226, 238 (S.D. N.Y. 2012)). Courts have explained that defendants "must submit evidence showing the existence of individual investor knowledge sufficient to preclude a finding by the Court that 'common liability issues predominate over individual knowledge issues.'" *Id.* (quoting *In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 152 (N.D. Tex. 2014)). "This proof need not be at the level required to prove the affirmative defense on the merits but must be adequate to satisfy the court at the certification stage that 'individual knowledge inquiries might be necessary.'" *Id.* (quoting *In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. at 152-53).

In support of their argument, Defendants rely on publicly available news articles and the testimony of Plaintiff Vorrath, who did his own internet research on potential investments.[10] The Court finds Defendants' affirmative defense of knowledge does not defeat class certification. With respect to the publicly available news articles, the Court finds this insufficient to show that certain class members had differing levels of knowledge regarding the alleged misleading statements or omissions. *See In re IndyMac Mortgage-Backed Sec. Litig.*, 286 F.R.D. at 239 (noting that even if news reports provided some knowledge to investors, such information was "subject to generalized proof"); *N.J. Carpenters Health Fund v. Residential Capital LLC*, No. 08-CV-8781,

[10] Defendants attach the news articles as an exhibit to their Response. [Doc. 140-2]. One article is a letter from Miller Energy's CEO, Scott Boruff, to the shareholders. Defendants, however, only attach portions of the letter. [*Id.* at 79].

2013 WL 6389093, at *4 (S.D. N.Y. Dec. 27, 2013) ("First, publicly available news stories do not create individualized knowledge."). Accordingly, Defendants' argument with respect to the news articles is unavailing.

Further, the Court has reviewed Plaintiff Vorrath's deposition testimony and does not find it warrants denying class certification. Specifically, Plaintiff Vorrath testified that he contacted Miller Energy about the suspension of dividends. [Doc. 147-4 at 6]. He was put in touch with an individual, Derrick Granville, who told him that Miller Energy would make up for any quarter that was missed. [*Id.* at 7]. Plaintiff Vorrath stated that he saw articles in the news, so he talked to Mr. Granville again about his concerns. [*Id.*]. Mr. Granville explained that there was an issue with one of the CEOs or executives of Miller Energy. [*Id.*]. Plaintiff Vorrath testified, "He just went ahead and made a good-faith offering to – obviously his feelings of the fact they're going to resolve these financial issues." [*Id.*]. He later testified that Mr. Granville tried to give him some assurances that Miller Energy's executives were working through the details, they were going to find a resolution, and that the CEO or the CFO had made a good-faith effort to purchase preferred shares. [*Id.* at 9]. Based on this testimony, the Court does not find that Defendants' affirmative defense of knowledge defeats predominance.

**iii. Statute of Limitations**

Defendants assert that individual inquires will determine whether each class member's claims are barred by the statute of limitations. Defendants explain that the one-year statute of limitations for a Section 11 claim commences when a plaintiff had either actual knowledge or inquiry notice. Defendants contend that "storm warnings," such as prior litigation involving similar fraud claims, trigger a duty to investigate and that the limitations period begins to run only when a reasonably diligent investigation would have discovered the fraud.

Plaintiffs assert that Defendants' argument is simply a rehashing of their knowledge argument above. Plaintiffs state that courts have held that a statute of limitations defense based on public information does not defeat predominance in a Section 11 case. Plaintiffs argue that courts have acknowledged inquiry notice, by definition, is conducive to class-wide determination. Plaintiffs add that Defendants do not provide any case law similar to the instant matter to support their argument.

Section 11 claims are barred if made more than a year after the "discovery of the untrue statement" or "after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. "[I]nquiry notice arises from notice of facts, which in the exercise of reasonable diligence, would have led to actual knowledge." *Pub. Empl. Ret. Sys. of Miss.*, 280 F.R.D. at 140 (quoting *LC Capital Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 154 (2d Cir. 2003)) (other citations and quotations omitted). This notice is often referred to as "storm warnings . . . and is assessed objectively under a totality-of-the-circumstances test." *Id.* (other citations and quotations omitted).

For similar reasons as explained above, *see supra* Part IV.B(1)(ii)("Knowledge"), the Court finds that Defendants' affirmative defense does not warrant a finding that individualized issues predominant. Further, as one court explained:

> Additionally, and more fundamentally, inquiry notice is assessed under an objective standard and evaluated under a totality-of-the-circumstances test. It is therefore beyond cavil that resolution of this question can be achieved through generalized proof. If the news reports, government investigations, public hearings, and civil complaints attached as exhibits to Defendants' moving papers were sufficient, either singly or in combination, to place a reasonable investor on inquiry notice of Defendants' alleged securities violations, then the claims of all class members are time-barred. This is the very definition of generalized proof.

*Pub. Empl. Ret. Sys. of Miss.*, 277 F.R.D. at 116 (internal citations and quotations omitted). Accordingly, the Court finds Defendants' arguments not well taken.

**iv. Damages**

Defendants assert that Plaintiffs have failed to offer any evidence demonstrating compliance with the Supreme Court's decision in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). Defendants state that Plaintiffs must present evidence of a class-wide method to award relief that is consistent with Plaintiffs' theory of liability. Plaintiffs argue that *Comcast* did not add a new requirement for establishing predominance and that Section 11 prescribes a methodology to measures damages.

Because both parties cite to *Comcast*, the Court will address the decision. In *Comcast*, the Supreme Court reviewed whether certification was appropriate pursuant to Rule 23(b)(3) with respect to a class of more than two million current and former Comcast subscribers who sought damages. 569 U.S. at 29. Plaintiffs filed a class-action antitrust suit, claiming that Comcast and its subsidiaries engaged in unlawful "swap agreements," wherein Comcast acquired competitor cable providers and swapped their own systems outside the region for competitor systems located in the region (e.g., Comcast obtained Adelphia Communications in the Philadelphia region, along with its subscribers, and Comcast sold Adelphia Communications its systems in Florida and California). *Id.* Plaintiffs alleged that this clustering scheme "harmed subscribers in the Philadelphia cluster by eliminating competition and holding prices for cable services at competitive levels." *Id.* at 30. Plaintiffs relied on four theories of antitrust impact, but the District Court only certified the theory relating to reduced overbuilding competition. *Id.* at 31-32. Plaintiffs' expert calculated a certain amount of damages but acknowledged that his "model did not isolate damages resulting from any one theory of antitrust impact." *Id.*

The Supreme Court held that the class action was improperly certified under Rule 23(b)(3). *Id.* at 34. The Court explained that the Court of Appeals erred when it refused to entertain Comcast's arguments against the damages' model simply because such arguments would also be pertinent to the merits determination. *Id.* The Court explained, "[A] model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class." *Id.* at 35. The Court stated that any model supporting damages must be consistent with liability. *Id.* (citing ABA Section of Antitrust Law, Proving Antitrust Damages: Legal and Economic Issues 57, 62 (2d ed. 2010)).

The Court further explained that the reasoning of the District Court and Court of Appeals was incorrect because they saw no need for plaintiffs to tie each theory of antitrust impact to a calculation of damages because such would involve considerations of the merits. *Id.* The Court observed that this reasoning "flatly contradicts" cases requiring inquiry into the merits of the claim." *Id.* (citing *Wal-Mart*, 564 U.S. at 351). The Court reasoned, "Under that logic, at the class-certification stage *any* method of measurement is acceptable so long as it can be applied class wide, no matter how arbitrary the measurements may be." *Id.* at 36 (Emphasis in original). The Court concluded that there was "no question that the model failed to measure damages resulting from the particular antirust injury on which [plaintiffs'] liability" was premised. *Id.*

Here, Plaintiffs rely on the methodology as prescribed in the statute to assess damages in this case. Specifically, 15 U.S.C. § 77k(e) provides as follows:

> The suit authorized under subsection (a) may be to recover such damages as shall represent the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which

> such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought: *Provided*, That if the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from such part of the registration statement, with respect to which his liability is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the statements therein not misleading, such portion of or all such damages shall not be recoverable. In no event shall any underwriter (unless such underwriter shall have knowingly received from the issuer for acting as an underwriter some benefit, directly or indirectly, in which all other underwriters similarly situated did not share in proportion to their respective interests in the underwriting) be liable in any suit or as a consequence of suits authorized under subsection (a) for damages in excess of the total price at which the securities underwritten by him and distributed to the public were offered to the public. In any suit under this or any other section of this subchapter the court may, in its discretion, require an undertaking for the payment of the costs of such suit, including reasonable attorney's fees, and if judgment shall be rendered against a party litigant, upon the motion of the other party litigant, such costs may be assessed in favor of such party litigant (whether or not such undertaking has been required) if the court believes the suit or the defense to have been without merit, in an amount sufficient to reimburse him for the reasonable expenses incurred by him, in connection with such suit, such costs to be taxed in the manner usually provided for taxing of costs in the court in which the suit was heard.

Since the ruling in *Comcast*, a number of courts have analyzed the decision in context of securities actions. For instance, in *In re Facebook, Inc., IPO Sec. and Derivative Litig.*, the court explained, "*Comcast* was an antitrust case where the regression model used to calculate damages did not measure damages attributable to the surviving theory of liability." 312 F.R.D. 332, 350 (S.D. N.Y. 2015). The court continued, "*Comcast* does not mandate that certification pursuant to Rule 23(b)(3) requires a finding that damages are capable of measurement on a class wide basis." *Id.* (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 402 (2d Cir. 2015)). The court further

stated, "*Comcast* does not bar certification here, where Section 11(e) of the Securities Act provides a statutory formula for damages." *Id.* (citing *N.J. Carpenters Health Fund*, 2013 WL 6839093, at *5). The court concluded, "Because the statutory formula applies, the individual damages questions are sufficiently reduced that predominance of the common questions, answers, and fact remains." *Id.*

Similarly, in *N.J. Carpenters Health Fund*, the Court held, "[S]ection 11(e) of the Securities Act sets out the proper method for calculating damages in this case." 2013 WL 6839093, at *5. The court stated that the analysis in *Comcast* was "inapposite here, where damages reflect liability by statutory formula." *Id.; see also In re Oppenheimer Rochester Funds Group Sec. Litig.*, 318 F.R.D. 435, 447 (D. Col. 2015) (noting that the "calculation of damages is common to the Class as well") (citing 15 U.S.C. § 77k(e)). Accordingly, the undersigned will follow suit and find that Plaintiffs' reliance of the statutory formula provided in 15 U.S.C. § 77k(e) is sufficient.

Accordingly, for the reasons explained above, the Court finds that Plaintiffs have established predominance.

**2. Superiority**

Plaintiffs assert that Defendants' violations of the federal securities laws caused economic injury to a large number of geographically dispersed investors, making the cost of pursuing individual claims impracticable. Plaintiffs contend that resolving the claims on a class-wide basis will promote judicial economy because the alternative would be to have thousands of separate individual actions. Defendants do not respond to Plaintiffs' argument.

A class action is superior in circumstances "where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individuals suits for damages, [and thus] aggrieved persons may be without any effective redress unless they may employee the

class-action device." *Young*, 693 F.3d at 545 (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980)). A class action is not the superior method of adjudication if a court must make individual inquiries. *Id.* In situations where class members are unaware of a violation of the law, and thus are unlikely to file individual suits, a class action may be superior to properly vindicate rights. *Id.*

The Court has considered Plaintiffs' arguments and agrees that a class action is the superior method of adjudication. As explained above, 6.21 million shares of Series C and Series D stock were purchased. The vast amount of shares, coupled with the predominate issue in this case, warrant a finding that a class action is the superior method of adjudication. *See United Food and Commercial Workers Union*, 281 F.R.D. at 657 (noting that "class actions have been recognized as a particularly appropriate means of resolving securities actions involving allegations of material misrepresentations or omissions") (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 250 (1988)). Further, the Court does not foresee any management difficulties in maintaining the class action. *See* Fed. R. Civ. 23(b)(3)(D) (a matter relevant to whether the class action is superior to other methods includes "the likely difficulties in managing a class action"). Accordingly, the Court finds Plaintiffs have established that a class action is the superior method to adjudicate this case.

**C. Class Definition**

Defendants assert that Plaintiffs' proposed class is overbroad, which they assert precludes class certification. Defendants contend that in Chief Judge Varlan's Order on their motions to dismiss, the Court determined that Plaintiffs' Section 11 claims require loss causation. Defendants explain that the Court further ruled that the only corrective disclosure that could possibly establish loss causation did not occur until August 6, 2015, when the SEC initiated an enforcement action. Defendants argue that Plaintiffs have not limited their proposed class to purchasers who sold their

stock after the disclosure on August 6, 2015. Defendants add that Plaintiff Vorrath sold a large amount of Series C stock in August 2013, two years before the disclosure. Defendants assert that individuals who sold Miller Energy stock before the August 2015 disclosure cannot establish loss causation as a matter of law, and therefore, cannot show that they suffered an injury tied to the alleged misstatements.

Plaintiffs argue that there is no requirement in the Securities Act that a purchaser sell a security to allege a Section 11 claim. Plaintiffs further contend that Section 11 cases have routinely been certified with materially identical class definitions. Plaintiffs explain that loss causation is not an element of a Section 11 claim, but instead, an affirmative defense. Plaintiffs state that Chief Judge Varlan declined to dismiss Plaintiffs' Section 11 claim, stating that the lack of loss causation had not been proven as a matter of law.

The Court finds it inappropriate to limit the class definition at this time, given that, as Plaintiffs argue, there is no requirement in the Securities Act that a purchaser sell a security to allege a Section 11 claim. Further, Defendants' affirmative defense regarding loss causation may be raised in a dispositive motion. *See In re Facebook Inc., IPO Sec. and Derivative Litig.*, 312 F.R.D. at 350 (explaining that loss causation is not an element of any of plaintiffs' claims, causes of the Facebook stock decline were factual questions suitable for resolution on a class-wide basis, and "[w]hether subsequent resolution will be in favor of [d]efendants such that investors who made their purchases on certain dates will be precluded from recovery does not constitute an individualized question."). Accordingly, the Court finds Defendants' arguments not well taken.

## V. CONCLUSION

Accordingly, for the reasons set forth above, the Court **RECOMMENDS**[11] that Plaintiffs' Motion for Class Certification [**Doc. 130**] be **GRANTED**. The Court further **RECOMMENDS** that the action be certified as a class pursuant to Rule 23(a) and (b)(3), Plaintiffs Kenneth Gaynor, Marcia Goldberg, and Christopher Vorrath be appointed as Lead Plaintiffs, and that Robbins Geller be appointed as class counsel, along with Barrett Johnston as local counsel.

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

[11] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).